UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------- --x

| | |
|---|---|
| STATE OF NEW YORK, | x |
| | x |
| | x |
| Plaintiff, | x  Civil Action No. 12-CV-6276 (ADS) (ETB) |
| | x |
| vs. | x  **AMENDED COMPLAINT** |
| | x |
| MOUNTAIN TOBACCO COMPANY d/b/a | x |
| KING MOUNTAIN TOBACCO COMPANY | x |
| INC., MOUNTAIN TOBACCO | x |
| DISTRIBUTING COMPANY INC., and | x |
| DELBERT WHEELER, Sr., | x |
| | x |
| Defendants. | x |
| | x |
| | x |
| | x |
| | x |

------------------------------------------------------- --x

With knowledge of its own actions and on information and belief as to the actions of the defendants, plaintiff State of New York, by its attorney Eric Schneiderman, Attorney General of the State of New York, respectfully alleges as follows:

## **INTRODUCTION**

1.      This case involves the ongoing illegal sale and shipment of contraband cigarettes. Defendants King Mountain Tobacco Company d/b/a King Mountain Tobacco Company, Inc., Mountain Tobacco Distributing Company Inc., and Delbert Wheeler, Sr. (collectively "King Mountain Defendants") have sold and shipped, and continue to sell and ship, large quantities of unstamped and unreported cigarettes into the State of New York.

2.      Defendants' actions undermine New York's public health efforts and violate numerous state and federal laws, including the Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 2341-2346 (the "CCTA"); the Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C. §§ 375-378; New York Executive Law § 156-c, and New York Tax Law §§ 471, 1814, and 480-b.

3.      In bringing this civil action for defendants' violations of these laws, plaintiff respectfully requests this Court for an order (1) enjoining the defendants from making such sales and shipments in and into the State of New York; (2) granting plaintiff's request for civil penalties, attorney fees, and costs; and (3) granting any additional relief that this Court deems proper.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1331, 18 U.S.C. § 2346, and 15 U.S.C. § 378, this Court has original jurisdiction over plaintiff's claims made under the CCTA and the PACT Act.

5.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over plaintiff's state law claims. These claims are so related to the plaintiff's CCTA and PACT Act claims that they form part of the same case or controversy under Article III of the United States Constitution.

6.      Pursuant to 28 U.S.C. §1391(b), venue within this judicial district is proper. A substantial part of the events or omissions giving rise to the claims occurred within this judicial district.

## PARTIES

7.      Plaintiff State of New York is a sovereign entity that brings this action on behalf of its citizens and residents to protect public health, safety, and welfare, and to enforce federal and state law for that purpose.

8.      Defendant Mountain Tobacco Company d/b/a King Mountain Tobacco Company Inc. ("King Mountain") is a corporation formed under the laws of the Yakama Nation of Indians. King Mountain is engaged in the business of manufacturing, selling, transferring, transporting, and shipping its cigarettes for profit.  King Mountain advertises and offers its cigarettes for sale, transfer, transport, and shipment throughout the United States, including New York.  Although King Mountain is not owned or operated by the Yakama Nation Tribe, King Mountain is located within the Yakama Indian Reservation.  King Mountain's principal place of business and cigarette-manufacturing factory are located at 2000 Fort Simcoe Rd., White Swan, Washington. Its warehouse and distribution facility are located at 2000 Signal Peak Road, White Swan, Washington.  And its registered office is located at Box 669, White Swan, Washington.

9.      Defendant Mountain Tobacco Distributing Company Inc. ("Mountain Distributing") is a corporation formed under the laws of the State of Washington.  Mountain Distributing is engaged in the business of transferring and shipping King Mountain's cigarettes throughout the United States, including New York.  Its principal place of business is located at 2000 Fort Simcoe Rd., White Swan, Washington.

10.      Defendant Delbert Lauren Wheeler, Sr. ("Wheeler") is a Washington State resident; is the President, co-founder, and 50% co-owner of King Mountain; and is the President and part-owner of Mountain Distributing.

## FACTUAL BACKGROUND

11.     Cigarettes are a deadly and costly public health problem.  Smoking causes a host of crippling and deadly diseases, including cardiovascular disease, coronary heart disease, emphysema, aortic aneurysms, and a wide range of cancers.  *Report on the Global Tobacco Epidemic* 8 (WHO 2008 Reports).[1]  Each year, tobacco-related illnesses kill approximately 440,000 people in the United States.  CDC, *Smoking-Attributable Mortality, Years of Potential Life Lost, and Productivity Losses--United States, 2000-2004* (2008);[2] Statement of Vice Admiral Richard H. Carmona, U.S. Surgeon General, *reprinted at* 155 Cong Rec. S6000 (June 3, 2009).  In other words, tobacco kills more people than AIDS, alcohol, drug abuse, car crashes, murders, suicides, and fires combined.

