UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
STATE OF NEW YORK,

                         Plaintiff,                  **ORDER**

    -against-                                        12-cv-6276(ADS)(SIL)

MOUNTAIN TOBACCO COMPANY, et al.,

                         Defendants.
------------------------------------------------------------x

**LOCKE, Magistrate Judge:**

Before the Court are two letter motions, DE [153, 158], by Plaintiff State of New York (the "Plaintiff" or "State") seeking to compel jurisdictional discovery and reschedule the deposition of Defendant Delbert Wheeler, Sr. ("Wheeler"). Wheeler and Defendant Mountain Tobacco Company d/b/a King Mountain Tobacco Company Inc. ("King Mountain," together with Wheeler, the "Defendants") submitted letters in opposition to both motions, DE [156, 157, 159, 160].

### I. Background

This action was commenced by the State for alleged violations of the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. §§ 2341-2346, the Prevent All Cigarette Trafficking Act ("PACT Act"), 15 U.S.C. §§ 375-378, and the New York Executive and Tax Laws. *See* Amended Complaint ("Am. Compl."), DE [6], ¶ 2. The Amended Complaint alleges that Mountain Tobacco is a corporation formed under the laws of the Yakama Nation of Indians and has a principal place of business within the Yakama Indian Reservation in White Swan, Washington. *See id.* ¶ 8. In addition, King Mountain has a cigarette-

1

manufacturing factory, warehouse, and distribution facility in the state of Washington. *See id.* Wheeler is the President, co-founder, and 50% co-owner of King Mountain. *See id.* ¶ 10. Plaintiff claims that "King Mountain manufactures the King Mountain brand cigarettes on the Yakama Reservation in the State of Washington [and] then sells, transfers or assigns the cigarettes to retailers and/or wholesalers in New York State." *Id.* ¶ 55. As relevant to this action, Plaintiff claims that Defendants, in violation of federal and state laws, "knowingly shipped, transported, transferred, sold and distributed large quantities of unstamped and unreported cigarettes" in interstate commerce into New York. *Id.* ¶ 56; *see generally id.* ¶¶ 55-60.

By Decision and Order dated October 8, 2014, DE, [129], Judge Spatt denied without prejudice a motion by Wheeler, DE [94], to dismiss the Complaint for lack of personal jurisdiction over him. Specifically, Judge Spatt held that Plaintiff had failed to establish an agency theory of personal jurisdiction over Wheeler—*i.e.*, that he "used King Mountain as his agent and, therefore, King Mountain's contacts [in New York] can be imputed to" him. *Id.* at 17-18. However, Judge Spatt authorized Plaintiff to conduct jurisdictional discovery to "develop a record relevant to the extent of Wheeler's contacts with New York State." *Id.* at 22. King Mountain did not join in the motion. *See* DE [129], at 2.

Consistent with Judge Spatt's Decision and Order, the undersigned ordered the deposition of Wheeler to take place on or before February 13, 2015. *See* DE [148].

2

Plaintiff now moves to compel responses to certain of its requests for jurisdictional discovery, as well to reschedule the deposition of Wheeler to a date after such responses are provided. Defendants oppose both requests.

## II. Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1), parties are entitled to any relevant, non-privileged information which appears reasonably calculated to lead to the discovery of admissible evidence.

## III. Discussion

### A. *Applicable Legal Principles*

There are two concepts of personal jurisdiction as applied to non-domiciliaries, such as Wheeler, in New York: general and specific. *See JetBlue Airways Corp. v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 390 (E.D.N.Y. 2013) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.15, 105 S. Ct. 2174 (1985)). General jurisdiction, predicated upon New York Civil Practice Law and Rules ("CPLR") § 301, does not require "a connection between the cause of action in issue and the foreign defendant's business activities within the state, because the authority of the New York courts is based solely upon the fact that the defendant is 'engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction.' " *Id.* (quoting *McGowan v. Smith*, 52 N.Y.2d 268, 272 (1981)). "Specific jurisdiction, by contrast, applies where the defendant's continuing contacts with the forum state are not substantial but the contacts in the specific matter sued upon are significant, *i.e.*, 'a

State exercises personal jurisdiction over a defendant in a suit . . . arising out of or related to the defendant's contacts with the forum.'" *Id.* at 390-91 (quoting *Burger King Corp.*, 471 U.S. at 473 n.15)).

