UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------------X

STATE OF NEW YORK,

*Plaintiff,*     Case No.:  12-CV-6276
(JS) (SIL)

-*against*-

MOUNTAIN TOBACCO COMPANY d/b/a KING
MOUNTAIN TOBACCO COMPANY INC. and
DELBERT WHEELER, Sr.,

*Defendants.*

--------------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**BY DEFENDANT DELBERT WHEELER, SR.**

**HAMBURGER, MAXSON, YAFFE**
**& McNALLY, LLP**
*Attorneys for Defendant Delbert Wheeler, Sr.*
David N. Yaffe, Esq.
Andrew K. Martingale, Esq.
225 Broadhollow Road, Suite 301E
Melville, New York  11747
631.694.2400

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................... 1

THE AMENDED COMPLAINT ........................................... 1

THE PRIOR MOTIONS TO DISMISS ..................................... 3

POINT I      THE AMENDED COMPLAINT FAILS TO STATE A CLAIM
             AGAINST WHEELER ...................................... 5

      A.     The Amended Complaint Fails to State A CCTA Claim
             Against Wheeler ....................................... 6

      B.     The Amended Complaint Fails to State a PACT Act
             Claim Against Wheeler ................................ 10

             (i).   The Facts Alleged in the Amended Complaint
                    Do Not Constitute "Interstate Commerce"
                    Under The Pact Act ............................ 11

             (ii).  The Amended Complaint Fails To Allege That
                    The Cigarettes Are Delivered Into Indian
                    Country of an Indian Tribe Taxing the Sale or
                    Use of Cigarettes ............................. 14

i

(iii).   The Amended Complaint Also Fails To Allege
That Wheeler Is A "Delivery Seller" . . . . . . . . . . . . . . . . . 15

POINT II    WHEELER    IS    NOT    SUBJECT    TO PERSONAL
JURISDICTION IN NEW YORK . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

A.    This Court's October 2014 Decision Held that The
Amended Complaint Fails to Set forth a Prima Facie
Statutory Basis for Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . 20

B.    Because Jurisdictional Discovery Has Now Been
Conducted, The State Must Meet a Higher Standard to
Establish Jurisdiction Over Mr. Wheeler . . . . . . . . . . . . . . . . . . . 22

C.    A Finding of Personal Jurisdiction Would Violate Due
Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## INTRODUCTION

This Memorandum of Law is submitted together with the Declaration of David N. Yaffe, Esq. ("Yaffe Dec.") in support of the renewal motion by defendant Delbert Wheeler, Sr. ("Wheeler") to dismiss for lack of personal jurisdiction and failure to state a claim as to the two claims asserted against him in the Amended Complaint.

## THE AMENDED COMPLAINT

Wheeler is a member of the Yakama Nation, who lives within the borders of the Yakama Reservation in Washington State.  The State of New York ("State" or "Plaintiff") alleges that Wheeler has violated the Contraband Cigarette Trafficking Act, 18 U.S.C. §§ 2341-2346 ("CCTA") and the Prevent All Cigarette Trafficking Act, 15 U.S.C. §§ 375-378 ("PACT Act"), based upon the alleged sale and shipment by defendant Mountain Tobacco Company d/b/a King Mountain Tobacco Company, Inc. ("King Mountain") of untaxed, unstamped and unreported King Mountain brand cigarettes to "tribal retailers" on Indian reservations located within the boundaries of New York.  *See,* DE 96, Yaffe Dec., Exh. "A," Amended Complaint, ¶¶ 57, 78, 80, 83.  Wheeler is alleged to be the President, co-founder and 50% co-owner of King Mountain (*see,* Amended Complaint, ¶ 10), a corporation formed under the laws of the Yakama Nation of Indians" (Amended Complaint, ¶ 8).

Although the Amended Complaint asserts five claims for relief against "defendants," the State has, through the June 16, 2014 Declaration of Assistant Attorney General Christopher K. Leung ("Leung Dec.") (DE 99-2), confirmed that, in fact, only two claims are asserted against Mr. Wheeler.  *See,* Yaffe Dec., Exh. "C," Leung Dec., ¶ 10.

Based upon this confirmation, this Court found that, "[a]lthough the amended complaint asserts five claims for relief against the 'defendants,' the State has, through the declaration of Assistant Attorney General Chrisopher K. Leung dated June 16, 2014 (Docket No. 99-2), represented that, in fact, only two claims — under the CCTA and PACT Act — are asserted against Wheeler." DE 151, Decision and Order, p. 3.

In alleging a violation of the CCTA, the Amended Complaint asserts:

¶ 77. Defendants have violated the CCTA by knowingly shipping, transporting, receiving, possessing, selling, and distributing contraband cigarettes within New York State.

¶ 78. As detailed in paragraphs 1 through 69 above, King Mountain's continuing sales and shipments of hundreds of thousands of untaxed and unstamped cigarettes in and into the state of New York - - a state which requires that packs of cigarettes to be sold therein bear a state tax stamp to evidence payment of the excise tax - - have been, and continue to be, far in excess of the 10,000-cigarette limit imposed by the CCTA.

Amended Complaint, ¶¶ 77-78.

