UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————— x
STATE OF NEW YORK,                       :
                                          :
            Plaintiff,              :
                                          :
   v.                                     :   2:12-cv-06276 (JS) (SIL)
                                          :
MOUNTAIN TOBACCO COMPANY,                 :
d/b/a KING MOUNTAIN TOBACCO               :
COMPANY INC., and DELBERT                 :
WHEELER, Sr.,                             :
                                          :
            Defendants.             :
———————————————— x

# DEFENDANT KING MOUNTAIN'S SECOND
# LOCAL RULE 56.1 STATEMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Civil Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Defendant Mountain Tobacco Company, d/b/a King Mountain Tobacco Company Inc. ("King Mountain"), respectfully submits this Second Statement of Undisputed Material Facts about which there is no genuine issue to be tried, in support of King Mountain's Motion for Summary Judgment with respect to the First through Fifth Claims for Relief in the Plaintiff's Amended Complaint:

    1.    The Yakama Reservation was established by a Treaty between the Yakama people and the United States that was ratified by the United States Senate and signed by President James Buchanan in 1859. *See* 12 Stat. 951 (June 9, 1855).

    2.    The Yakama Treaty guarantees the Yakama people the continued right to the exclusive use and benefit of their lands, and the right to travel and trade, including trade with other Indians, without State restriction. *See Id.*; July 29, 2014, Deposition of Yancey Black

("Black Dep."), p. 111; July 30, 2014, Deposition of Jay Thompson ("Thompson Dep."), pp. 113-14; May 8, 2015, Deposition of Delbert Wheeler, Sr. ("Wheeler Dep."), p. 89.

3. The Yakama Nation is a federally recognized Indian Tribe. *See* Indian Entities Recognized and Eligible To Receive Services From the United States Bureau of Indian Affairs, 49 Fed. Red. 19, 4748 (Jan. 29, 2014).

4. The Yakama Reservation constitutes "Indian Country" as defined by 18 U.S.C. § 1151.

5. The Yakama Treaty's protections extend not only to the Yakama Tribe, but also to its members and their businesses. *See* 12 Stat. 951 (June 9, 1855); *Yakama Nation v. Flores*, 955 F.Supp. 1229, 1260 (E.D.Wash. 1997), *aff'd*, 157 F.3d 762 (9th Cir. 1998).

6. King Mountain is organized under the laws of the Yakama Nation. *See* Amended Complaint ¶ 8; King Mountain Answer to Amended Complaint ¶ 5; May 14, 2014, Declaration of Delbert Wheeler, Sr. ("Wheeler Decl.") ¶ 3; KMTA00874.

7. King Mountain holds a permit issued pursuant to Chapter 52 of the Internal Revenue Code of 1986 as a manufacturer of tobacco products. *See* Permit No. TP-WA-15000, Dep't of Treasury, Alcohol & Tobacco Tax & Trade Bureau.

8. The sole shareholder of King Mountain is Delbert Wheeler, Sr. *See* King Mountain's First Supplemental Response to Plaintiff's Interrogatory 15; King Mountain's Response to Plaintiff's Interrogatory 9; Wheeler Decl. ¶ 2.

9. Delbert Wheeler, Sr., is a member of the Yakama Tribe and lives within the borders of the Yakama Indian Reservation. *See* King Mountain's Response to Plaintiff's Interrogatory 9; King Mountain Answer to Amended Complaint ¶ 7; Wheeler Decl. ¶ 5; Wheeler Dep., p. 9.

10. King Mountain manufactures cigarettes, operates a manufacturing facility, a warehouse, and a distribution facility, and maintains a business office, all on the Yakama Indian Reservation in White Swan, Washington. *See* Amended Complaint ¶¶ 8, 55; Black Dep., pp. 24-25, Thompson Dep., pp. 31, 102; Wheeler Dep., pp. 42, 55-56; King Mountain Answer to Amended Complaint ¶¶ 5-6.

11. Most of the tobacco contained in King Mountain cigarettes is grown on land owned by Delbert Wheeler that is situated on the Yakama Indian Reservation in White Swan, Washington. *See* Wheeler Dep., pp. 39-42.

12. King Mountain presently has approximately 50 employees at its manufacturing facility, warehouse, distribution facility, and business office on the Yakama Indian Reservation. *See* Thompson Dep., pp. 27-28; Black Dep., p. 63.

13. King Mountain sells its cigarettes to Indian Nations, and to companies owned by a member of an Indian Nation, that are situated on Indian Nations, some of which are located within the boundaries of the State of New York, and refers to these sales as "Nation-to-Nation sales." *See* Black Dep., pp. 29, 99; Thompson Dep., pp. 48-49; King Mountain's Third Supplemental Response to Plaintiff's Interrogatory 1, Exhibit A; *see, e.g.*, KMTA00115-145; KMTA00173-259.

14. All of King Mountain's sales of cigarettes to Indian Nations, and to companies owned by a member of an Indian Nation, that are located within the boundaries of the State of New York, are shipped via common carrier from King Mountain's warehouse in White Swan or are mailed from King Mountain's warehouse in White Swan. *See* Thompson Dep., pp. 53-54; Black Dep., p. 74; *see, e.g.*, KMTA00302-303; KMTA00356.