12.     Children are particularly vulnerable to the dangers of tobacco.  As the Supreme Court has observed, "tobacco use, particularly among children and adolescents, poses perhaps the single most significant threat to public health in the United States."  *FDA v. Brown & Williamson Tobacco Corp.,* 529 U.S. 120, 161 (2000).  "Everyday, approximately 4,000 children under age 18 experiment with cigarettes for the first time; another 1,500 become regular smokers.  Of those who become regular smokers, about half eventually die from a disease caused by tobacco use."  President's Cancer Panel, "Promoting Healthy Lifestyles," at 64 (2007).[3]  In addition, tobacco use may function as a "gateway drug" to the use of illegal substances such as cocaine and heroin.  *See, e.g.*, Shenghan Lai et al., *The Association Between Cigarette Smoking and Drug Abuse in the United States*, J. of Addictive Diseases, Dec. 2000, at 11.

13.     Tobacco is also a substantial drain on the public fisc.  Tobacco-related disease and death costs $193 billion a year in health-care spending and loss of productivity.  *Smoking-*

---

[1] *Available at* http://www.who.int/tobacco/mpower/en/.
[2] *Available at* http://www.cdc.gov/mmwr/preview/mmwrhtml/mm5745a3.htm.
[3] *Available at* http://deainfo.nci.nih.gov/advisory/pcp/ pcp07rpt/pcp07rpt.pdf.

*Attributable Mortality, Years of Potential Life Lost, and Productivity Losses—United States,*

*2000-2004*, *supra*.  Smoking costs the Medicaid program an estimated $30 billion annually and

the Medicare program an estimated $14.2 billion.  CDC, *Sustaining State Programs for Tobacco*

*Control: Data Highlights 2006*, at 17 (Medicaid)[4]; Xiulan Zhang et al., *Cost of Smoking to*

*Medicare Program, 1993*, 20 Health Care Financing Rev. 1-19 (1999) (Medicare).

      14.     Given these enormous public-health and economic costs associated with tobacco,

the states and federal government have a strong interest in regulating the sale and use of tobacco.

      15.     In New York, a host of statutes authorizes New York to regulate cigarettes.  *See,*

*e.g.,* N.Y. Exec. Law § 156-c (fire safety standards); N.Y. Pub. Health Law §§ 1399-cc (age

verification), 1399-*ll* (banning delivery of cigarettes to consumers), and 1399-*ll*(3) (labeling) (*see*

*also, generally,* N.Y. Pub. Health Law §§ 1399-aa-1399-mm); N.Y. Tax Law §§ 472 (stamping

and agent requirements), 480 (licensing of wholesalers), 480-a (registration of retail dealers), and

483-489 (marketing).

      16.     One such manner of regulation is the taxing of cigarettes possessed for sale within

the state.  *See* N.Y. Tax Law § 471(1).

      17.     New York imposes such a tax because "[i]t is well established that an increase in

the price of cigarettes decreases their use and that raising tobacco excise taxes is one of the most

effective policies for reducing the use of tobacco."  Inst. of Med., *Ending the Tobacco Problem:*

*A Blueprint for the Nation* 80, 182 (2007); Report of the Surgeon General, *How Tobacco Smoke*

*Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease*, at 654

(2010)[5] (noting that "increases in the price of cigarettes through excise taxes […] are an effective

---

[4] *Available at*
http://www.cdc.gov/tobacco/data_statistics/state_data/data_highlights/2006/pdfs/dataHighlights06rev.pdf.
[5] *Available at* http://www.surgeongeneral.gov/library/tobaccosmoke/report/chapter9.pdf.

policy intervention to prevent smoking initiation among adolescents and young adults, reduce cigarette consumption, and increase the number of smokers who quit").

18.     It is estimated that a ten-percent increase in prices reduces cigarette demand among adults by three to five percent.  Frank J. Chaloupka & Rosalie Liccardo Pecula, *The Impact of Price on Youth Tobacco Use*, National Cancer Institute Monograph No. 14, at 194 (Nov. 2001).[6]  Youth response to price increases is even greater; a ten-percent uptick in cigarette prices is estimated to reduce the number of youth smokers by at least six or seven percent.  *See* Prevent All Cigarette Trafficking Act of 2007, and the Smuggled Tobacco Prevention Act of 2008:  Hearing Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary, 110 Cong. 50, 52 (May 1, 2008) (Statement of Matthew L. Myers, President, Campaign for Tobacco-Free Kids).

19.     Indeed, "[i]t is well established that an increase in the price of cigarettes decreases their use and that raising tobacco excise taxes is one of the most effective policies for reducing the use of tobacco."  Inst. of Med., *Ending the Tobacco Problem:  A Blueprint for the Nation* 80, 182 (2007).  Furthermore, "limit[ing] smuggling and the availability of untaxed tobacco products is essential to maximizing the effectiveness of higher taxes in reducing tobacco use[.]"  Report of the Surgeon General, *How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking-Attributable Disease* (2010), at 654.

20.     The federal government also imposes a cigarette tax, and has instituted other legal requirements and restrictions pertaining to the sale and advertising of cigarettes.  *See*, *e.g.*, Family Smoking Prevention and Tobacco Control Act of 2009, Pub. L. No. 111-31 (authorizing the federal Food and Drug Administration to regulate the content, marketing and sale of tobacco products); Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331-1341.