Here, "the State does not contend that Wheeler's 'contacts with New York are so continuous and systematic that [he] is subject to the jurisdiction of courts in New York on a general jurisdiction theory.'" DE [129], at 15-16 (quoting *Sole Resort, S.A. de C.V. v. Allure Resort Mgmt. LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). Rather, the State relies on a theory of specific jurisdiction, which prompts a two-part analysis, "first determining whether there is a federal or state statutory basis for jurisdiction, and second deciding whether the exercise of jurisdiction comports with due process." *Id.* at 16 (citing *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005)). The proper statutory framework for determining the propriety of exercising personal jurisdiction over Wheeler is New York's long-arm statute—namely, CPLR § 302(a)(1), which provides, in pertinent part, for personal jurisdiction in New York over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state." *See* DE [129], at 16-17 (quoting CPLR § 302(a)(1)). As noted, however, "there is nothing in the amended complaint indicating that Wheeler personally 'transact[ed] any business' . . . in the State of New York." *Id.* Rather, the State relies on an agency theory to impute King Mountain's New York contacts to Wheeler.[1]

To establish that a corporation acted as the agent of its principal(s):

---

[1] Because King Mountain did not join in Wheeler's motion to dismiss, the Court "assume[d], without deciding" that personal jurisdiction over King Mountain exists. DE, [129], at 18.

4

> [A] plaintiff must show that the corporation engaged in purposeful activities in this State . . . for the benefit of and with the knowledge and consent of the [principals] and that [the principals] exercised some control over [the corporation] in the matter. Put another way, the question is whether the out-of-state corporate officers were primary actors in the transaction in New York that gave rise to the litigation.

DE [129], at 18 (quoting *Barron Partners, LP v. Lab123, Inc.*, 07 Civ. 11135, 2008 U.S. Dist. LEXIS 56899, at *30-*31 (S.D.N.Y. July 25, 2008)). Thus, first, personal jurisdiction is appropriate over a corporate officer who "benefit[s] from the [agent-corporation's] course of dealing in New York." *Rainbow Apparel Distrib. Ctr. Corp. v. Gaze U.S.A., Inc.*, 13-CV-3640, 295 F.R.D. 18, 27 (E.D.N.Y. 2013) (collecting cases); *cf. Family Internet, Inc. v. Cybernex, Inc.*, 98 Civ. 637, 1999 U.S. Dist. LEXIS 15549, at *26-*27 (S.D.N.Y. Oct. 6, 1999) (finding no jurisdiction where record failed to demonstrate that corporate officer benefitted from subject transactions). This inquiry is informed by, *inter alia*, the extent to which an officer acquires a financial stake in, or is otherwise financially interrelated with the corporation's activities. *E.g.*, *In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000) (exercising personal jurisdiction where corporate officers "had a substantial financial stake in" the corporation's transactions); *Ross v. UKI Ltd.*, 02 Civ. 9297, 2004 U.S. Dist. LEXIS 2970, at *20 (S.D.N.Y. Mar. 2, 2004) (exercising personal jurisdiction where individual defendant "played an active role in the negotiation of a Joint Venture Agreement . . . while directly and personally benefitting from" the project); *cf. Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 87-CV-191, 1989 U.S. Dist. LEXIS 9107, at *33-*34 (N.D.N.Y. July 31, 1989) (declining to exercise jurisdiction

where the New York representative lacked "the power to contractually bind the foreign defendant").

Second, for purposes of this analysis, "[b]eing a primary actor in the transaction[s] at issue requires that the officer have knowledge and consent to the transaction carried out by the agent-corporation and that the officer have exercised control over the corporation in the transaction." *Basquiat v. Kemper Snowboards*, 96 Civ. 185, 1997 U.S. Dist. LEXIS 12653, at *8 (S.D.N.Y. Aug. 25, 1997). For example, courts have found such a relationship where the corporate officer was "the driving force behind" the corporation's business activities. *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319, 325 (S.D.N.Y. Aug. 4, 1998); *see Sumitomo Copper Litig.*, 120 F. Supp. 2d at 336 (finding jurisdiction over officers where the corporate agent "had no substantial wherewithal apart from" the principal-officers). In addition, courts have recognized that "common ownership" among the corporation and its principal is the "essential factor" in this analysis, *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984), particularly when an officer exercises involvement in and control over the very instrumentalities behind the subject transactions, *see Kinetic Instuments, Inc. v. Lares*, 802 F. Supp. 976, 985 (S.D.N.Y. 1992) (exercising agency jurisdiction where officer was alleged to have been involved in the day-to-day business operations of the corporation, "including the manufacture and sale of the accused product").