In alleging a violation of the PACT Act, the Amended Complaint asserts:

¶ 80.   Defendants' sales, transfers and shipments of cigarettes for profit to tribal retailers in New York State violate the PACT Act.

¶ 81. Defendants sell, transfer, and otherwise ship such cigarettes to tribal wholesalers and/or retailers in New York State for profit.  Such sales, transfers, and shipments have been made between the State of Washington and the State of New York, between New York and Indian country within New York, and/or between two points in New York but through Indian country. As a result, defendants' sales, transfers and shipments of cigarettes are considered to be made in "interstate commerce" under the PACT Act. *See* 15 U.S.C. § 375(9).

¶ 82. Accordingly, defendants were required to submit certain filings to the tobacco tax administrator for the State of New York, *i.e.*, DTF.

2

¶ 83. Nonetheless, defendants did not submit to DTF any of the filings required under the PACT Act for any of their sales, transfers and/or shipments of cigarettes to tribal retailers in New York State.

¶ 84. Specifically, each defendant failed to file with DTF "a statement setting forth his name and trade name (if any), and the address of his principal place of business and of any other place of business, as well as telephone numbers for each place of business, a principal electronic mail address, any website addresses, and the name, address, and telephone number of an agent in the State authorized to accept service on behalf of the person." 15 U.S.C. § 376(a)(1).

¶ 85. In addition, each defendant failed to file with DTF "a memorandum or a copy of the invoice covering each and every shipment of cigarettes or smokeless tobacco made during the previous calendar month into such State; the memorandum or invoice in each case to include the name and address of the person to whom the shipment was made, the brand, the quantity thereof, and the name, address, and phone number of the person delivering the shipment to the recipient on behalf of the delivery seller, with all invoice or memoranda information relating to specific customers to be organized by city or town and by zip code[.]" 15 U.S.C. § 376(a)(2).

Amended Complaint, ¶¶ 80-85.

## THE PRIOR MOTIONS TO DISMISS

Wheeler previously moved to dismiss the Amended Complaint based upon the grounds that he was not properly served, the court lacks personal jurisdiction over him, and the Amended Complaint failed to state a claim against him (*see*, DE 94 through 94-4). This Court denied so much of the motion to dismiss as asserted lack of proper service. It agreed with Wheeler that "personal jurisdiction is lacking" (DE 129, Order, p. 17), but nonetheless denied "without prejudice, and with leave to renew following the completion of jurisdictional discovery as to Wheeler, that part of Wheeler's motion to dismiss for lack

of 'minimum contacts' personal jurisdiction and for failure to state a claim upon which relief can be granted." DE 129, Order, p. 24.

Prior to the completion of jurisdictional discovery, Wheeler moved to dismiss upon the ground that this Court lacks subject matter jurisdiction. That motion was denied by this Court. *See,* DE 151, Decision and Order. Wheeler had asserted that the restrictions set forth in Section 2346(b)(1) of the CCTA barred a State through its Attorney General from enforcing the CCTA against him because the statute specifies that "[n]o [such] civil action may be commenced . . . against an Indian Tribe or an Indian in Indian Country." He therefore argued that the State has no standing (*i.e.*, no enforcement authority) and this Court thus lacked subject matter jurisdiction. With respect to the PACT Act claim, he argued, *inter alia,* that the PACT Act imposes restrictions on the "delivery sale" of cigarettes to "consumers," yet the alleged sales of King Mountain cigarettes to "tribal retailers" (Amended Complaint, ¶¶ 80, 83) and "on-reservation wholesalers" (Amended Complaint, ¶56) did not constitute such sales because the PACT Act *excludes* from the definition of "consumer" a person "lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes."

This Court concluded that these arguments did not demonstrate a lack of subject matter jurisdiction, but rather go to "whether the State can prove that the federal statute[s] at issue appl[y] to [Wheeler] or his conduct" (DE 151, Order, p. 8), noting that "[t]his is not stay [sic] that the State's claims against Wheeler under the CCTA or PACT Act would withstand 12(b)(6) scrutiny" (*Id.*). However, this Court refrained from addressing the

4

motion under 12(b)(6), "because the Court has previously found that it does not, based on the existing record, have personal jurisdiction over Wheeler," and had permitted the State to conduct jurisdictional discovery, and, therefore, could not "yet resolve a motion to dismiss for failure to state a claim" (DE 151, Order, p. 9). As this Court concluded, "the Court lacks the power to dismiss the amended complaint for failure to state a claim as against Wheeler, absent personal jurisdiction over him (DE 151, Order, p. 11).

### POINT I

### THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST WHEELER.[1]

Rule 8(a)(2) provides that a civil complaint "shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." "The Second Circuit has recognized that [t]he purpose of Rule 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits. The Rule thus assesses the legal feasibility of the complaint, but does not weigh the evidence that might be offered to support it." United States v. Int'l Longshoreman's Ass'n., 518 F.Supp.2d 422, 457 (E.D.N.Y. 2007), citing, Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006). Although, for the purposes of such review all factual allegations are accepted as

---

[1] We recognize that this Court is required to first determine whether it has personal jurisdiction over Wheeler (see, Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)("[L]ogic compel[s] initial consideration of the issue of jurisdiction over the defendant - a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim"). However, for organizational purposes the 12(b)(2) aspect of Wheeler's motion is presented at Point II, infra.

true, the Court is to give "no effect to legal conclusions couched as factual allegations." Starr v. Sony BMG Music Entertainment, 592 F.3d 314, 321 (2d Cir. 2010).