15. King Mountain's sales of cigarettes to Indian Nations, and to companies owned by a member of an Indian Nation, that are located within the boundaries of the State of New York, were shipped via a common carrier trucking company owned by a member of the Yakama Tribe located within the borders of the Yakama Indian Reservation. *See* Thompson Dep., pp. 53-54.

16. All of King Mountain's sales of cigarettes to Indian Nations and to companies owned by a member of an Indian Nation, that are located within the boundaries of the State of New York, are to lawfully operating distributors, wholesalers, or retailers of cigarettes; none of these sales were or are to consumers (as defined in 15 U.S.C. § 375(4)) of cigarettes. *See* King Mountain's Response to Plaintiff's Interrogatory 10; King Mountain's Supplemental Response to Plaintiff's Interrogatory 1, Exhibit A; King Mountain's Third Supplemental Response to Plaintiff's Interrogatory 1, Exhibit A; Black Dep., pp. 29, 90-92; Thompson Dep., pp. 46-49; Wheeler Dep., pp. 81-82.

17. In instances where King Mountain makes Nation-to-Nation sales of its cigarettes, King Mountain does not file forms with State governments, including forms referenced in the Prevent All Cigarette Trafficking Act ("PACT Act"). *See* Thompson Dep., p. 23; Black Dep., pp. 28-29, 32-33, 56-57.

18. In 2011, 2012, and in 2013, King Mountain sold its cigarettes to Indian Nations, or companies owned by a member of an Indian Nation and situated on Indian Nations, that are located within the boundaries of the State of New York, including to the Seneca Nation in Irving and in Gowanda, New York; to the Oneida Nation in Oneida, New York; to the Onondaga Nation in Nedrow, New York; to the Iroquois Nation in Irving, New York; to the Cayuga Nation in Seneca Falls, New York; and to the St. Regis Mohawk or Akwesasne Nation in Hogansburg,

New York. *See* King Mountain's Responses 9 through 62 to Plaintiff's First Requests for Admissions; *see also, e.g.*, KMTA00115-145; KMTA00173-259.

19. King Mountain also sells its cigarettes to State licensed distributors located within certain State jurisdictions (for example, in Idaho, Oregon and Washington), and refers to these sales as "open market sales"; those distributors are responsible for affixing any required tax stamp for open market sales within that State's jurisdiction. *See* King Mountain's Third Supplemental Response to Plaintiff's Interrogatory 1, Exhibit A; Black Dep., pp. 59-61, 84-85; Thompson Dep., pp. 34-35, 56, 70-71; *see, e.g.*, State of Oregon Directory of Cigarette Brands Approved for Stamping and Sale, http://www.doj.state.or.us/tobacco/pdf/branddirectory.pdf (last visited Nov. 26, 2014).

20. In instances where King Mountain makes open market sales of its cigarettes, King Mountain files applicable forms with the State governments, including forms required under the PACT Act. *See* Thompson Dep., p. 23; Black Dep. p. 28; Wheeler Dep., p. 68; *see, e.g.*, State of Oregon Directory of Cigarette Brands Approved for Stamping and Sale, http://www.doj.state.or.us/tobacco/pdf/branddirectory.pdf (last visited Nov. 26, 2014).

21. King Mountain has not and does not make open market sales of its cigarettes within New York State. *See* King Mountain's Supplemental Response to Plaintiff's Interrogatory 1, Exhibit A; Black Dep., p. 29; Thompson Dep., pp. 46-49; Wheeler Dep., p. 81.

22. King Mountain has not filed certifications with the New York State Department of Taxation and Finance reporting the number and brands of its cigarettes sold to Indian Nations/member businesses within the boundaries of New York. *See* King Mountain's Response 4 to Plaintiff's First Requests for Admissions; February 21, 2013, Declaration of New York State Department of Taxation and Finance Excise Technician Peter Spitzer ("Spitzer Decl.").

23. King Mountain has not filed reports or registrations with the New York State Department of Taxation and Finance under the PACT Act. *See* King Mountain's Response 5 to Plaintiff's First Requests for Admissions; Spitzer Decl.

24. King Mountain has not certified in writing to the New York State Office of Fire Prevention and Control that its cigarettes meet the performance standards prescribed by that Office pursuant to N.Y. Executive Law § 156-c(2). *See* King Mountain's Response 6 to Plaintiff's First Requests for Admissions.

25. On November 6, 2012, New York State Investigator Andrew Scala purchased one carton of unstamped (not bearing a New York State excise tax stamp) King Mountain brand cigarettes at the Native Delight smoke shop on the Poospatuck Indian Reservation in Mastic, New York, for $25. *See* March 4, 2013, Declaration of New York State Office of the Attorney General Investigator Andrew Scala; August 13, 2014, Deposition of Andrew Scala ("Scala Dep."), pp. 34-35, 45-46; KM 2 (NY000199).