---

[6] *Available at* http://cancercontrol.cancer.govTCRB/ monographs/14/m14_12.pdf.

21.     The two federal statutes of importance in this case, the CCTA and the PACT Act, assist the States with enforcing their own tobacco laws.

## STATUTORY BACKGROUND

**New York Tax Law**

22.     New York Tax Law § 471 ("Section 471") imposes an excise tax on all cigarettes possessed for sale within the State.

23.     Section 471(1) requires that tax be paid on "all cigarettes possessed in the state by any person for sale", unless the state lacks the power to tax.  The state lacks the power to tax when cigarettes are sold "to qualified Indians for their own use and consumption on their nations' or tribes' qualified reservation", or sold to the United States government or armed forces.  N.Y. Tax L. § 471(1).

24.     The cigarette excise tax and prepaid sales tax are advanced and paid by state-licensed cigarette stamping agents.  N.Y. Tax Law §§ 471(2) and 1103; N.Y. Comp. Codes R. & R. ("NYCRR") tit. 20, § 74.1(b)(1).  A stamping agent must be a person licensed by the Commissioner of Taxation and Finance to purchase tax stamps and to affix tax stamps to packages of cigarettes.  N.Y. Tax Law §§ 470(11) and 472(1); 20 NYCRR § 70.2(g)(1).

25.     The amount of the cigarette excise tax and prepaid sales tax, the payment of both of which is evidenced by the affixation of a state cigarette tax stamp to each pack, is added to, and collected as a part of, the stamping agent's sale price of the cigarettes to subsequent dealers or the consumer.  N.Y. Tax Law §§ 471(2) & (3), and 1103; 20 NYRCC § 74.1(b)(1).  Every dealer receiving stamped packages of cigarettes shall, in turn, advance and pay the cigarette taxes

as part of such dealer's purchase price and shall pass the taxes through to subsequent purchasers as part of such dealer's sale price.  N.Y. Tax Law §§ 471(2) & (3); 20 NYCRR § 74.1(b)(2).

26.      With exceptions not relevant here, all cigarettes possessed for sale in New York must be stamped.  Section 471 requires that the tax be prepaid by stamping agents, and that packages of cigarettes possessed for sale within the State bear a tax stamp affixed by such an agent.  The tax stamps serve as evidence that the cigarette excise tax has been paid.  *See* N.Y. Tax L. §§ 471(2) and 473.

27.      The only entities licensed by the state to receive and possess unstamped cigarettes and to purchase and affix tax stamps to cigarette packages are New York State-licensed stamping agents.   With exceptions not relevant here, any manufacturer or importer shipping unstamped cigarettes in or into New York to anyone other than a state-licensed stamping agent is in violation of Section 471(1).  The possession in New York State by any person other than a licensed New York stamping agent or distributor[7] of more than four hundred (400) unstamped cigarettes at any one time is presumptive evidence that the cigarettes are subject to tax.  N.Y. Tax Law § 481(2)(a).

28.      At all times relevant to this Complaint, the New York State cigarette excise tax has been $4.35 per pack for a New York state tax stamp, or $43.50 per carton of ten packs.

29.      Notably, under N.Y. Tax Law § 471(1), "[i]t shall be presumed that all cigarettes within the state are subject to tax until the contrary is established, and the burden of proof that any cigarettes are not taxable [t]hereunder shall be upon the person in possession thereof."

---

[7] "Distributor" is defined as any person who imports or causes to be imported into New York any "tobacco product" for sale, and any person within or without the state who is authorized by the Commissioner of Taxation and Finance to make returns and pay the tax on "tobacco products" sold, shipped or delivered by him to any person in the state. N.Y. Tax Law § 470(12).  "Tobacco product", in turn, is defined as "[a]ny cigar … or tobacco, *other than cigarettes*, intended for consumption by smoking, chewing or snuff."  *Id.*, § 470(2) (emphasis added).  As defendants specifically sell cigarettes, they are not "distributors" under the Tax Law, and thus not exempted from Section 481(2)'s presumption that possession of more than 400 unstamped cigarettes in New York State means that the cigarettes are subject to tax.

30.     Historically, despite having the power to tax on-reservation sales of cigarettes to the public (i.e., to persons who were not members of the tribe on whose reservation the cigarettes were being sold), *see Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros.*, 512 U.S. 61 (1994), the New York State Department of Taxation and Finance (the Department) had adopted a long-standing policy of forbearance that allowed untaxed cigarettes to be sold from New York State licensed cigarette stamping agents to recognized Indian Nations or tribes and reservation cigarette sellers making retail sales on qualified Indian reservations."

31.     On February 23, 2010, the New York Department of Taxation and Finance ("DTF") revoked its forbearance policy and sought to collect taxes on reservation cigarette sales to non-members of the nation or tribe and to non-Indians.

32.     On June 21, 2010, a bill was signed amending, among other statutes, New York Tax Law §§ 471 and 471-e (collectively, the "amended tax law").  2010 Sess. Law News of N.Y. Ch. 134, Part D and Ch. 136.  The amendment reflected the revocation of the forbearance policy and provides for two alternative systems to ensure that members of an Indian nation or tribe can buy cigarettes tax-free on their own reservation for their own personal use.  The amended tax law became effective on September 1, 2010, but was preliminarily enjoined.  The injunction was lifted, and implementation of the amended tax law began on June 21, 2011.