"Against this legal backdrop," Judge Spatt determined that Plaintiff had failed to establish personal jurisdiction over Wheeler, and identified a two-fold

pleading deficiency that sets the parameters for permissible jurisdictional discovery: (i) "First, the State fail[ed] to allege sufficient facts, which, if true, sufficiently demonstrate that King Mountain 'engaged in purposeful activities in the State . . . for the benefit' of Wheeler"; and (ii) "Second, the State has not established that King Mountain directed Wheeler to perform any act in New York, let alone as the primary actor in the specific matter in question." DE [129], at 18-19 (citations omitted). Accordingly, the question here is whether the requested documents are reasonably calculated to lead to the discovery of evidence sufficient to establish that: (i) King Mountain engaged in purposeful activities within New York State for the benefit of Wheeler; and (ii) Wheeler was the primary actor in the specific matter in question sufficient to establish personal jurisdiction over him. *See id.*

### *B. Analysis*

Here, Plaintiff seeks responses to the individual discovery requests set forth below. All factual assertions are drawn from the parties' letters in connection with these motions, and Plaintiff's First Set of Jurisdictional Discovery Requests for Production (hereinafter, the "Requests"). *See* Declaration of Christopher K. Leung, sworn to on Jan. 29, 2015, DE [155], Ex. A & B. In order to consider these Requests, the Court notes that the term "New York Distributor" is defined by Plaintiff as "any person . . . that (a) [i]s located within the State of New York, including Indian country within such State, and is a person to whom [King Mountain] or Wheeler sold, shipped, transported, or distributed cigarettes to; or (b)

[i]s identified by King Mountain's Third Supplemental Response to State Interrogatory No. 1. . . ." *Id.* ¶ 10.

*Requests 11, 12, & 13*

Applying this definition, Plaintiff seeks documents and information concerning:

(11) [T]he number of cigarettes sold, shipped, transported, and distributed to, or by, each New York Distributor. This request includes, by way of example and without limitation, any financial statement, report, or analyses; who prepared such documents; and which persons received, reviewed, or had access to such documents;

(12) [T]he revenues, profits, and losses derived from the sale and shipment of cigarettes to each New York Distributor. This request includes, by way of example and without limitation, any financial statement, report or analyses; how such revenues, profits, and losses are measured and derived; who prepared such documents; and which persons received, reviewed, or had access to such documents; and

(13) [A]ny distribution of dividends (including without limitation any recorded or unrecorded profits or dividends) made by [King Mountain] to Wheeler (including any employee, partner, agent, or person acting on Wheeler's behalf). This request includes, by way of example and without limitation, when and how such dividends were distributed, the amount of each dividend, and the portion of each dividend derived from the sale and shipment of cigarettes to, or by, any New York Distributor.

Plaintiff claims this information is relevant to show that Wheeler benefitted from "King Mountain's sales and shipments of contraband cigarettes in New York." DE [153], at 2-3.

Information concerning the volume of cigarettes King Mountain sold and the attendant revenues derived may be relevant to establishing the breadth of King Mountain's activities in New York; however, such facts, even if developed through

further discovery, would not remedy the pleading deficiencies specifically identified by Judge Spatt. The question to be answered through jurisdictional discovery is not whether King Mountain engaged in purposeful activities in New York; that much was assumed. Rather, the question is whether such activities were "for the benefit of, and with the knowledge and consent of" Wheeler. *See CutCo Indus. v. Naughton*, 806 F.2d 361, 366 (2d Cir. 1986); *see also Basquiat*, 1997 U.S. Dist. LEXIS 12653 at *8. Requests 11 and 12, in their current form, are not reasonably calculated to lead to the discovery of such information and, accordingly, the motion to compel is denied as to them.

By contrast, Request 13 is designed to elicit information demonstrating the financial interrelationship between Wheeler and King Mountain and, more specifically, the financial benefit inuring to Wheeler from King Mountain's activities in New York. *See Rainbow Apparel*, 295 F.R.D. at 27. Defendants have not asserted valid bases for withholding such documents. Accordingly, the motion to compel is granted as to Request 13. In addition, to the extent Requests 11 and 12 seek information to allow Plaintiff to assess what percentage of King Mountain's revenues generated from its relationships with New York Distributors were, in turn, remitted to Wheeler, Plaintiff may serve a more narrowly tailored discovery request for that purpose, including seeking deposition testimony concerning this topic.