Likewise, Rule 12(b)(6) "is designed to screen out cases where a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted.'" Port Authority of New York and New Jersey v. Arcadian Corp., 189 F.3d 305, 312 (3d Cir. 1999). A motion made under Rule 12(b)(6) "challenges the legal theory of the complaint, not the sufficiency of any evidence that might be adduced. The purpose of the rule is to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 326-27 (1989).

## A.     The Amended Complaint Fails to State A CCTA Claim Against Wheeler.

Although the CCTA authorizes a "State, through its Attorney General . . . [to] bring an action in the United States district courts to prevent and restrain violations of [the CCTA]," (18 U.S.C. § 2346(b)(1)), that same provision contains a prohibition specifying that, "No civil action may be commenced under this paragraph against an Indian tribe or *an Indian in Indian country* (as defined in section 1151)." *Id.* (emphasis added); *see also*, City of New York v. Wolfpack Tobacco, 2013 WL 5312542 *2 (S.D.N.Y. 2013) (observing that the City of New York did "not make a CCTA claim against the ["Indian"] Defendants directly" in light of the restriction); City of New York v. Gordon, 1 F.Supp.3d 94 (S.D.N.Y.

2013) (noting the restriction and its applicability to an individual member of the Seneca Nation of Indians but not to his wife, who was not a member of the Seneca Nation).

18 U.S.C. § 1151 defines "Indian country," *inter alia,* as "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and including rights-of-way running through the reservation." 18 U.S.C. § 1151(a). The Yakama reservation was established by a treaty between the Yakama people and the United States government, ratified by the United States Senate and signed by President James Buchanan in 1859. *See,* 12 Stat. 951, Articles I and II, 1859 WL 10142 (June 9, 1855). As such, the land within the Yakama reservation constitutes "Indian country" as defined by 18 U.S.C. § 1151(a) and as incorporated by express reference into the restriction set forth in the CCTA at 18 U.S.C. § 2346(b)(1).

Nowhere in the Amended Complaint does the State allege that Wheeler is not an "Indian in Indian country." Thus, the State has failed to satisfy the pleading requirements necessary to aver a legal entitlement to relief against Wheeler under the CCTA. In any event, there is no genuine dispute that Wheeler is, in fact, a member of the Yakama Nation, that he lives within the borders of the Yakama Reservation in Washington State and that the Yakama Reservation was established through a treaty with the Federal Government and is under Federal Government jurisdiction. In short, he is an "Indian in Indian country."

In this regard, the Amended Complaint asserts that King Mountain "is a corporation formed under the laws of the Yakama Nation of Indians" (Amended Complaint, ¶ 8), "is located within the Yakama Indian Reservation" (*Id.*) and conducts its manufacturing

7

operations "on the Yakama Reservation" (Amended Complaint, ¶ 55).  The Amended Complaint alleges that Wheeler "is a Washington State resident; is the President, co-founder, and 50% co-owner of King Mountain" (¶ 10), but it makes no allegation as to his status as a member in the Yakama Nation of Indians.  Nonetheless, the State admitted in the Leung Declaration previously filed with this Court, that "Mr. Wheeler is also an enrolled member of the Yakama Indian Nation" (Leung Dec., ¶ 30 (DE 99-2), and King Mountain averred in its Answer, "Delbert Wheeler, Sr. is an enrolled member of the Yakama Nation, he resides on Trust lands within the exterior boundaries of the Yakama Nation's Reservation."  Yaffe Dec., Exh. "B," King Mountain Answer, ¶ 7 (DE 47).

Previously, the State had argued that the Indian restriction does not apply to "non-reservation activities" of Indians, such as shipping cigarettes "into the State of New York" (see, DE 147, State MOL, p. 5)[2] and that the only "Indians" protected against State claims are "tribal government officials."  See, DE 147, State MOL, p. 6.  Acceptance of this argument would violate basic rules of construction by changing the statutory term "an Indian in Indian country" to "an Indian *tribal government official for acts taken* in Indian country."  See, Connecticut National Bank v. Germain, 503 U.S. 249, 253-54 (1992) (citations omitted) ("in interpreting a statute a court should always turn first to one, cardinal canon before all others," namely that "courts must presume that a legislature says

---

[2]This argument ignores the fact that the State does not allege that King Mountain ships cigarettes "into the State of New York," but rather alleges that it ships cigarettes "to on-reservation wholesalers" (¶ 56) and "tribal retailers" (¶ 80) located on tribal land within New York. In other words all of the alleged transactions concern the shipment of cigarettes into reservations, not into the State.

in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete"); United States v. Desposito, 704 F.3d 221, 226 (2d Cir.2013) ("In construing a statute, we begin with the plain language, giving all undefined terms their ordinary meaning").