26. On December 3, 2012, New York State troopers stopped a truck on New York Interstate 87 in Clinton County, New York. The troopers and a New York State Investigator subsequently found and seized 140 cases of unstamped (not bearing a New York State excise tax stamp) King Mountain brand cigarettes inside the locked storage compartment of the truck. *See* March 4, 2013 Declaration of New York State Police Investigator Joel Revette ("Revette Decl."); KM 14 (NY000370-372).

    a. The cigarettes inside the truck were being transported by ERW Wholesale of the Seneca Nation, Irving, New York. The Bill of Lading presented by the driver reflected the sale of cigarettes from the Oneida Nation in Oneida, New York, to the Ganienkeh Nation in Altona, New York, and at the time of the stop the driver of the truck presented an "Iroquois

-6-

Wholesale" business license of the Seneca Nation. The bill of lading made no mention of delivery or sale by King Mountain, and King Mountain did not own or control the cigarettes in the truck. In addition, the truck contained cartons of cigarettes of manufacturers other than King Mountain. *See* Revette Decl.; NY000348-353; September 11, 2014, Deposition of New York State Police Investigator Joel Revette, pp. 22-24, 47; KM 14 (NY000370-372); KM 17 (NY000204-206); September 12, 2014, Deposition of New York State Trooper Stephen Posada, pp. 13, 32.

        b.     ERW Wholesale is owned by Eric White, a member of the Seneca Indian nation, and is a tobacco wholesaler licensed by the Seneca Nation. ERW Wholesale buys cigarettes from Indian Nations and sells cigarettes to Indian nations. *See* Thompson Dep. p. 47; NY000348-353.

        c.     On December 20, 2012, the New York State Department of Taxation and Finance issued Notice of Determination Number L-038986040 against King Mountain for its failure to pay $1,259,250 in State taxes under Article 20 of the New York State Tax Law related to the cigarettes seized on December 3, 2012 (for the Tax Period Ended January 23, 2012). *See* December 20, 2012 New York State Department of Taxation and Finance Notice of Determination Number L-038986040.

        d.     On October 23, 2014, the New York State Department of Taxation and Finance submitted a Stipulation of Discontinuance with respect to King Mountain, which provided that King Mountain owes $0 in tax, penalty and interest for Notice of Determination Number L-038986040. *See In the Matter of the Petition of King Mountain Tobacco Company*, DTA # 825886 (N.Y. Division of Tax Appeals), Stipulation for Discontinuance of Proceeding.

   e. On November 19, 2014, the Administrative Law Judge presiding over Notice of Determination Number L-038986040 issued an Order adjudging and decreeing that the State's assessment against King Mountain in Assessment Number L-038986040 is cancelled, and the ALJ dismissed Notice of Assessment Number L-038986040 with prejudice. *See In the Matter of the Petition of King Mountain Tobacco Company*, DTA # 825886 (N.Y. Division of Tax Appeals), Order of Discontinuance.

  27. On May 15, 2013, Investigator Scala purchased one carton of unstamped (not bearing a New York State excise tax stamp) King Mountain brand cigarettes at the Rising Native Sisters smoke shop (for $30), one carton of unstamped King Mountain brand cigarettes at the Native Delight smoke shop (for $25), and one carton of unstamped King Mountain brand cigarettes at the AMH smoke shop (for $27), all on the Poospatuck Indian Reservation in Mastic, New York. *See* May 21, 2013 Supplemental Declaration of New York State Office of the Attorney General Investigator Andrew Scala; Scala Dep., pp. 67-79; KM 4 (NY000619).

  28. The cigarettes purchased by Investigator Scala on May 15, 2013 from the AMH smoke shop and from the Native Delight Smoke Shop bore the stamp "FSC," which stands for federal fire safety control compliance. *See* Scala Dep., pp. 83-84; NY000635-641.

  29. On May 16, 2013, New York State Investigator Chad Shelmidine purchased one carton of unstamped (not bearing a New York State excise tax stamp) King Mountain brand cigarettes at the Lake Side Trading smoke shop on the Cayuga Indian Reservation in Union Springs, New York, for $20. *See* May 21, 2013 Declaration of New York State Law Department Investigator Chad Shelmidine; September 11, 2014, Deposition of Chad Shelmidine, pp. 15, 21-22; KM 26 (NY000618).

30. On June 5, 2013, Investigator Scala purchased one carton of unstamped (not bearing a New York State excise tax stamp) King Mountain brand cigarettes at the Rising Native Sisters smoke shop (for $30) and one carton at the Native Delight smoke shop (for $25), both on the Poospatuck Indian Reservation in Mastic, New York. *See* KM 8 (NY000620); Scala Dep., pp. 88-90.

Dated: September 11, 2015

Respectfully Submitted,

*/s/ Nelson A. Boxer*
Nelson A. Boxer
Petrillo Klein & Boxer LLP
655 Third Avenue
22nd Floor
New York, NY 10017
(212) 370-0338
nboxer@pkbllp.com

Randolph H. Barnhouse
Kelli J. Keegan
Johnson Barnhouse & Keegan LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107
(505) 842-6123
dbarnhouse@luebbenlaw.com
kkeegan@luebbenlaw.com

*Counsel for Defendant King Mountain Tobacco Co. Inc.*