33.     The amended tax law continues to require state-licensed stamping agents to prepay the tax and affix tax stamps on all cigarette packs transported to, and sold for resale on, Indian reservations, *including those cigarettes intended for resale to tax-exempt tribal members*.

34.     Under the 2010 Amendments, DTF issued a "Technical Memorandum" explaining aspects of the new taxation scheme.  Under the amended tax law and the corresponding regulations, stamping agents are required to collect both the excise and prepaid

sales tax for all cigarettes transported to and sold for resale on an Indian reservation to non-Indians and non-members of the Indian Nation or tribe.  Though stamped, cigarettes sold to members of the Indian Nation or tribe *for their own personal use* are tax-exempt.

35.     The amended Sections 471 and 471-e establish two alternative mechanisms by which Indian nations or tribes can make appropriate quantities of tax-exempt cigarettes available to their members for their personal use and consumption.  These alternatives are referred to, respectively, as the Indian tax-exemption coupon system, and the prior approval system.  Both of these systems contemplate that qualified members may obtain *tax-stamped but tax-free* cigarettes for their personal use.  The tax is pre-paid by the stamping agent and a tax stamp is affixed.  The tax-stamped cigarettes are rendered tax-free by means of a refund to the licensed stamping agents of the taxes paid.  To prevent non-exempt purchasers from obtaining tax-free cigarettes, thus evading the tax, the amended tax law limits the quantity of tax-free cigarettes that may be sold to Indian nations, tribes, and tribal retailers, based on each tribe's "probable demand", which is based on tribal population and the United States averages of cigarette consumption per-capita. *See* Section 471-e(2)(b).

36.     The amended tax law was scheduled to take effect September 1, 2010; however, temporary restraining orders were issued and extant until June 21, 2011, when the last of them were vacated by the New York Appellate Division, Fourth Department, in *Seneca Nation of Indians, et al v. State of New York, et al,* Docket # CA 11-01193. *See also Oneida v. Paterson*, 645 F.3d 154 (2d Cir. 2011) (affirming district court orders which denied motions for preliminary injunctions of amended tax law and vacating district court order which preliminarily enjoined the amended tax law).  The amended tax law thus went into effect June 21, 2011.

37.     Under the amended tax law, any cigarettes transported to qualified reservations for sale must have a cigarette tax stamp affixed to the package.

38.     As a result, cigarettes shipped, delivered, or otherwise transferred to reservations in New York State by manufacturers, distributors, wholesalers, or stamping agents, must be stamped, regardless of whether they are to be sold to an Indian nation or tribe or its members or reservation cigarette sellers.


**The Contraband Cigarette Trafficking Act**

39.     The Contraband Cigarette Trafficking Act focuses on large-scale smuggling by making it a felony punishable by up to five years' imprisonment for any unauthorized person to ship, transport, receive, possess, sell, distribute or purchase more than 10,000 cigarettes that do not bear the tax stamp of the jurisdiction in which they are found.  18 U.S.C. §§ 2341(2), 2342.

40.     The CCTA provides that "[i]t shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco."  18 U.S.C. § 2342(a).  "Contraband cigarettes" are:

> a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes, and which are in the possession of any person…..

18 U.S.C. § 2341(2).

41.     "Together, these provisions establish four elements for a CCTA violation:  that a party (1) knowingly ship, transport, receive, possess, sell, distribute or purchase (2) more than 10,000 cigarettes (3) that do not bear tax stamps, (4) under circumstances where state or local

cigarette tax law requires the cigarettes to bear such stamps." *City of New York v. Golden Feather Smoke Shop, Inc.*, 2009 WL 705815 at *11.  Accordingly, a CCTA violation occurs when any person engages in transactions with the requisite quantity of cigarettes that do not bear a tax stamp required by law.  If a jurisdiction imposes a cigarette tax, and uses stamps to evidence payment of that tax, statutory quantities of unstamped cigarettes present in that jurisdiction are "contraband cigarettes." *See Golden Feather*, 597 F.3d 115, 120-21 (2d Cir. 2010).  "[T]he definition of 'contraband cigarettes' depends only upon the absence of indicia of state tax payment and location in a state requiring such indicia." *United States v. Elshenawy*, 801 F.2d 856, 858 (6th Cir. 1986); *see United States v. Approximately Three Million Six Hundred Nine Thousand Eight Hundred Twenty Cigarettes of Assorted Brands*, 2009 WL 773868 at *5 (W.D. Wash. Mar. 20, 2009) ("Because…state taxes were required on the cigarettes, and state law always required stamps indicating the payment of applicable state taxes, the cigarettes are contraband under 18 U.S.C. § 2341(2).").  CCTA liability is imposed whether or not a person has any statutory duty connected to payment of the tax. "The federal statute makes it a crime for <u>any person</u> knowingly to possess contraband cigarettes.…The [CCTA] does not apply only to the person whom the state law requires to pay the stamps [*sic*], but to anyone who possesses more than [1]0,000 cigarettes without the stamp in violation of the state tax law." *United States v. Skoczen*, 405 F.3d 537, 547 (7th Cir. 2005) (emphasis added).