### *Requests 16 & 17*

Next, Plaintiff seeks documents and communications:

(16) [I]dentifying and concerning any asset, purchase, investment, loan, security, or agreement made or provided or entered into by Wheeler (including any employee, partner, agent, or person acting on Wheeler's behalf) for the benefit or use by [King Mountain]; and

(17) [I]dentifying and concerning any asset held by [King Mountain] and the ownership of such asset, including, by way of example and without limitation, King Mountain's production facility, buildings, warehouse, equipment, vehicles, inventory, and property upon which King Mountain's tobacco is grown.

Plaintiff is entitled to explore whether Wheeler owned, in whole or in part, the very instrumentalities behind King Mountain's activities in New York, especially those directly involved in the manufacture and sale of cigarettes. *See Beech Aircraft Corp.*, 751 F.2d at 120; *Kinetic Instuments, Inc.*, 802 F. Supp. at 985. In addition, the extent to which Wheeler acquired a financial stake in King Mountain's business activities (*e.g.*, by personally negotiating or entering into agreements, posting collateral security for King Mountain's manufacturing and sales obligations, or capitalizing King Mountain's operations) is relevant to the analysis. *See In re Sumitomo Copper Litig.*, 120 F. Supp. 2d 328, 336 (S.D.N.Y. 2000); *Ross*, 2004 U.S. Dist. LEXIS 2970 at *20; *cf. Ball*, 1989 U.S. Dist. LEXIS 9107 at *34. Accordingly, the motion to compel is granted as to Requests 16 and 17.

<u>Requests 23 & 24</u>

Third, Plaintiff seeks:

(23) All documents and communications concerning the identity and locations of any bank or securities accounts held by or for Wheeler (including any employee, partner, agent, or person acting on Wheeler's behalf) or [King Mountain], including the identity of each person authorized to use, access, sign for, or draw upon each account; and

(24) All bank statements concerning any check, payment, wire, or money transfer made or issued to Wheeler (including any employee, partner, agent, or person acting on Wheeler's behalf) or [King Mountain] or by any New York Distributor or any other person located within the State of New York, including Indian country within such State.

These Requests relate to Defendants' financial interrelationship, which, as noted, bears directly upon whether Wheeler benefited from King Mountain's activities in New York and is therefore relevant to the agency analysis. *See Rainbow Apparel Distrib. Ctr.*, 295 F.R.D. at 27; *Retail Software Servs., Inc.*, 854 F.2d at 22; *cf. Family Internet, Inc.*, 1999 U.S. Dist. LEXIS 15549, at *26-*27. In addition, these Requests are aimed at assessing the extent to which Wheeler controlled King Mountain's corporate bank accounts or personally received payments for services provided by King Mountain within New York, which are relevant to whether he was "the driving force behind" the transactions King Mountain allegedly carried out here, *Karabu Corp.*, 16 F. Supp. 2d at 325, and whether King Mountain had any "substantial wherewithal apart from" Wheeler, *Sumitomo Copper Litig.*, 120 F. Supp. 2d at 336.

The Court is unpersuaded by Defendants' argument that these Requests must be read to include only those accounts existing in New York. *See* DE [156], at 3; DE [157], at 3. Defendants offer no compelling basis for concluding that Wheeler's alleged contacts with New York, via his relationship with King Mountain, are reflected only in bank accounts existing within the State. Accordingly, such a narrow construction unjustifiably limits the scope of permissible discovery, and the motion to compel is granted as to Requests 23 and 24.

C. **Wheeler's Deposition**

Based on the foregoing, Plaintiff's motion, DE [158] is granted, and Wheeler's deposition is adjourned until discovery in accordance with this Order is complete. However, the Court notes that the discovery deadlines in this action have already been extended on five separate occasions. And, the parties' submissions paint a polemical picture of their efforts thus far to schedule Wheeler's deposition, which has resulted in the expenditure of time and resources by all involved. Therefore, consistent with this Order, Defendants shall produce responsive documents in their possession on or before March 27, 2015, and Plaintiff shall take Wheeler's deposition within 45 days thereafter, or waive its right to do so. No further extensions of time for this purpose will be granted, absent extreme circumstances.

Dated:   Central Islip, New York
         February 26, 2015                **SO ORDERED**

                                          s/ Steven I. Locke
                                          STEVEN I. LOCKE
                                          United States Magistrate Judge