Moreover, the State's argument has been rejected by *every* court that has considered the issue. Thus, in discussing the restriction in City of N.Y. v. Milhelm Attea & Bros., Inc., 550 F.Supp.2d 332, 346 (E.D.N.Y. 2008) (emphasis added), this Court held, "However, amendments to the statute enacted in 2006 provide that no civil action may be commenced by a state or local government against an Indian tribe or an Indian in Indian country *for violations of the CCTA*." The State's contrary argument, that the restriction does not apply to off-reservation CCTA violations, ignores this holding, and also makes no sense because a violation of the CCTA necessarily presumes and involves activities between different jurisdictions. Indeed, as this Court has held, "[t]he CCTA is expressly concerned with the flow of contraband cigarettes *between jurisdictions with differing tax obligations*, and the resulting deleterious effects on state and local tax collection." City of N.Y. v. Milhelm Attea & Bros., Inc., 2012 WL 3579568, *15 (E.D.N.Y. 2012) (emphasis added).

In City of N.Y. v. Golden Feather Smoke Ship, Inc., 2009 WL 705815, *12 (E.D.N.Y. 2009) (emphasis added), this Court recognized the CCTA restriction as "the statutory *exemption*," and held that the analysis of whether the "Indian" in question "qualif[ies]" for the exemption turns upon whether the "land on which [the] Native American[] *reside[s]* is 'Indian country' (*Id.* at *11-12). This holding refutes the State's position. There, because

9

the Unkechauge Nation "has no relationship with the federal government" and is therefore not "Indian country" as defined by the CCTA, this Court concluded that, in that particular case, "the CCTA exemption for 'Indian[s] in Indian country' is not a bar to the City's CCTA claims." *Id.* at 12.

Consistent with these Eastern District rulings, the Southern District held in <u>City of N.Y. v. Gordon</u>, 1 F.Supp.3d 94, 103 (S.D.N.Y. 2013) (quotation marks and citations omitted), "[t]he CCTA permits the City to bring an action in the United States district courts to prevent and restrain violations of [the Act] by any person except an Indian tribe or an Indian in Indian country. As Marcia Gordon is not herself an Indian in Indian country, she may - under the plain text of the Act - be sued for its violation." Notably, Mrs. Gordon (a non-Indian) and her husband defendant Robert Gordon ("a member of the Seneca Nation of Indians" (*Id.* at 99)) were selling cigarettes to customers in New York City (*i.e.,* off-reservation), and the Court stressed that "under the CCTA" the City only sought "a preliminary injunction against . . . Marcia Gordon (but not Robert Gordon)" (*Id.* at 102).

For all of these reasons, the Amended Complaint fails to state a CCTA claim enforceable by plaintiff against Mr. Wheeler (an "Indian in Indian Country"), and the claim should therefore be dismissed.

**B.** **The Amended Complaint Fails to State a PACT Act Claim Against Wheeler.**

At Paragraph 55 of the Amended Complaint, the State alleges that, "King Mountain manufactures the King Mountain brand cigarettes *on the Yakama Reservation in the State of Washington.* It then sells, transfers or assigns the cigarettes to retailers and/or wholesalers

in New York State" (emphasis added). At Paragraph 80 of the Amended Complaint, the State specifies that such sales are "*to tribal retailers* in New York [and] violate the PACT Act" (emphasis added). While the State posits the legal conclusion that such sales constitute "interstate commerce" and that Mr. Wheeler has failed to make associated document filings (*see,* Amended Complaint, ¶¶ 82-85), the allegations actually establish, as a matter of law, that the State has no PACT Act claim against Mr. Wheeler individually (or even against King Mountain), because such alleged sales do not constitute "interstate commerce" as defined by the statute. Moreover, such sales are not alleged to be shipped into Indian Country which taxes such sales, and the State does not allege that Wheeler is a "delivery seller." All of these deficiencies are fatal to the State's PACT Act claim.

### (i).   The Facts Alleged in the Amended Complaint Do Not Constitute "Interstate Commerce" Under The Pact Act.

A threshold requirement for liability under the PACT Act, is that the sale, transfer or shipment of cigarettes must be made in "interstate commerce."

> Any person who sells, transfers, or ships for profit cigarettes or smokeless tobacco in *interstate commerce,* whereby such cigarettes or smokeless tobacco are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco, or who advertises or offers cigarettes or smokeless tobacco for such a sale, transfer, or shipment, shall . . . .[3]

15 U.S.C. § 376(a) (emphasis added).

---

[3]The "shall" in that section is followed by three paragraphs delineating the reporting requirements to the State tobacco tax administrator.

The term "interstate commerce," is *not* defined as under Supreme Court jurisprudence. Rather, the PACT Act provides the following applicable definition:

> (A) The term "interstate commerce" means commerce between a State and any place outside the State, commerce between a State and any Indian country in the State, or commerce between points in the same State but through any place outside the State or through any Indian country.

> (B) A sale, shipment, or transfer of cigarettes or smokeless tobacco that is made in interstate commerce, as defined in this paragraph, shall be deemed to have been made into the State, place, or locality in which such cigarettes or smokeless tobacco are delivered.