**The PACT Act**

42.   The PACT Act amended its predecessor, the Jenkins Act, 15 U.S.C. §§ 375-378 (1955).  The Jenkins Act required any person who sold and shipped cigarettes across a state line or Indian reservation to a buyer other than a licensed distributor (typically a state-licensed tax

stamping agent) to report the sale to the buyer's state tobacco tax administrator.  Failure to comply with the Jenkins Act's requirements constituted a federal misdemeanor; violators were subject to fines and up to six months' imprisonment.  *See former* 15 U.S.C. § 377 (1955).

43.     On June 30, 2010, the PACT Act amended the Jenkins Act by imposing broader and stricter regulations and penalties for interstate sales and shipments of cigarettes.  For instance, the PACT Act makes it unlawful to deliver cigarettes and smokeless tobacco through the U.S. Postal Service.  18 U.S.C. § 1716E.

44.     The PACT Act requires any person who "sells, transfers, or ships for profit cigarettes … in interstate commerce, whereby such cigarettes … are shipped into a State … taxing the sale or use of cigarettes" to first register with both the Attorney General of the United States and with the tobacco tax administrator of the State into which such shipment is made.  15 U.S.C. § 376(a)(1).  The registration statement must include the registrant's "name and trade name (if any), and the address of his principal place of business and of any other place of business, as well as telephone numbers of each place of business, a principal [email] address, any website addresses, and the name, address and telephone number of an agent in the State authorized to accept service on behalf of the person."

45.     In addition to registration with the state tobacco tax administrator, the registrant must file monthly reports with such administrator detailing every shipment of cigarettes made in the previous calendar month into the State, including the name and address of the recipient, the brand and quantity of cigarettes in each shipment, and the address and phone number of the person delivering the shipment to the recipient.  15 U.S.C. § 376(a)(2).

46.     Notably, the PACT Act defines "interstate commerce" broadly to mean "commerce between a State and any place outside the State, commerce *between a State and any*

*Indian country in the State*, or commerce between points in the same State but through any place outside the State *or through any Indian county*."  15 U.S.C. § 375(9) (emphasis added).

47.     Penalties for violations of the PACT Act were increased to up to three years in prison, and civil penalties are recoverable, as well as "any other damages, equitable relief, or injunctive relief …, including the payment of any unpaid taxes to the appropriate Federal, State, local, or tribal governments."  15 U.S.C. § 377.

48.     The States were also given the power to enforce the Act's provisions.  15 U.S.C. § 378(c).


**New York Tobacco Product Manufacturer Certification Statute**

49.     Under New York law, "[e]very tobacco product manufacturer … whose cigarettes are sold for consumption in this state shall annually certify under penalty of perjury that, as of the date of such certification, such tobacco product manufacturer: (a) is a participating manufacturer [in the nationwide 1998 Tobacco Master Settlement Agreement ("MSA")]; or (b) is in full compliance with subdivision two of section thirteen hundred ninety-nine-pp of the public health law."  N.Y. Tax L. § 480-b(1) ("Section 480-b").  New York Public Health Law § 1399-pp requires that manufacturers not participating in the MSA pay a certain amount into an escrow fund for each cigarette it sells in the state, roughly equal to the amount it would pay in an annual settlement payment under the MSA if it were a participating manufacturer.

50.     The annual certification under Section 480-b "shall be executed and delivered to the commissioner [of Taxation and Finance], the attorney general and any agent who affixes New York state cigarette tax stamps to cigarettes of such tobacco product manufacturer, no earlier than the sixteenth day of April and no later than the thirtieth day of April of each year,

and shall be accompanied by a list setting forth each of the cigarette brands of such tobacco product manufacturer sold for consumption in New York state." N.Y. Tax L. § 480-b(1).

**New York Cigarette Fire Safety Act**

51.     New York's Cigarette Fire Safety Act ("CFSA"), N.Y. Executive Law § 156-c, was enacted to create fire safety standards for cigarettes sold or offered for sale in the state. The standards created pursuant to the CFSA are meant to ensure either that such cigarettes, when lit, will stop burning within a certain time period if the cigarettes are not smoked during that period, or that such cigarettes meet established performance standards to limit the risk that they will ignite upholstered furniture, mattresses or other household furnishings. N.Y. Executive Law § 156-c(2)(a).

52.     Pursuant to the CFSA, "no cigarettes shall be sold or offered for sale in this state unless the manufacturer thereof has certified in writing to the office of fire prevention and control that such cigarettes meet the performance standards prescribed by the office of fire prevention and control pursuant to subdivision two of this section." N.Y. Exec. Law § 156-c(3). "[N]o person or entity shall sell in this state cigarettes that have not been certified by the manufacturer [as being "fire-safe"] in accordance with subdivision three of this section or that have not been marked [as being "fire-safe"] in the manner required by subdivision six of this section[.]" *Id*. at § 156-c(4). In addition, "[n]o cigarettes shall be distributed, sold or offered for sale in this state unless the manufacturer has placed on each individual package the letters "FSC" which signifies Fire Standards Compliant." *Id*. at § 156-c(6).