15 U.S.C. § 375(9).

Thus, there are only three scenarios that qualify as "Interstate Commerce" under the PACT Act:

> (1) commerce between a "State" and "any place outside the State";

> (2) commerce between a "State" and "any Indian country in *the State*"; or

> (3) commerce between points in the same State, but through either (a) any place outside the State or (b) any Indian country. *Id.* (emphasis added).

It is clear that under each of the three scenarios, the transaction must either begin or end with the "State." The PACT Act statutorily defines "State" as "each of the several States of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States" (15 U.S.C. § 375(11)), but does *not* include "Indian country," which is separately defined (15 U.S.C. § 375(8)). Also, it is clear that none of those three statutorily defined scenarios include commerce between, within or among "Indian country." Thus, a sale from the Yakama Reservation in Washington, i.e.,

12

"Indian country," to Indian retailers on the Seneca Nation Reservation in New York, also "Indian country," does not qualify as "interstate commerce" under the PACT Act.

Further, none of those three scenarios include a transaction between Indian country, and a State in which that Indian country is not located; rather, a qualifying transaction must be between "a State and any Indian country in *the* State." 15 U.S.C. 375(9) (emphasis added). For example, in <u>City of New York v. Gordon</u>, the court held that "'All Of Our Butts' shipped cigarettes from an Indian Reservation [the Seneca Nation of Indians located within New York's geographic boundaries] to New York City residents, thus selling cigarettes in interstate commerce." <u>Gordon</u>, 1 F.Supp.3d at 101. In contradistinction, a sale from the Yakama Reservation in Washington to New York City (which has not occurred here) would not constitute "interstate commerce" because the Yakama Reservation (*i.e.,* Indian country) is not in "the State" where the cigarettes are delivered. More importantly, a sale as we have here from the Yakama Reservation "delivered" to Indian Country in New York (*i.e.,* Indian country to Indian country) does not constitute "interstate commerce." To hold otherwise would violate the plain language of the statutory definition.

Here, the section of the Amended Complaint titled "Actions of the Defendants" makes clear, that no interstate commerce occurred. That section begins by stating that "King Mountain manufactures the King Mountain brand of cigarettes on the Yakama Reservation in the State of Washington." Amended Complaint ¶ 55. There can be no doubt that, under the PACT Act, the Yakama Reservation is Indian country, and not a State. Thus, all of the alleged transactions began in "Indian country."

The next paragraph alleges that "defendants have, upon information and belief, knowingly shipped, transported sold and distributed large quantities of unstamped and unreported cigarettes to *on-reservation wholesalers* in New York." Amended Complaint ¶ 56 (emphasis added); *see also*, ¶ 80 ("Defendants' sales, transfers and shipments for profit *to tribal retailers* in New York State violate the Pact Act."). Thus, all such commerce or transactions were destined for Indian country. And as stated above, the PACT Act's narrow and specific statutory definition of "interstate commerce" does not include Indian country to Indian country transactions. *See again*, 15 U.S.C. § 375 (9). Nor is it relevant that these shipments passed through States, before arriving at their Indian country destination. The statute is clear that the sale, shipment, or transfer is considered to be made where the cigarettes "are delivered." 15 U.S.C. § 375 (9)(B).

The statute is very clear that Indian country is *not* part of the State, and that neither (1) transactions from Indian Country to Indian Country or (2) transactions between Indian Country and a State in which that Indian Country is not located, are "interstate commerce." If Congress had intended to include those types of transactions as interstate commerce, it certainly could have; however, to read the statute as having any such intention would fly in the face of the statute's plain language. Thus, the PACT Act claim should be dismissed.

### (ii).   The Amended Complaint Fails To Allege That The Cigarettes Are Delivered Into Indian Country of an Indian Tribe Taxing the Sale or Use of Cigarettes.

Even if this Court found that Wheeler was engaged in "interstate commerce," section 376(a) of the PACT Act only requires reporting to the State tobacco tax administrator when

14

"cigarettes or smokeless tobacco are *shipped into* a State, locality, *or Indian country of an Indian tribe taxing the sale or use of cigarettes or smokeless tobacco . . . .*" 15 U.S.C. § 376(a) (emphasis added). Here, the Amended Complaint contains no allegation that the Indian country of the Indian tribes to which King Mountain's cigarettes were sold and shipped, tax the sale or use of King Mountain cigarettes or smokeless tobacco. For this additional reason, the Amended Complaint fails to state a claim against Wheeler under the PACT Act.

### (iii). The Amended Complaint Also Fails To Allege That Wheeler Is A "Delivery Seller."

While the heart of the PACT Act is the regulation of "delivery sales," no such sales are alleged here. This failure should necessarily frame this Court's analysis of the PACT Act claim, assuming the State could overcome the hurdles identified above (it cannot). The Second Circuit has synthesized the various provisions of the PACT Act as follows:

> The PACT Act, signed into law on March 31, 2010, imposes strict restrictions on the '*delivery sale*' of cigarettes and smokeless tobacco. Pub.L. No. 111-154, § 2(a), 124 Stat. 1087, 1088 (2010). A '*delivery sale*' occurs when the buyer and seller are not in each other's physical presence at the time the buyer requests or receives the cigarettes, as when cigarettes are ordered over the Internet and delivered by mail. 15 U.S.C. § 375(5). In order to 'prevent tobacco smuggling' and 'ensure the collection of all tobacco taxes,' the statute demands that *delivery sellers* 'comply with the same laws that apply to law-abiding tobacco retailers.' 124 Stat. at 1087-88. To that end, the PACT Act *requires delivery sellers* to pay excise taxes, obey licensing and tax-stamping requirements, and otherwise comply with state and local tobacco laws 'as if the *delivery sales* occurred entirely within the specific State and place' where the tobacco product is delivered.'