53.     The state Attorney General is authorized to bring actions to enjoin acts in violation of the CFSA and to recover civil penalties therefor. *Id*. at § 156-c(8)(a).

**New York Executive Law § 63(12)**

54.     New York Executive Law § 63(12) empowers the state Attorney General to seek injunctive relief, restitution, damages, and costs when any person or business entity engages in repeated fraudulent or illegal acts, or otherwise demonstrates persistent fraud or illegality in the carrying on, conducting or transaction of business.


## Actions of the Defendants

55.     King Mountain manufactures the King Mountain brand cigarettes on the Yakama Reservation in the State of Washington.  It then sells, transfers or assigns the cigarettes to retailers and/or wholesalers in New York State.

56.     Since New York's amended tax law took effect, and continuing through to the present, the defendants have, upon information and belief, knowingly shipped, transported, transferred, sold and distributed large quantities of unstamped and unreported cigarettes to on-reservation wholesalers in New York State.  Such continuing actions by defendants constitute violations of Sections 471 and 480-b of the New York Tax Law.

57.     Large quantities of those cigarettes have in turn been offered for sale at several tribal (i.e., on-reservation) retailers in New York State

58.     Furthermore, no New York state-licensed stamping agent has reported to DTF any sales of King Mountain brand cigarettes in New York.

59.     Defendant King Mountain has not certified in writing to the New York State Office of Fire Prevention and Control that its cigarettes meet the performance standards prescribed by the Office of Fire Prevention and Control pursuant to New York Executive Law

16

section 156-c(2).[8]  Despite this failure to provide the required certification, defendants

distributed, sold , and offered to sell, and continue to distribute, sell, and offer to sell their

cigarettes in and/or into the State of New York.

      60.     Likewise, defendant King Mountain failed to mark its cigarettes as being "fire

safe" in accordance with New York Executive Law § 156-c(6).  Specifically, the manufacturer

King Mountain has not placed on each individual package the letters "FSC" which signifies Fire

Standards Compliant.

**November 6, 2012 Purchase by OAG Agents**

      61.     On November 6, 2012, investigators from the New York State Office of the

Attorney General entered the Poospatuck Reservation in Mastic, New York, for the purpose of

purchasing King Mountain brand cigarettes.

      62.     One of investigators entered the Rising Native Sisters smoke shop located on the

reservation at 114 Poospatuck Lane in Mastic.  The smoke shop had King Mountain brand

cigarettes for sale, as well as other brands.

      63.     There were more than fifty cartons of King Mountain brand cigarettes for sale on

display shelves in the smoke shop at the time.

      64.     While in the smoke shop, the investigator purchased a carton of King Mountain

brand cigarettes for $25.00.

      65.     None of the packs in the carton of King Mountain cigarettes which the

investigator purchased bore a New York State cigarette tax stamp.

---

[8] The list of certified fire-safe cigarettes is available at http://www.dos.state.ny.us/fire/pdfs/cigarettelist.pdf
(identifying those manufacturers that have provided such certifications).

**Volume of Cigarettes Distributed and Sold by Defendants**

66.     A pack of cigarettes contains twenty cigarettes, and a carton contains ten packs, or two hundred cigarettes.  The state excise tax alone on a pack of cigarettes in New York is $4.35, or $43.50 per carton.

67.     On December 3, 2012, the New York State Police stopped and inspected a truck at a routine commercial check point in Clinton County, New York.  Upon information and belief, the source of which is information received by plaintiff from the State Police, the truck was en route to land occupied by the Ganienkeh group in Clinton County, New York.  During the inspection, the State Police discovered approximately 8,400 cartons, or approximately 84,000 packs, of unstamped cigarettes in the truck, all King Mountain brand.

68.     By contrast, DTF has calculated the quarterly probable demand for cigarettes for each of the Indian nations or tribes for the periods September 1, 2011 to August 31, 2012, and September 1, 2012 to August 31, 2013.  For September 1, 2011 to August 31, 2012, the probable demand calculated by DTF was as follows for each quarter for the following Indian nations or tribes (in terms of number of packs of cigarettes): Caygua (15,000); Oneida (23,100); Onondaga (45,000); Poospatuck (Unkechauge) (6,000); Seneca (Allegany, Cattaraugus, Oil Springs) (124,500); Shinnecock (30,000); St. Regis Mohawk (215,100); Tonawanda Band of Senecas (4,200); and Tuscarora (16,200); for a total of 479,100 packs of cigarettes.  And for September 1, 2012 to August 31, 2013, the probable demand calculated by DTF was as follows for each quarter for the same Indian nations or tribes (again, in terms of number of packs of cigarettes): Cayuga (14,400); Oneida (22,200); Onondaga (43,200); Poospatuck (Unkechauge) (5,700); Seneca (Allegany, Cattaraugus, Oil Springs) (120,000); Shinnecock (29,100); St. Regis Mohawk

(207,900); Tonawanda Band of Senecas (3,900); and Tuscarora (15,600); for a total of 462,000 packs of cigarettes.  Thus, this one truckload of 84,000 packs of King Mountain cigarettes accounts for nearly one-sixth of the total quarterly probable demand for all cigarettes on Indian lands in the state.