Red Earth LLC. v. United States, 657 F.3d 138, 141 (2d Cir. 2011) (emphasis added).

15

The PACT Act places restrictions upon the "delivery sale" of cigarettes to "consumers" and, in association with such sales, provides a vehicle to enforce the payment of state and local excise taxes, compliance with state and local tax stamping requirements and state and local restrictions against sales to minors. *See,* 15 U.S.C. § 375(4), (5) and 15 U.S.C. § 376a; *see also,* <u>City of New York v. Wolfpack Tobacco</u>, 2013 WL 5312542, *3 (S.D.N.Y. 2013) ("The PACT Act regulates remote sales of cigarettes, and imposes a variety of requirements on sellers of cigarettes with the aim of ensuring that taxes are paid and cigarettes are not sold to children").

A "delivery sale" "means any sale of cigarettes or smokeless tobacco *to a consumer*" under certain delineated circumstances, typically involving the on-line or mail order purchase of cigarettes (as opposed to a purchase in the physical presence of the seller). *See,* 15 U.S.C. § 375(5) (emphasis added). A "consumer" is defined as: (A) "any person that purchases cigarettes or smokeless tobacco; *and* (B) *does not include* any person lawfully operating as a manufacturer, distributor, *wholesaler,* or *retailer of cigarettes* or smokeless tobacco." *See,* 15 U.S.C. § 375(4)(A),(B) (emphasis added).

The Amended Complaint does *not* allege that Wheeler (or, for that matter, King Mountain) is a "delivery seller" or that he has violated any of the "delivery sale" restrictions set forth in the PACT Act. Rather, the allegations in the Amended Complaint concern cigarette sales to tribal wholesalers and/or retailers, which, by definition, are *not* "consumers" under the statute. *See,* 15 U.S.C. § 375(4)(B). The State thus does *not* allege that Wheeler (or, for that matter, King Mountain) violated the "general" restrictions set

16

forth in § 376a(a) (requiring "delivery sellers" to comply with state and local laws including laws imposing excise taxes, licensing and tax-stamping requirements, and restrictions on "delivery sales" to minors), the "shipping and packaging" restrictions set forth in § 376a(b), or the "records" restrictions set forth in § 376a(c).

Instead, the State seeks to invoke the enforcement provisions of the PACT Act with respect to the *non*-delivery sale of King Mountain cigarettes to "tribal retailers in New York State" (Amended Complaint, ¶¶ 80, 83) which it characterizes as "wholesale dealers and retailers" (Amended Complaint, ¶ 69). The State maintains that Wheeler (and King Mountain) failed to "submit certain filings to the tobacco tax administrator for the State of New York, *i.e.,* DTF" (Amended Complaint, ¶ 82), consisting of: (a) statements setting forth the defendants' trade name, address and phone number and its agent in the state authorized to accept service (*see,* Amended Complaint, ¶ 84, citing 15 U.S.C. § 376(a)(1)); and (b) invoices or memoranda related to every "delivery seller" shipment of cigarettes or smokeless tobacco during the previous calendar month (*see,* Amended Complaint, ¶ 85, citing 15 U.S.C. § 376(a)(2)). It is nowhere alleged how or why Wheeler would have to make such filings independent of King Mountain, where there is no allegation that Wheeler undertook actions separate or independent from King Mountain.

Inasmuch as the Amended Complaint does not allege a single underlying "delivery sale" of cigarettes, nor could it, the State has not stated a claim against Wheeler under which it can compel him to comply with the delivery sale invoice/memoranda filing requirement of § 376(a)(2). In short, it fails to state a claim against him. Indeed, §

17

376(a)(2) expressly posits the reporting requirement on there having been a "delivery seller," and here none is alleged.

The thrust of the invoice/memoranda filing requirement set forth in § 376(a)(2) and the trade name and agent filing requirement set forth in § 376(a)(1) is to aid in the enforcement of the "delivery sale" restrictions set forth in § 376a (of which *no violation* is asserted). Thus, as the Sixth Circuit observed, referring to such filings, in <u>United States v. Contents of Accounts</u>, 629 F.3d 601, 603 (6th Cir. 2011)(emphasis added), "[t]hese disclosures are meant to aid the states in collecting taxes from *consumers*, whose cigarette purchases might otherwise go undetected"). Indeed, the PACT Act does not impose a civil penalty for the mere failure to file trade name and agent statements or to file reports on "interstate commerce" sales which are not also "delivery sales" (*i.e.*, sales to "consumers"), and thus do not invoke the "delivery sales" restrictions set forth in § 376a. *See,* 15 U.S.C. § 377(b). Rather, the penalties section of the statute only applies to violations of the "delivery sales" provisions. *See,* 15 U.S.C. § 377(b). No case holds that the provisions of § 376(a)(1) and (2) may nonetheless be enforced by a state, through its Attorney General, in the absence of an underlying "delivery sale" (*i.e.*, a sale to a "consumer" as opposed to a retailer/wholesaler) in that particular state.