69.     As the above numbers make evident, defendants have sold and continue to sell very large quantities of unstamped cigarettes to these wholesale dealers and retailers for profit, and with the intention, understanding, and expectation that the cigarettes will be sold to non-tribal consumers in New York State.

70.     Defendants' transfers and shipments of cigarettes take place between at least two points in New York State but through Indian country, and between New York and places outside New York.  As a result, they are in "interstate commerce" as defined in the PACT Act.  *See* 15 U.S.C. § 375(9).

71.     Despite shipping hundreds of thousands of cigarettes in interstate commerce into New York, King Mountain has not registered with DTF pursuant to the PACT Act.

72.     Nor has King Mountain filed any reports whatsoever with DTF pursuant to PACT.

73.     Moreover, King Mountain is a "tobacco product manufacturer" within the meaning of New York Tax Law § 480-b, the above-mentioned certification statute.  That section incorporates New York Public Health Law § 1399-oo's definition of tobacco product manufacturer to include any entity that directly (and not exclusively through an affiliate):

> (a) manufactures cigarettes anywhere that such manufacturer
> intends to be sold in the United States, including cigarettes
> intended to be sold in the United States through an importer …;

          (b) is the first purchaser anywhere for resale in the United States of
          cigarettes manufactured anywhere that the manufacturer does not
          intend to be sold in the United States; or

          (c) becomes a successor of an entity described in paragraph (a) or
          (b) of this subdivision.

N.Y. Public Health L. § 1399-oo(9).

74.    King Mountain manufacturers King Mountain brand cigarettes which it intends be sold in the United States.  As such, King Mountain is a tobacco product manufacturer within the meaning of the certification statute.

75.    King Mountain has never, as required by Section 480-b, certified under penalty of perjury--to the Commissioner of DTF, the Attorney General, or to any New York-licensed stamping agent--that it is either a participating manufacturer under the MSA or is in full compliance with New York Public Health Law § 1399-pp(2) by having deposited the required amount of escrow per cigarette sold in the state.  Nor has King Mountain submitted to any of these officials the list setting forth each of the cigarette brands they sell for consumption in New York state, as required by Section 480-b(1).

## FIRST CLAIM FOR RELIEF

## VIOLATION OF THE CONTRABAND CIGARETTE TRAFFICKING ACT, 18 U.S.C. §§ 2341-2346

76.    Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

77.    Defendants have violated the CCTA by knowingly shipping, transporting, receiving, possessing, selling, and distributing contraband cigarettes within New York State.

78.     As detailed in paragraphs 1 through 69 above, King Mountain's continuing sales and shipments of hundreds of thousands of untaxed and unstamped cigarettes in and into the state of New York--a state which requires that packs of cigarettes to be sold therein bear a state tax stamp to evidence payment of the excise tax--have been, and continue to be, far in excess of the 10,000-cigarette limit imposed by the CCTA.

WHEREFORE, plaintiff prays for the relief as hereinafter set forth.

## SECOND CLAIM FOR RELIEF

## VIOLATION OF THE PACT ACT, 15 U.S.C. §§ 375-378

79.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

80.     Defendants' sales, transfers and shipments of cigarettes for profit to tribal retailers in New York State violate the PACT Act.

81.     Defendants sell, transfer, and otherwise ship such cigarettes to tribal wholesalers and/or retailers in New York State for profit. Such sales, transfers, and shipments have been made between the State of Washington and the State of New York, between New York and Indian country within New York, and/or between two points in New York but through Indian country.  As a result, defendants' sales, transfers and shipments of cigarettes are considered to be made in "interstate commerce" under the PACT Act.  *See* 15 U.S.C. § 375(9).

82.     Accordingly, defendants were required to submit certain filings to the tobacco tax administrator for the State of New York, *i.e.*, DTF.

83.     Nonetheless, defendants did not submit to DTF any of the filings required under the PACT Act for any of their sales, transfers and/or shipments of cigarettes to tribal retailers in New York State.

84.     Specifically, each defendant failed to file with DTF "a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business, as well as telephone numbers for each place of business, a principal electronic mail address, any website addresses, and the name, address, and telephone number of an agent in the State authorized to accept service on behalf of the person." 15 U.S.C. § 376(a)(1).

85.     In addition, each defendant failed to file with DTF "a memorandum or a copy of the invoice covering each and every shipment of cigarettes or smokeless tobacco made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, the quantity thereof, and the name, address, and phone number of the person delivering the shipment to the recipient on behalf of the delivery seller, with all invoice or memoranda information relating to specific customers to be organized by city or town and by zip code[.]"  15 U.S.C. § 376(a)(2).

WHEREFORE, plaintiff prays for the relief as hereinafter set forth.