Likewise, the State's limited authority to bring an enforcement proceeding pursuant to the PACT Act is expressly premised upon the State's suffering an actual *harm* sought to be prohibited by the statute; *i.e.*, a defendant's "delivery sale" of cigarettes to minors or a

18

defendant's failure to pay State and local taxes in connection with the "delivery sale" of cigarettes to "consumers" in that State.  Nothing of the kind is alleged here.

Previously, the State argued that it "adequately alleges" a "colorable" PACT Act claim because the tribal retailers are not actually "lawfully operating" and are therefore "consumers" (DE 147, State MOL, pp. 7, 8, 9).  It maintained that, because none of the tribal retailers are "licensed stamping agents," they are "not 'lawfully operating' as a wholesaler or retailer of cigarettes" (DE 147, State MOL, p. 9).  This is meritless.

First, the Amended Complaint itself does *not* allege "delivery sales," so the argument is mere sophistry.  Second, nothing in the statute requires a wholesaler/retailer to also be a "licensed stamping agent" in order to be "lawfully operating."  To the contrary, it expressly distinguishes a "consumer" from "any person lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes," without mention of the term "stamping agent."  15 U.S.C. § 375(4).  Nothing more.  Third, the expression in the statute is "lawfully operating *as a* . . . retailer" (emphasis added), *not* "a lawfully operating retailer."  In other words, the plain language of the statute simply requires that the retailer/wholesaler be operating *as a* bona fide or legitimate business (*i.e.,* lawfully engaged in such a business), not that it be compliant with every law in order to retain its non-"consumer" quality.  Finally, and in any event, the Amended Complaint does not allege that the *non-party* tribal retailers are not "lawfully operating," and no such determination could be made in their absence.

19

In sum, because the allegations in the Amended Complaint fail to constitute "interstate commerce," because there is no allegation that the Indian country where the tribal retailers (*i.e.*, King Mountain's customers) are located tax the sale or use of such cigarettes, and because, in any event, no "delivery sales" are alleged to have occurred, and Wheeler is not alleged to have acted independently of King Mountain, the PACT Act claim should be dismissed.

**POINT II**

**WHEELER IS NOT SUBJECT TO PERSONAL JURISDICTION IN NEW YORK.**

Mr. Wheeler's prior motion to dismiss the Amended Complaint for lack of personal jurisdiction (*see*, DE 94 through 94-4) was denied, "without prejudice and, with leave to renew following the completion of jurisdictional discovery as to Wheeler . . . ." DE 129, Order (the "October 2014 Decision") p. 3. Wheeler hereby renews that motion.

A.   **This Court's October 2014 Decision Held that The Amended Complaint Fails to Set forth a Prima Facie Statutory Basis for Jurisdiction.**

The relevant portion of this Court's October 2014 Decision begins with a finding that, as a threshold matter, New York's long-arm statute, CPLR § 302, is the standard under which the State must make its *prima facie* showing of personal jurisdiction for all of its causes of action against Wheeler. As this Court stated, CPLR § 302 "provides three alternative bases — namely, CPLR § 302(a)(1), (2) and (3) — for personal jurisdiction over Wheeler. *However, the Court finds that personal jurisdiction is lacking under each of these provisions.*" DE 129, Order p. 17 (emphasis added). As this Court continued:

20

In this case, there is nothing in the amended complaint indicating that Wheeler personally "transact[ed] any business" or "commit[ted] a tortious act" in the State of New York. Rather the State relies on a theory of agency doctrine to argue that Wheeler used King Mountain as his agent and, therefore, King Mountain's contacts can be imputed to Wheeler.

DE 129, Order p. 17 – 18.

In dispensing with the State's agency argument, this Court cited to <u>Barron Partners, LP v. Lab123, Inc.</u>, which states:

> To establish that a corporation acted as its principal's agent, a plaintiff must show that the corporation engaged in purposeful activities in this State ... for the benefit of and with the knowledge and consent of the [principals] and that [the principals] exercised some control over [the corporation] in the matter. Put another way, the question is whether the out-of-state corporate officers were primary actors in the transaction in New York that gave rise to the litigation. This means that a plaintiff must show that defendants exercised some control over the corporate actions allegedly taken in New York. Specifically, in order to make a prima facie showing of control, a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a primary actor in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations that the defendant controls the corporation. Where the plaintiff has made only broadly worded or vague allegations about a defendant's participation in the action allegedly taken in New York, courts have routinely granted motions to dismiss for lack of personal jurisdiction.

07 CIV. 11135 (JSR), 2008 WL 2902187, *10 (S.D.N.Y. July 25, 2008) (citations and quotation marks omitted).

This Court went on to hold that:

> Against this legal backdrop . . . the State's agency theory fails on two independent grounds. First, the State fails to allege sufficient facts, which, if true, sufficiently demonstrate that King Mountain 'engaged in purposeful activities in the State . . . for the benefit of Wheeler. *See id.* Second, the State has not established that King Mountain directed Wheeler to perform any act in New York, let alone as the primary actor in the specific matter in question.