### THIRD CLAIM FOR RELIEF

### VIOLATION OF N.Y. TAX LAW §§ 471 and 471-e

86.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

87.     Defendants have violated, and continue to violate, New York Tax Law §§ 471 and 471-e by possessing cigarettes for sale in New York State, namely King Mountain brand

cigarettes manufactured and distributed by the King Mountain defendants, upon which no state excise tax has been paid, and the packages of which have no tax stamps affixed.

88.     Defendants likewise violate Section 471's implementing regulations discussed above by failing to ship their unstamped cigarettes from outside New York directly to a New York-licensed stamping agent so that the excise tax can be paid and tax stamps properly affixed.

WHEREFORE, plaintiff prays for the relief as hereinafter set forth.

## FOURTH CLAIM FOR RELIEF

## VIOLATION OF NEW YORK TAX LAW § 480-b

89.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

90.     King Mountain is a "tobacco product manufacturer" as that term is defined in New York Public Health Law § 1399-oo(9) and referenced in New York Tax Law § 480-b.

91.     As explained in detail above, Section 480-b requires a tobacco product manufacturer to file annual certifications with the Commissioner of DTF, the state Attorney General, and any state-licensed cigarette stamping agent who affixes state cigarette tax stamps to the manufacturer's cigarettes, accompanied by a list of the manufacturer's cigarette brands sold for consumption in New York state.

92.     Despite having sold hundreds of thousands of cigarettes in New York, and continuing to sell large quantities of cigarettes in the New York market, the King Mountain defendants have filed no such certifications in accordance with Section 480-b.  Nor have they provided the requisite list of brands they sell for consumption in New York state.

93.     The King Mountain defendants are therefore in continuing violation of Section 480-b.

WHEREFORE, plaintiff prays for the relief as hereinafter set forth.

**FIFTH CLAIM FOR RELIEF**

**VIOLATION OF NEW YORK EXECUTIVE LAW § 156-c**

94.     Plaintiff incorporates by reference all the allegations contained in the previous paragraphs as though fully set forth herein.

95.     Defendant King Mountain has not certified as fire-safe the cigarettes it manufactures which are distributed, sold, or offered for sale in New York, as required by the CFSA, N.Y. Executive Law § 156-c.

96.     Defendant King Mountain has similarly failed to place the required "FSC" (Fire Standards Compliant) mark on the packages of cigarettes it manufactures which are distributed, sold, or offered for sale in New York.

97.     Defendants nevertheless distributed, sold or offered for sale, and continue to distribute, sell or offer for sale in New York, cigarettes manufactured by defendant King Mountain which are not certified as fire-safe and are not consequently marked as "FSC".

98.     Defendants actions thus violate the CFSA.

WHEREFORE, plaintiff prays for the relief as hereinafter set forth.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiff respectfully prays that the Court issue an order and judgment:

a.  Permanently enjoining defendants from violating the CCTA by receiving, possessing or purchasing contraband cigarettes, or shipping, transporting, selling, or distributing contraband cigarettes to New York residents or other persons in New York not authorized to possess unstamped cigarettes, *i.e.*, any person other than a New York state-licensed stamping agent.

b.  Authorizing the Attorney General to seize, forfeit, and otherwise destroy any unstamped cigarettes that are (i) manufactured by King Mountain, (ii) found in New York, and (iii) are being delivered to, or otherwise in the possession of, a person not authorized by the State of New York to possess unstamped cigarettes.

c.  Directing defendants to comply with the registration and reporting requirements of the PACT Act, 15 U.S.C. § 376.

d.  Directing the defendants to comply with the certification requirements mandated by New York Tax Law § 480-b, for the years 2005 through the present.  *See* N.Y. Exec. L. § 63(12).

e.  Directing the defendants to pay to plaintiff civil penalties and money damages as authorized by the CCTA and the PACT Act.  *See* 18 U.S.C. § 2346(b), 15 U.S.C. §§ 377(b), and 15 U.S.C. § 378(c)(1)(A).

f.  Directing the defendants to pay to plaintiff the Attorney General's fees and costs incurred in bringing this action, and any other injunctive or other

equitable relief this Court deems proper pursuant to the PACT Act.  15 U.S.C. § 378(c)(1)(A).

g.    Enjoining the defendants from continued violations of the CFSA and directing the defendants to pay to plaintiff civil penalties authorized by the CFSA.  N.Y. Executive Law § 156-c(8)(a).

h.    Enjoining the defendants, pursuant to New York Executive Law § 63(12), from continuing to violate any of the aforementioned statutes, and directing the defendants to pay to plaintiff restitution and damages associated with defendants' conduct as alleged herein, as well as costs incurred in bringing this action.

i.    Granting all such other and further relief as this Court deems appropriate.

Dated:    May 21, 2014                    ERIC SCHNEIDERMAN
          New York, New York              Attorney General of the State of New York

                                          By: _____

                                          Dana Biberman (DB 9878)
                                            Assistant Attorney General
                                            Chief, Tobacco Compliance Bureau
                                          Christopher K. Leung (CL 6030)
                                          Assistant Attorney General
                                          120 Broadway, 3rd Floor
                                          New York, New York 10271
                                          Telephone: (212) 416-6343
                                          Facsimile: (212) 416-8877