21

In this regard, aside from Wheeler's positions within King Mountain, the State does not offer any allegations to indicate that Wheeler exercised control over King Mountain's activities in New York. By grouping his activities in with the alleged conduct of King Mountain, the State provides no basis for the Court to determine whether Wheeler was a primary actor orchestrating the allegedly tortious conduct, or whether he was named in the complaint simply because his name appeared at the top of King Mountain's masthead." Indeed, "courts in this district have . . . routinely granted 12(b)(2) motions for lack of personal jurisdiction where the plaintiff made only broadly worded and vague allegations about a defendant's participation in the specific matter at hand.

DE 129, Order p. 18 – 20 (internal citations and quotations omitted).

This Court concluded that there was "no *prima facie* statutory basis for personal jurisdiction[.]"  Thus, it did not even reach the issue of "whether the exercise of such jurisdiction would comport with due process." *Id.* at 20.  In lieu of dismissing the Amended Complaint, however, the State was granted leave to conduct jurisdictional discovery, which has since been completed.  Nothing has changed.  The Amended Complaint stands as is — devoid of allegations sufficient to confer personal jurisdiction over Wheeler.  Thus, the State's Amended Complaint must be dismissed as to him.

**B.**     **Because Jurisdictional Discovery Has Now Been Conducted, The State Must Meet a Higher Standard to Establish Jurisdiction Over Mr. Wheeler.**

The nature of the plaintiff's burden of establishing personal jurisdiction over a defendant varies, depending on the procedural posture of the action.  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith legally sufficient allegations of jurisdiction." Ball v. Mettalurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990); *see also*, Ingenito v. Riri USA, Inc.,

11–CV–2569 (MKB),2015 WL 574130, *5 (E.D.N.Y. Mar. 3, 2015).  "At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." Ball, at 197.  "After discovery, the plaintiff's *prima facie* showing, necessary to defeat a jurisdiction testing motion, must include an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.  At that point, the *prima facie* showing must be factually supported." *Id.* (internal citations omitted); *see also*, Ingenito, at *10 ("Conclusory allegations based only on information and belief are not sufficient to provide such factual support.").  Further, the court "will not draw argumentative inferences in the plaintiff's favor and need not accept as true a legal conclusion couched as a factual allegation." Ingenito, at *6.

As set forth above, this Court previously held that the Amended Complaint did not even meet the low *prima facie* standard.  *See*, Point II(A), *supra*.  Now the State faces a higher standard, which has not been met though the Amended Complaint.

**C.    A Finding of Personal Jurisdiction Would Violate Due Process.**

If this Court were to nonetheless find that the State has established a statutory basis for personal jurisdiction over Mr. Wheeler under CPLR § 302(a), "it must next determine whether such an exercise of jurisdiction comports with due process." Karabu Corp. v. Gitner, 16 F.Supp.2d 319, 323 (S.D.N.Y. 1998) (*citing* Metro. Life Ins. Co. v. Robertson–Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).  Due process requires that a defendant have "minimum contacts" with the forum state such that the maintenance of the action does not offend "traditional notions of fair play and substantial justice." Int'l Shoe

23

Co. v. Washington, 326 U.S.310, 316, 66 S.Ct. 154 (1945). "The defendant's activity in the state should be such that it would fair and reasonable to require him to defend himself in the state." Karabu, at 323.

Here, Mr. Wheeler has no contacts with New York State.  He lives and resides in the Yakama Nation which is located within the geographic boundaries of the state of Washington, and has never been to New York. *See*, Yaffe Dec, Exh. "D," Wheeler Dec. ¶¶ 5-6.  He does not conduct or transact business, have an office or own real property in New York. *Id.* at ¶ 7-12.  Even the CCTA recognizes that "Indians in Indian country" must be treated differently and are entitled to an expectation that they will not be hauled into court in a jurisdiction *outside* the jurisdiction in which they reside.  In sum, a finding of personal jurisdiction as to Mr. Wheeler (a member of the Yakama Nation who, *inter alia*, has never been to New York), because King Mountain cigarettes were shipped from the Yakama Reservation to tribal retailers in Indian Country within the geographical boundaries in New York, would "not only would be terribly unfair . . . it would also raise grave due process concerns." Karabu Corp, at 325.

For all of these reasons, the Amended Complaint should be dismissed for lack of personal jurisdiction.

24

## CONCLUSION

For the foregoing reasons, plaintiff's Amended Complaint against Mr. Wheeler should be dismissed for failure to state a claim and for lack of personal jurisdiction, together with such other and further relief as this Court deems just and proper.

Dated: Melville, New York
      August 14, 2015

                    Respectfully submitted,

                    **HAMBURGER, MAXSON, YAFFE & McNALLY, LLP**
                    *Attorneys for Defendant Delbert Wheeler, Sr.*

By: _____
                    David N. Yaffe, Esq.
                    Andrew K. Martingale, Esq.
                    225 Broadhollow Road, Suite 301E
                    Melville, New York  11747
                    631.694.2400