UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒  x

STATE OF NEW YORK,                         :
                                           :
                        Plaintiff,         :
                                           :
            v.                             :    2:12-cv-06276 (JS) (SIL)
                                           :
MOUNTAIN TOBACCO COMPANY,                  :
d/b/a KING MOUNTAIN TOBACCO                :
COMPANY INC., and DELBERT                  :
WHEELER, Sr.,                             :
                                           :
                        Defendants.        :
‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒ ‒  x


## DEFENDANT KING MOUNTAIN'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

PETRILLO KLEIN & BOXER LLP
Nelson A. Boxer
Philip Pilmar
655 Third Avenue, 22nd Floor
New York, NY 10017

JOHNSON BARNHOUSE & KEEGAN LLP
Randolph H. Barnhouse
Kelli J. Keegan
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107

Attorneys for Mountain Tobacco Company
d/b/a King Mountain Tobacco Company Inc.

January 29, 2016

<u>**TABLE OF CONTENTS**</u>

**PAGE**

I.   Preliminary Statement................................................................................................1

II.  Procedural History ...................................................................................................2

III. The Amended Complaint..........................................................................................3

IV.  Facts .........................................................................................................................4

V.   Standard of Review ................................................................................................10

VI.  Argument ................................................................................................................10

　I.    Claim I, CCTA: Summary Judgment Should Be Granted Because The CCTA
　　　Does Not Apply to King Mountain..................................................................10

　II.   Claim II, PACT Act: Summary Judgment Should Be Granted Because The PACT
　　　Act Does Not Apply to King Mountain............................................................16

　III.  Claim III: Summary Judgment Should Be Granted Because Res Judicata Precludes
　　　Re-Litigating the State's Article 20 Claim ......................................................19

VII. Conclusion .............................................................................................................25

i

# TABLE OF AUTHORITIES

CASES                                                                                              PAGE(S)

*Anderson v Liberty Lobby Inc.*,
    477 U.S. 242 (1986)......................................................................................................10

*Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*,
    411 F.3d 306 (2d Cir. 2005).........................................................................................22

*Caldarola v. Calabrese*,
    298 F.3d 156 (2d Cir. 2002).........................................................................................10

*Chase Manhattan Bank, N.A. v. Celotex Corp.*,
    56 F.3d 343 (2d Cir. 1995)...........................................................................................22

*City of New York v. Golden Feather Smoke Shop, Inc.*,
    No. 08-CV-3966 (CBA), 2009 WL 705815 (E.D.N.Y. Mar. 16, 2009)...........................15

*City of New York v. Gordon*,
    1 F. Supp. 3d 94 (S.D.N.Y. 2013)................................................................................18

*City of New York v. Wolfpack Tobacco*,
    No. 13 Civ. 1889 (DLC), 2013 WL 5312542 (S.D.N.Y. Sept. 9, 2013)...................13, 18

*Davidson v. Capuano*,
    792 F.2d 275 (2d Cir. 1986).........................................................................................20

*Federated Dep't Stores, Inc. v. Moitie*,
    452 U.S. 394 (1981).....................................................................................................24

*Green v. Santa Fe Indus., Inc.*,
    70 N.Y.2d 244 (1987)...................................................................................................23

*Hicks v. Baines*,
    593 F.3d 159 (2d Cir. 2010).........................................................................................10

*In re Slocum v. Joseph B*,
    183 A.D.2d 102 (3d Dep't 1992)..................................................................................23

*Jones v. City of New York Agencies*,
    550 F. App'x 67 (2d Cir. 2014).....................................................................................20

*Jones v. Safi*,
    No. 10-CV-2398 (JS) (ARL), 2012 WL 4815632 (E.D.N.Y. Oct. 3, 2012)....................20

*Lewis v. City of Chicago*,
    560 U.S. 205 (2010)...............................................................................................13

*Maharaj v. Bankamerica Corp*,
    128 F.3d 94 (2d Cir. 1997)............................................................................20, 24

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)...............................................................................................10

*Miner v. Clinton Cnty.*,
    541 F.3d 464 (2d Cir. 2008)..................................................................................10

*Montana v. Blackfeet Tribe of Indians*,
    471 U.S. 759 (1985)...............................................................................................13

*Overview Books, LLC v. United States*,
    755 F. Supp. 2d 409 (E.D.N.Y. 2010) ..................................................................23

*Pawling Lake Prop. Owners Ass'n, Inc. v. Greiner*,
    72 A.D.3d 665 (2d Dep't 2010) ............................................................................22

*People ex. rel. Spitzer v. Applied Card Sys., Inc.*,
    11 N.Y.3d 105 (2008) ...........................................................................................20

*Ryan v. New York Tel. Co.*,
    62 N.Y.2d 494 (1984.) ..........................................................................................22

*Sledge v. Kooi*,
    564 F.3d 105 (2d Cir. 2009)..................................................................................10

*Smith v. Russell Sage Coll.*,
    54 N.Y.2d 185 (1981) ...........................................................................................21

*State v. Seaport Manor A.C.F.*,
    19 A.D.3d 609 (2d Dep't 2005) ............................................................................23

*U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*,
    451 F. Supp. 2d 613 (S.D.N.Y. 2006)..................................................................25

*United States v. Dauray*,
    215 F.3d 257 (2d Cir. 2000)..................................................................................13

*United States v. Fortuna*,
    No. CRIM. 12-636 NLH/JS, 2013 WL 1737215 (D.N.J. Apr. 22, 2013) ........11

*United States v. Hasan*,
    718 F.3d 338 (4th Cir. 2013) ...............................................................................11

*United States v. Morrison,*
    596 F. Supp. 2d 661 (E.D.N.Y. 2009) ...........................................................14

*United States v. Smiskin,*
    487 F.3d 1260 (9th Cir. 2007) .............................................................4, 15, 16

*United Transp. Union v Nat'l R. R. Passenger Corp.,*
    588 F.3d 805 (2d Cir. 2009)....................................................................10

*Waldman v. Vill. of Kiryas Joel,*
    207 F.3d 105 (2d Cir. 2000).....................................................................25

*Yakama Nation v. Flores,*
    955 F. Supp. 1229 (E.D.Wash. 1997) ...........................................................15

**STATUTES**

15 U.S.C. § 375 .....................................................................................17

15 U.S.C. § 376 .................................................................................16, 17

15 U.S.C. § 377 .....................................................................................16

18 U.S.C § 1151 ...............................................................................12, 17

18 U.S.C. § 2341 ...........................................................................11, 14, 15

18 U.S.C. § 2342 ...................................................................................11

18 U.S.C. § 2346 ..........................................................................12, 13, 16

26 U.S.C. § 5713 ................................................................................5, 14

N.Y. Tax Law § 471 ......................................................................14, 19, 20, 24

**RULES**

Fed. R. Civ. P. 56............................................................................10

**OTHER AUTHORITIES**

Treaty With The Yakama, 12 Stat. 951 (1855)....................................................4, 12, 15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
— — — — — — — — — — — — — — — — — — — x
STATE OF NEW YORK,                                 :
                                                   :
                                    Plaintiff,     :
                                                   :
                        v.                         :     2:12-cv-06276 (JS) (SIL)
                                                   :
MOUNTAIN TOBACCO COMPANY,                          :
d/b/a KING MOUNTAIN TOBACCO                         :
COMPANY INC., and DELBERT                           :
WHEELER, Sr.,                                       :
                                                   :
                                    Defendants.    :
— — — — — — — — — — — — — — — — — — — x

## MEMORANDUM OF LAW IN SUPPORT OF
## KING MOUNTAIN'S MOTION FOR SUMMARY JUDGMENT

Defendant Mountain Tobacco Company, d/b/a King Mountain Tobacco Company Inc.

("King Mountain"), respectfully submits this Memorandum of Law in Support of its motion for

summary judgment with respect to Plaintiff's First, Second, and Third Claims for Relief.

## PRELIMINARY STATEMENT

In pleadings and arguments before the Court, the State has spared no opportunity to

advocate the ills of smoking, its attendant costs to New York, and the limited nature of Indian

tribal immunity from tortious acts committed by Indians.  *See* Am. Compl. ¶¶ 11-21; January 29,

2016, Declaration of Philip Pilmar (hereinafter, "Pilmar Decl.") Ex. 9, Jan. 8, 2016 Court Tr. at

p. 20.[1]  Those claims have no bearing on the instant litigation.  All that is relevant in this action

is whether two United States laws and three New York State laws are enforceable against King

Mountain, an Indian-owned corporation formed under the laws of the Yakama Indian Nation that

manufactures cigarettes on Yakama land, situated within the exterior boundaries of the State of

---

[1] The State's cultural references in support of these arguments, *see* Jan. 8, 2016 Tr. at p.20, are, to say the least, disappointing.

Washington.  Because the statutes at issue do not apply to King Mountain's manufacture and sale of cigarettes to companies owned by Indian tribes or their members that are situated on an Indian Nation within the exterior boundaries of New York, and because New York State has already determined that King Mountain is not liable for New York State excise taxes for unstamped King Mountain cigarettes found in New York State, the Court should grant King Mountain's motion for summary judgment.

## PROCEDURAL HISTORY

Plaintiff filed a Complaint on December 21, 2012 (ECF No. 1), which it never served.  It filed an unsigned Amended Complaint on February 12, 2013 (ECF No. 6), alleging claims against three defendants:  King Mountain; Mountain Tobacco Distributing Company ("Mountain Tobacco"); and Delbert Wheeler, Sr.  In March and April 2013, the State served the Amended Complaint on King Mountain and Mountain Tobacco.  Plaintiff filed a signed Amended Complaint on May 21, 2014.  (ECF No. 96.)

On April 3, 2013, Plaintiff moved for a preliminary injunction (ECF No. 12), which it subsequently abandoned.  (*See* ECF Nos. 76, 79.)  After Mountain Tobacco moved to dismiss the Amended Complaint for lack of personal jurisdiction (ECF No. 21), on May 3, 2013, Plaintiff voluntarily dismissed its action against Mountain Tobacco.  (*See* ECF Nos. 42, 50.)

Plaintiff and King Mountain engaged in discovery between June 2013 and May 2015, pertinent portions of which are attached as Exhibits to the January 29, 2016, Declaration of Philip Pilmar, submitted in support of the instant motion.  King Mountain and Plaintiff have also exchanged a Statement and a Counter-Statement, in accordance with Local Rule 56.1.  *See* Pilmar Decl. Exs. 1 through 4.

On January 26, 2016, the Court issued a Memorandum and Order dismissing the Amended Complaint against Delbert Wheeler, Sr., for lack of personal jurisdiction and denied Plaintiff leave to replead.  (ECF No. 193.)

## THE AMENDED COMPLAINT

The Amended Complaint, on behalf of "Plaintiff State of New York … a sovereign entity," alleges five Claims for Relief, as follows:

- First, a violation of the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. §§ 2341-2346, by King Mountain "knowingly shipping, transporting, receiving, possessing, selling, and distributing contraband cigarettes within New York State."  The Amended Complaint claims that King Mountain, "far in excess of the 10,000-cigarette limit imposed by the CCTA," sold and shipped "hundreds of thousands of untaxed and unstamped cigarettes in and into the State of New York – a state which requires that packs of cigarettes to be sold therein bear a state tax stamp to evidence payment of the excise tax . . . ."  Am. Compl., ¶¶ 77-78.

- Second, a violation of the Prevent All Cigarette Trafficking or "PACT" Act, 15 U.S.C. § 376, by King Mountain's failure "to submit certain filings to the tobacco tax administrator for the State of New York . . . ."  Am. Compl., ¶ 82.

- Third, a violation of New York Tax Law §§ 471 and 471-e, by King Mountain "possessing [] for sale in New York State [] King Mountain brand cigarettes . . . upon which no state excise tax has been paid, and the packages of which have no tax stamps affixed."  Am. Compl., ¶ 87.

- Fourth, a violation of New York Tax Law § 480-b, because King Mountain, "a 'tobacco product manufacturer' as that term is defined in New York Public Health Law § 1399-oo(9)," failed to file "certifications in accordance with Section 480-b."  Am. Compl., ¶¶ 90-92.

- Fifth, a violation of New York Executive Law § 156-c (the Cigarette Fire Safety Act ["CFSA"] of New York State), by King Mountain not certifying as "fire-safe the cigarettes it manufactures which are distributed, sold, or offered for sale in New York" and by failing "to place the required 'FSC' (Fire Standards Compliant) mark on the packages of cigarettes it manufactures which are distributed, sold, or offered for sale in New York."  Am. Compl., ¶¶ 95-96.

The Amended Complaint seeks to permanently enjoin King Mountain from violating the CCTA and the CFSA; requests permission for the New York Attorney General to seize and forfeit any King Mountain unstamped cigarettes found in New York; asks the Court to direct King Mountain to comply with the registration and reporting requirements of the PACT Act and the certification requirements of New York Tax law § 480-b; and seeks "civil penalties and money damages as authorized by the CCTA and the PACT Act" and as "authorized by the CFSA," and "restitution and damages associated with the defendants' conduct" pursuant to "New York Executive Law § 63(12)[.]"  Am. Compl., pp. 25-26.

## FACTS

The following facts are not in dispute.

### King Mountain

King Mountain is a corporation formed and organized under the laws of the Yakama Indian Nation, and it is solely owned by a member of the Yakama Tribe, Mr. Delbert Wheeler, Sr.  (*See* Pilmar Decl. Ex. 2, Plaintiff State of New York's Response to Defendant King Mountain's Second Local Rule 56.1 Statement (hereinafter "Pl.'s Counter-Statement") ¶¶ 6, 8.) King Mountain manufactures cigarettes on the Yakama Indian Reservation, which is located within the boundaries of the State of Washington, in White Swan, and which was established by a Treaty between the Yakama people and the United States, ratified by the United States Senate and signed by President James Buchanan, in 1859.  12 Stat. 951 (June 9, 1855).  (*See* Pl.'s Counter-Statement ¶¶ 1, 10; Am. Compl. ¶¶ 8, 55.)[2] King Mountain holds a federal permit,

---

[2] In enforcing the Treaty's provision guaranteeing the Yakama's right to transport goods (in that case, cigarettes) to market for trade, the Ninth Circuit noted that when negotiating the Treaty, the "United States also promised the Yakamas that they could rely on all [of the Treaty's] provisions being carried out strictly, and the Yakamas forever ceded about 10 million acres, or 90 percent of their land, in exchange for these rights."  *United States v. Smiskin*, 487 F.3d 1260, 1265 (9th Cir. 2007).

issued pursuant to 26 U.S.C., Chapter 52, as a manufacturer of tobacco products, effective March 18, 2008.  (*See* Pl.'s Counter-Statement  ¶ 7; Pilmar Decl. Ex. 5, Permit No. TP-WA-15000, Dep't of Treasury, Alcohol & Tobacco Tax & Trade Bureau.)

King Mountain's manufacturing facility, warehouse, distribution facility, and business offices, as well as the farm where tobacco used to make King Mountain cigarettes is grown, are all situated on the Yakama Indian Reservation, and Mr. Wheeler lives on the Yakama Indian Reservation.  (*See* Pl.'s Counter-Statement  ¶¶ 9-11; Am. Compl. ¶¶ 8, 55; Pilmar Decl. Ex. 6, Dep. of Delbert Wheeler, pp. 9, 40-42.)  King Mountain manufactures and packages its cigarettes, and then ships them via common carrier or mail from the Yakama Reservation.  (*See* Pilmar Decl. Ex. 7, Dep. of Jay Thompson pp. 53-54; Pilmar Decl. Ex. 8, Dep. of Yancey Black, p. 74; Wheeler Dep. pp. 53-54.)

In some States, King Mountain makes "open market" sales of its cigarettes to State-licensed distributors, who are then responsible for affixing or causing to be affixed any State-required tax stamps.  (*See* Black Dep., pp. 59-61, 84-85; Thompson Dep., pp. 34-35, 56, 70-71.) King Mountain makes filings required by the PACT Act with the applicable State government in those instances when it makes open market sales.  (*See* Pl.'s Counter-Statement ¶ 20; Thompson Dep., p. 23; Black Dep. pp. 26-28; *see also, e.g.*, State of Oregon Directory of Cigarette Brands Approved for Stamping and Sale, http://www.doj.state.or.us/tobacco/pdf/branddirectory.pdf (last visited Jan. 28, 2016); State of North Carolina Directory of Approved Tobacco Manufacturers, http://www.ncdoj.com/getdoc/10132287-6d5a-4294-9c3c-2a1cc76adbf0/NPM-Manufacturers-12-2008.aspx (last visited Jan. 28, 2016).)  King Mountain does not make open market sales in New York State.  (*See* Pl.'s 56.1 Statement ¶ 54 (stating that all distributers King Mountain sold to, with the exception of one sale discussed *infra* n.4, "are located on New York State qualified

Indian reservations").)  King Mountain also sells its cigarettes "Nation-to-Nation" – that is, to companies owned by an Indian Nation, or to companies owned by a member of an Indian Nation, that are situated on an Indian Nation, including within the boundaries of the State of New York. (*See* Thompson Dep. pp. 48-49; Wheeler Dep. 67-68; Black Dep. 99.)  When it makes Nation-to-Nation sales, King Mountain does not make PACT Act or State-required tax filings.  (*See* Thompson Dep., p. 23; Black Dep., pp. 28-29, 32-33, 56-57.)  King Mountain's sales of cigarettes to Indian Nations, and to companies owned by a member of an Indian Nation, were often shipped via a common carrier trucking company owned by a member of the Yakama Tribe located within the borders of the Yakama Indian Reservation.  (*See* Thompson Dep., pp. 53-54.)

In 2011, 2012, and in 2013, King Mountain sold its cigarettes to Indian Nations, or companies owned by a member of an Indian Nation that are located within the boundaries of the State of New York, including the Seneca Nation, the Oneida Nation, the Onondaga Nation, the Iroquois Nation, the Cayuga Nation, and the St. Regis Mohawk or Akwesasne Nation.  *See* Am. Compl. ¶ 56 (stating that King Mountain sells to "on-reservation wholesalers").

**New York State's Purchases and**
**Seizures of King Mountain Cigarettes**

### 1. November 6, 2012

On November 6, 2012, a New York State Investigator, Andrew Scala, purchased one carton of unstamped (not bearing a New York State excise tax stamp) cigarettes labeled as King Mountain brand at the Native Delight smoke shop on the Poospatuck Indian Reservation in Mastic, New York, for $25.  (*See* Pl.'s Counter-Statement ¶ 25; Pilmar Decl. Ex. 10, Dep. of Andrew Scala, pp. 34-35, 45-46.)  That same day, Investigator Scala observed cigarettes labeled as King Mountain for sale at the Rising Native Sisters smoke shop, also on the Poospatuck Reservation.  (*See* Scala Dep. p. 45.)

**2.  December 3, 2012**

On December 3, 2012, New York State troopers stopped a van on New York Interstate 87 in Clinton County, New York, after the van failed to enter a commercial vehicle inspection checkpoint.  The troopers directed the vehicle to a rest area, after which a New York State Investigator used bolt cutters to open the locked rear door of the van.  Found inside (and seized from) the van were 7,260 cartons of cigarettes labeled as King Mountain brand that did not bear a New York State excise tax stamp, as well as cartons of cigarettes labeled as from manufacturers other than King Mountain.  (*See* Pl.'s Counter-Statement ¶ 26; Pilmar Decl. Ex. 11, ERW Wholesale Bill of Lading; Pilmar Decl. Ex. 12, Dec. 3, 2012 Incident Report; Pilmar Decl. Ex. 14, Division of Taxation Answer ¶ 6 *In the Matter of the Petition of King Mountain Tobacco Company*, DTA # 825886 (N.Y. Division of Tax Appeals) (hereinafter "*In re King Mountain*" ("The New York State Police identified the seized cigarettes as cigarettes manufactured by [King Mountain].").) The cigarettes were being transported by ERW Wholesale, a company owned by a member of the Seneca Nation (in Irving, New York), and the driver of the van presented an "Iroquois Wholesale" business license.  (*See* Pl.'s Counter-Statement ¶ 26.)  As evidenced by the bill of lading, the van was in transit from the Oneida Reservation, in Oneida, New York, to the Ganienkeh Territory, in Altona, New York.  (ERW Wholesale Bill of Lading)

**3.  May 15, 2013**

On May 15, 2013, Investigator Scala purchased one carton of cigarettes labeled as King Mountain brand that did not bear a New York State excise tax stamp at the Rising Native Sisters smoke shop (for $30), one carton of cigarettes labeled as King Mountain brand that did not bear a New York State excise tax stamp at the Native Delight smoke shop (for $25), and one carton of

cigarettes labeled as King Mountain brand that did not bear a New York State excise tax stamp at
the AMH smoke shop (for $27), all on the Poospatuck Indian Reservation.  (*See* Pl.'s Counter-
Statement ¶ 27.)[3]

### 4.  May 16, 2013

On May 16, 2013, New York State Investigator Chad Shelmidine purchased one carton
of cigarettes labeled as King Mountain brand that did not bear a New York State excise tax
stamp at the Lake Side Trading smoke shop on the Cayuga Indian Reservation in Union Springs,
New York, for $20.  (*See* Pl.'s Counter-Statement ¶ 29.)

### 5.  June 5, 2013

On June 5, 2013, Investigator Scala purchased one carton of cigarettes labeled as King
Mountain brand that did not bear a New York State excise tax stamp at the Rising Native Sisters
smoke shop (for $30) and at the Native Delight smoke shop (for $25), both on the Poospatuck
Indian Reservation.  (*See* Pl.'s Counter-Statement ¶ 30.)

**New York State's Department of Taxation and**
**Finance Tax Litigation Against King Mountain**

On December 20, 2012, the New York State Department of Taxation and Finance
("NYSDTF") issued Notice of Determination Number L-038986040 against King Mountain for
its failure to pay $1,259,250 in New York State taxes, as allegedly required by Article 20 of the
New York State Tax Law, with respect to the King Mountain cigarettes seized by New York
State troopers on December 3, 2012 (for the Tax Period Ended January 23, 2012).  (*See* Pl.'s
Counter-Statement ¶ 26(c); Pilmar Decl. Ex. 13, NYSDTF Notice of Determination Number L-
038986040 (hereinafter "Notice of Determination").)  On October 23, 2014, the NYSDTF

---

[3] The King Mountain cigarettes purchased by Investigator Scala on May 15, 2013, bore the stamp "FSC," which
stands for "Fire Standards Compliant."  (*See* Pl.'s Counter-Statement ¶ 28.)

submitted a Stipulation of Discontinuance that provided that King Mountain owed $0 in tax, penalties and interest for Notice of Determination Number L-038986040.  (*See* Pl.'s Counter-Statement ¶ 26(d); Pilmar Decl. Ex. 16, *In re King Mountain*, Stipulation for Discontinuance of Proceeding (hereinafter "Stipulation of Discontinuance").)  On November 19, 2014, the New York State Administrative Law Judge ("ALJ") presiding over Notice of Determination Number L-038986040 issued an Order adjudging and decreeing that the State's Assessment Number L-038986040 against King Mountain was cancelled, and the ALJ dismissed Notice of Assessment Number L-038986040 with prejudice.  (*See* Pl.'s Counter-Statement ¶ 26(e); Pilmar Decl. Ex. 17, *In re King Mountain*, Order of Discontinuance (hereinafter "Order of Discontinuance").)

**King Mountain Document Productions**

Documents produced by King Mountain in response to Plaintiff's demands included purchase orders (approximately 100) from Indian tribal companies located on Indian reservations within the external boundaries of New York State and evidenced shipment of over a million cartons of King Mountain cigarettes from the Yakama Nation, within the boundaries of Washington, to various Indian companies located on Indian reservations within the boundaries of New York.  (*See* Pilmar Decl. Ex. 18, Examples of Invoices.)  None of these documents evidence any sales to a consumer of cigarettes by King Mountain, and none of these documents, with a single exception in 2010, evidence sales by King Mountain to, or shipment by, King Mountain to a non-Indian party in New York State.  (*See* Pl.'s 56.1 ¶ 54.)[4]

---

[4] The one instance when King Mountain manufactured, shipped, and sold cigarettes from the Yakama Nation to within the boundaries of New York State and to an entity that was not owned by an Indian Nation or owned by an Indian, occurred in 2010.  Specifically, in May 2010, Valvo Candies purchased a quantity of King Mountain cigarettes for $110,000; King Mountain's invoice is dated June 29, 2010.  (*See* Pl.'s 56.1 ¶ 77; Pilmar Decl. Ex. 19, KMTA79.)  Valvo Candies was a licensed New York State Cigarette Stamping Agent and Wholesale Dealer of Cigarettes and a registered wholesaler of the St. Regis Mohawk Indian Nation, but was itself not Indian-owned.  (*See* Pilmar Decl. Ex. 20, Aug. 12, 2011 Aff. of Stephen M. Valvo, *Unkechauge Indian Nation v. Paterson*, 10-CV-711A (W.D.N.Y.), ECF No. 70-19.)

## STANDARD OF REVIEW

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The "moving party bears the burden of showing that he or she is entitled to summary judgment." *United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009).  "A fact is material when it might affect the outcome of the suit under governing law," *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008) (citation and internal quotation marks omitted), and summary judgment shall not be granted where "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences" in that party's favor.  *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).  However, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*,'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), and the opposing party cannot use "conclusory allegations or denials" to "create a genuine issue of material fact where none would otherwise exist."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation and internal quotation marks omitted).

## ARGUMENT

### I.    Claim I, CCTA:  Summary Judgment Should Be Granted Because The CCTA Does Not Apply to King Mountain

The Amended Complaint alleges that King Mountain violated the CCTA by "knowingly shipping, transporting, receiving, possessing, selling, and distributing contraband cigarettes" –

that is, "far in excess" of 10,000 untaxed and unstamped cigarettes – "within New York State." Am. Compl., ¶¶ 77-78.  Several provisions of the CCTA preclude the State's claim against King Mountain, and therefore the Court should grant King Mountain's motion for summary judgment.

### A.  Governing Law

Codified amongst other federal criminal statutes in Title 18 of the United States Code, the CCTA makes it "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco."  18 U.S.C. § 2342(a).  Reported decisions addressing the CCTA typically concern criminal prosecution of "bootleggers" of unstamped cigarettes.  *See, e.g.*, *United States v. Hasan*, 718 F.3d 338, 340 (4th Cir. 2013) (affirming conviction under CCTA where defendant and co-conspirators purchased nearly 40,000 cartons of unstamped cigarettes from undercover ATF agents in Virginia and transported them to New York); *United States v. Fortuna*, No. CRIM. 12-636 NLH/JS, 2013 WL 1737215, at *1 (D.N.J. Apr. 22, 2013) (six defendants indicted under CCTA for knowingly purchasing 253,741 cartons of cigarettes with counterfeit tax stamps from undercover ATF agents and re-selling the cigarettes).

"Contraband cigarettes" is defined in the CCTA as:

> a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp . . . to evidence payment of cigarette taxes, and which are in the possession of any person other than –

> > (A) a person holding a permit issued pursuant to chapter 52 of the Internal Revenue Code of 1986 as a manufacturer of tobacco products . . .; [.]

18 U.S.C. § 2341(2).  State enforcement of the CCTA may occur only under the following circumstances:

> A State, through its attorney general . . . may bring an action in the United States
> district courts to prevent and restrain violations of this chapter by any person (or
> by any person controlling such person) . . . . No civil action may be commenced
> under this paragraph against an Indian tribe or an Indian in Indian country (as
> defined in section 1151).

18 U.S.C. § 2346(b)(1).  Section 1151 defines "Indian country" as, *inter alia*, "all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation[.]"  18 U.S.C § 1151(a).  The statute does not prohibit the United States Attorney General from bringing CCTA actions against Indian tribes or Indians in Indian country.  18 U.S.C. § 2346(a).

### B.  Discussion

For several reasons, any of which is dispositive, King Mountain is entitled to summary judgment on the State's claim under the CCTA.  First, King Mountain is an Indian in "Indian country," and therefore New York State cannot enforce the CCTA against King Mountain.  18 U.S.C. § 2346(b)(1).  King Mountain is a corporation formed and organized under the laws of the Yakama Indian Nation, it is solely owned by an Indian (Delbert Wheeler), and it is situated – its offices, warehouse, distribution facility, and tobacco farm – on the Yakama Reservation, which is "Indian country."  (*See* Pl.'s Counter-Statement ¶¶ 1, 6, 8, 10); Am. Compl. ¶ 8, 55); *see also* 12 Stat. 951 (1855); 18 U.S.C. § 2346(b)(1)(a) ("all land within the limits of any Indian reservation under the jurisdiction of the United States Government").  In fact, King Mountain cigarettes are often shipped from the Yakama Reservation using a common carrier owned by a member of the Yakama Nation.  (*See* Thompson Dep., pp. 53-54.)

The language of the CCTA does not state, let alone imply, that Indian corporations owned by Indians are not considered "Indians."  To conclude that Congress excluded Indian-

owned Indian corporations from its prohibition of State enforcement of the CCTA against

Indians would in effect re-write 18 U.S.C. § 2346(b)(1) to add the word "individual" before the

word "Indian." *See Lewis v. City of Chicago*, 560 U.S. 205, 215 (2010) ("It is not for us to

rewrite the statute so that it covers only what we think is necessary to achieve what we think

Congress really intended."); *see also Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766

(1985) ("statutes are to be construed liberally in favor of the Indians").  Indeed, it would be

illogical for Congress to explicitly exempt individual Indians from being sued under the CCTA

for sales of over 10,000 cigarettes, but not their wholly-owned corporations formed under Indian

law; it is logical that Indians would use the corporate form to engage in the business of

manufacturing or otherwise selling over 10,000 cigarettes and that the use of the term "Indians"

in the CCTA applies to corporations formed under the laws of an Indian Nation and wholly

owned by an Indian.  In fact, Congress exclusively reserved prosecution of Indians under the

CCTA to the United States.  *Cf. United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000) ("A

statute should be interpreted in a way that avoids absurd results.").

Not surprisingly, it does not appear that the CCTA has ever been extended to an Indian-

owned corporation in a civil enforcement action.  For example, in *City of New York v. Wolfpack*

*Tobacco*, No. 13 Civ. 1889 (DLC), 2013 WL 5312542, (S.D.N.Y. Sept. 9, 2013), New York City

alleged various claims against Indian businesses, individual Indians, a non-Indian business, and

non-Indian individuals.  However, New York City brought a CCTA claim only against the non-

Indian individuals and the non-Indian corporation, and the district court, while describing that

the CCTA claim was only brought against the non-Indian defendants, inserted a footnote which

stated, "[u]nder the CCTA, '[n]o civil action may be commenced . . . against an Indian tribe or

an Indian in Indian country.' 18 U.S.C. § 2346(b)(1)." *Id.* at *2 & n.1.  The CCTA does not

-13-

apply, and was never intended to apply, to transactions of an Indian corporation 100% owned by
an Indian.

Second, King Mountain holds a permit issued pursuant to Chapter 52 of the Internal
Revenue Code of 1986 (26 U.S.C. § 5713) as a manufacturer of tobacco products, effective
March 18, 2008.  (*See* Pl.'s Counter-Statement ¶ 7; Permit No. TP-WA-15000.)  Accordingly,
King Mountain is exempt from prosecution under the CCTA for selling, shipping, or possessing
"contraband cigarettes."  *See* 18 U.S.C. § 2341(2)(A); *see also United States v. Morrison*, 596 F.
Supp. 2d 661, 715 (E.D.N.Y. 2009) (stating that cigarettes are not contraband if in possession of
persons holding a permit under Chapter 52 of the Internal Revenue Code), *modified in part on
other grounds*, 706 F. Supp. 2d 304 (E.D.N.Y. 2010), *rev'd on other grounds*, 686 F.3d 94 (2d
Cir. 2012).  The CCTA does not apply, and was never intended to apply, to manufacturers of
cigarettes such as King Mountain.

Third, the CCTA does not apply to King Mountain's sales of cigarettes to Indian nations
situated within New York's boundaries, because those cigarettes were not required, under New
York law, to bear tax stamps at the time of King Mountain's sales, and therefore were not
"contraband cigarettes" as defined in 18 U.S.C. § 2341(a).  New York law does not require
manufacturers of cigarettes to affix tax stamps or cause tax stamps to be affixed to the cigarettes
it sells to entities located within New York.  Instead, if a manufacturer does not affix or cause to
be affixed tax stamps to its cigarettes, the manufacturer is only required to receive a certification
from the buyer attesting "that such cigarettes will not be resold . . . in violation of the terms of"
the New York Tax Law.  *See* N.Y. Tax Law § 471(4).  While, for purposes of this motion, it is
undisputed that King Mountain did not receive such a certification, that fact does not trigger
liability under the CCTA, because the CCTA's definition of contraband cigarettes only extends

-14-

to cigarettes that "require[] a stamp."  18 U.S.C. § 2341(2); *see also City of New York v. Golden Feather Smoke Shop, Inc.*, No. 08-CV-3966 (CBA), 2009 WL 705815, at *11 (E.D.N.Y. Mar. 16, 2009) (to establish liability under the CCTA, cigarettes must "not bear tax stamps [] under circumstances where state or local cigarette tax law requires the cigarettes to bear such stamps.").  Because New York law did not require a tax stamp at the time of King Mountain's sales of its cigarettes to Indian nations situated within New York, those cigarettes were not "contraband cigarettes" under the CCTA.  *See* 18 U.S.C. § 2341(2).

Fourth, the Treaty between the Yakama people and the United States guarantees the Yakama people the continued right to the exclusive use and benefit of their lands, and the right to travel and trade, including to trade with and sell its cigarettes to other Indians without State restriction.  12 Stat. 951 (June 9, 1855); *see also Yakama Nation v. Flores*, 955 F. Supp. 1229, 1260 (E.D.Wash. 1997) (Yakama Treaty rights extend to tribal member corporations).  In *United States v. Smiskin*, 487 F.3d 1260 (9th Cir. 2007), the Department of Justice indicted two members of the Yakama Nation for violations of the CCTA.  The defendants allegedly transported unstamped cigarettes from an Idaho Indian reservation to smoke shops on Indian reservations in Washington, in violation of a Washington law that required non-licensed wholesalers to give notice to the State in advance of transporting unstamped cigarettes.  The district court dismissed the Indictment and the Ninth Circuit affirmed, holding that the Washington State notification provision conflicted with the "Right to Travel" provision of the Yakama Treaty – namely, that the right to travel necessarily includes the right to bring cigarettes to market without notifying the state – and found that the CCTA cannot be applied to members of the Yakama Tribe when they are doing so.  *Id.* at 1263-69; *see also id.* at 1264 ("There is no

-15-

evidence that Congress intended to abrogate Indian treaty rights through adoption of the CCTA.").[5]

Because the CCTA cannot be enforced by New York State against King Mountain and its manufacture and sales of cigarettes, the Court should grant King Mountain's motion for summary judgment on the First Claim for Relief.

## II.   Claim II, PACT Act:  Summary Judgment Should Be Granted Because The PACT Act Does Not Apply to King Mountain

The Amended Complaint alleges that King Mountain violated the PACT Act when it shipped hundreds of thousands of cigarettes "into New York" and failed to register and submit associated sales reports to the New York Department of Taxation and Finance as required by 15 U.S.C. §§ 376(a)(1) and (a)(2).[6]  Am. Compl., ¶¶ 70-72 and 84-85.  Because the PACT Act does not apply to King Mountain's Nation-to-Nation sales to Indians located on Indian reservations within the boundaries of New York State, the Court should grant King Mountain's motion for summary judgment.

### A.  Governing Law

The filing requirements in the PACT Act which King Mountain allegedly violated apply only to:

> Any person who sells, transfers, or ships for profit cigarettes . . . in interstate commerce, whereby such cigarettes … are shipped into a State, locality, or Indian country of an Indian tribe taxing the sale or use of cigarettes . . ., or who advertises or offers cigarettes . . . for such sale, transfer or shipment . . . .

---

[5] The "Indian in Indian country" exception was not apt, because *Smiskin* was a criminal prosecution brought by the United States; the bar against actions against Indians in Indian Country only applies to a) State enforcement of the CCTA and b) in "civil actions."  18 U.S.C. § 2346(b)(1).

[6] While the Second Claim for Relief is titled, "VIOLATION OF THE PACT ACT, 15 U.S.C. §§ 375-378," the Amended Complaint only alleges a violation of 15 U.S.C. §§ 376(a)(1) and 376(a)(2).  *See also* Jan. 8, 2016 Tr. at p. 32 ("To clarify, I wasn't intending to amend the complaint to include the delivery sale PACT Act allegations.")  There are no monetary penalties applicable to the PACT Act violation alleged by the State; PACT Act monetary penalties apply only to, and are a function of, the number of delivery sales.  *See* 15 U.S.C. § 377(b).

15 U.S.C. § 376(a).  The applicability of the PACT Act is demarcated in its definition of

"interstate commerce":

> commerce between a State and any place outside the State, commerce between a
> State and any Indian country in the State, or commerce between points in the
> same State but through any place outside the State or through any Indian country.

15 U.S.C. § 375(9)(A).  Under the PACT Act, "State" and "Indian country" are distinct:  "State"

is defined as "each of the several States of the United States, the District of Columbia, the

Commonwealth of Puerto Rico, or any territory or possession of the United States," 15 U.S.C.

§ 375(11); and 15 U.S.C. § 375(7) of the PACT Act incorporates the term "Indian country" from

18 U.S.C. § 1151, and includes "all land within the limits of any Indian reservation under the

jurisdiction of the United States Government . . . all dependent Indian communities … [and] all

Indian allotments . . . ."

The PACT Act provides that sales, shipments, or transfers of cigarettes that are made in

interstate commerce "shall be deemed to have been made into the State, place, or locality in

which such cigarettes . . . are *delivered*."  15 U.S.C. § 375(9)(B) (emphasis added).  Thus, if a

shipment is delivered to a location within "Indian country," it will have occurred to and in Indian

country (the "place" referenced in 15 U.S.C. § 375(9)(A)); if the shipment is delivered to a non-

Indian location in a State, it will have occurred to and in that State.

### B.  Discussion

The PACT Act's filing requirements – 15 U.S.C. § 376(a)(1) and (a)(2) – do not apply to

King Mountain's sales of cigarettes to Indians in Indian Country, including with Indians within

the boundaries of New York State, because those sales did not occur in "interstate commerce."

The first type of transaction that the PACT Act defines as interstate commerce involves

"commerce between a State and any place outside the State."  15 U.S.C. § 375(9)(A).  A sale in

this instance applies only to transactions that either begin or end in a location in a State as defined by the Act.  Thus, a sale from the Yakama Reservation to an Indian tribe within the boundaries of New York State does not begin or end in a State – instead, the sale is between two points in "Indian Country" – and therefore cannot fall within the first category of "interstate commerce" in the PACT Act.

The second type of transaction in the definition of "interstate commerce" is "commerce between a State and any Indian country in the State."  An example of this type of transaction is commerce between a location within the State of New York and any Indian reservation within the State of New York, such as a New York consumer's internet purchase of cigarettes from a store located on a New York Indian reservation.  *See*, *e.g.*, *City of New York v. Gordon*, 1 F. Supp. 3d 94, 99-101 (S.D.N.Y. 2013) (PACT Act claim alleged where New York City investigator ordered via the Internet and received cigarettes from a company on the Allegany Reservation of the Seneca Nation of Indians in New York); *Wolfpack Tobacco*, 2013 WL 5312542, at *1 (PACT Act claim alleged where New York City investigator submitted a mail order and received cigarettes from a company on the Alleghany Reservation of the Seneca Nation of Indians in New York).  King Mountain's sales cannot fit this definition of "interstate commerce," because its cigarette manufacturing factory, warehouse, and distribution facility are all located on the Yakama Indian Reservation in White Swan, Washington.

The final type of transaction included in the definition of "interstate commerce" is "commerce between two points in the same State but through any place outside of the State or through any Indian country."  This commerce stream begins and ends within the same State, and merely passes through Indian country; again, neither the starting location nor the delivery location occurs in Indian country, and it is therefore inapplicable to King Mountain's

-18-

sale of cigarettes from the Yakama Reservation to Indians located within the boundaries of New York State.

Finally, the single instance when King Mountain sold its cigarettes to an entity within New York State that was not owned by an Indian Nation or an Indian – the May 2010 sale (invoice stamped June 29, 2010) of 6,000 cartons to Valvo Candies (*see* Pilmar Decl. Ex. 19), a registered wholesaler of the St. Regis Mohawk Indian nation – predated the June 29, 2010, effective date of the PACT Act, and therefore cannot support the State's second claim for relief. *See* Prevent All Cigarette Trafficking Act of 2009 (PACT Act), PL 111-154, 124 Stat 1087 (March 31, 2010) ("Except as provided in subsection (b), this Act shall take effect on the date that is 90 days after the date of enactment of this Act.").

King Mountain's manufacturing facility, warehouse, distribution facility and business office are all located on the Yakama Indian Reservation in White Swan, Washington.  Deliveries between two points of Indian country are precisely the type of transactions that do not fall within the scope of the PACT Act's definition of "interstate commerce."  Because such transactions cannot qualify as interstate commerce under the PACT Act, the Court should grant King Mountain summary judgment on the Second Claim for Relief.

**III.    Claim III:  Summary Judgment Should Be Granted Because Res Judicata Precludes Re-Litigating the State's Article 20 Claim.**

The Third Claim for Relief in the Amended Complaint alleges that King Mountain violated New York Tax Law §§ 471 and 471-e by "possessing [] for sale in New York State [] King Mountain brand cigarettes . . . upon which no state excise tax has been paid, and the packages of which have no tax stamps affixed."  Am. Compl. ¶ 87.  Sections 471 and 471-e reside in Article 20 of the New York Tax Law, titled, "Tax on Cigarettes and Tobacco Products." Because in litigation with New York State it has already been finally determined that King

-19-

Mountain owes $0 under Article 20 of the New York Tax Law for King Mountain cigarettes possessed and seized in New York State on December 3, 2012 (*see* Am. Compl., ¶¶ 67-69), res judicata precludes re-litigation of the Third Claim for Relief and the Court should grant summary judgment in favor of King Mountain.[7]

### A.  Governing Law

New York law governs the question of whether or not res judicata is applicable, because the relevant prior judgment was rendered in New York.  *See Jones v. Safi*, No. 10-CV-2398 (JS) (ARL), 2012 WL 4815632, at *2 n.2 (E.D.N.Y. Oct. 3, 2012), *aff'd sub nom. Jones v. City of New York Agencies*, 550 F. App'x 67 (2d Cir. 2014).  "Under both New York law and federal law, the doctrine of res judicata, or claim preclusion, provides that [a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997) (citation and internal quotation marks omitted).  Specifically, "res judicata applies when (1) 'there is a judgment on the merits rendered by a court of competent jurisdiction,' (2) 'the party against whom the doctrine is invoked was a party to the previous action,' and (3) the subsequent litigation is based upon 'the same transaction or series of connected transactions.'" *Jones*, 2012 WL 4815632, at *2 (quoting *People ex. rel. Spitzer v. Applied Card Sys., Inc.*, 11 N.Y.3d 105, 122 (2008)); *see also Davidson v. Capuano*, 792 F.2d 275, 278 (2d Cir. 1986) ("New York courts have adopted the 'transactional approach' to res judicata, holding that if claims arise out of the same 'factual grouping' they are deemed to be part of the same cause of

---

[7] While the Court need not reach the issue in order to grant King Mountain's motion for summary judgment, the undisputed material facts also establish that King Mountain did not possess in New York State unstamped cigarettes for sale.  *See* Am. Compl. ¶ 87 ("Defendants have violated, and continue to violate, New York Tax Law §§ 471 and 471-e by possessing cigarettes for sale in New York State . . . ."); N.Y. Tax Law § 471(1).

action and the later claim will be barred without regard to whether it is based upon different legal theories or seeks different or additional relief.") (citations omitted).

To determine whether a "factual grouping" constitutes the same "transaction" or "series of transactions" so that res judicata is applicable, the Court must look to whether "the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Smith v. Russell Sage Coll.*, 54 N.Y.2d 185, 192-93 (1981) (citation and internal quotation marks omitted).

## B.  Discussion

In its Third Claim for Relief, the State wants to recover the same taxes for the same conduct under the same New York State law as it alleged in its Administrative Proceeding. Because such a recovery is barred by res judicata, the Court should grant King Mountain summary judgment on the Third Claim for Relief in the Amended Complaint.

On December 20, 2012, the NYSDTF issued King Mountain a Notice of Determination that King Mountain owed the State $1,259,250 in taxes.  (*See* Pl.'s Counter-Statement ¶ 26(c); Notice of Determination.)  The Notice stated:

> On 12/03/12, you were found to be in possession and/or control of unstamped or unlawfully stamped cigarettes, and/or untaxed tobacco products.  Therefore, penalty is imposed under Article 20 of the New York State Tax law.

(*See* Notice of Determination.)  The State filed its Complaint in this action the next day, on December 21, 2012, and it, as well as the Amended Complaint, prominently feature (Am. Compl. ¶¶ 67-68) the cigarettes seized by the New York State Police on December 3, 2012, in support of its claims.  On July 10, 2014, the ALJ, the Hon. Herbert M. Friedman, scheduled the

case for trial on November 19 to 21, 2014.  (*See* Pilmar Decl. Ex. 15, *In re King Mountain*, July 10, 2014 Letter from ALJ.)

On October 23, 2014, New York State submitted a "Stipulation for Discontinuance of Proceeding proposing to settle this matter whereby [King Mountain] will owe $0 in tax, penalty, and interest . . . ."  (*See* Pl's Counter-Statement ¶ 26(d); Stipulation of Discontinuance.)  On November 19, 2014, the ALJ issued an Order of Discontinuance that provided as follows:

> Ordered, Adjudged and Decreed that pursuant to the Stipulation of Discontinuance dated October 23, 2014, the assessment is cancelled.
>
> Pursuant to the Stipulation of Discontinuance executed by the parties, petitioner has waived its rights to apply for costs and fees under Tax Law § 3030; and
>
> It is further Ordered, Adjudged and Decreed that the above-entitled proceeding be and the same hereby is discontinued with prejudice . . . .

(Order of Discontinuance.)

Each of the requisite elements for application of res judicata is present.  First, the Stipulation dismissing the Division of Tax Appeals proceeding "with prejudice" is a judgment on the merits sufficient to preclude any subsequent claim by the State.  *See Pawling Lake Prop. Owners Ass'n, Inc. v. Greiner*, 72 A.D.3d 665, 667 (2d Dep't 2010) ("The general rule is that a stipulation of discontinuance 'with prejudice' is afforded res judicata effect and will bar litigation of the discontinued causes of action.") (citation and internal quotation marks omitted); *see also Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) ("A voluntary dismissal with prejudice is an adjudication on the merits for purposes of res judicata.").[8]

---

[8] The New York State Division of Tax Appeals is a court of competent jurisdiction, and therefore res judicata can apply to its determinations.  *See Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 499 (1984); *Burkybile v. Bd. of Educ. of Hastings-On-Hudson Union Free Sch. Dist.*, 411 F.3d 306, 312 (2d Cir. 2005).

Second, the administrative action and the instant action both were brought by the State of New York against King Mountain.  Even were the Court to find that the New York State Division of Taxation and the New York Attorney General suing in the name of the State of New York are technically not the same party, "a judgment in a prior action is binding not only on the parties to that action, but on those in privity with them."  *Green v. Santa Fe Indus., Inc.*, 70 N.Y.2d 244, 253 (1987).  "Generally, to establish privity, the connection between the parties must be such that the interests of the nonparty can be said to have been represented in the prior proceeding."  *Id.*; *see also In re Slocum v. Joseph B*, 183 A.D.2d 102, 104 (3d Dep't 1992) ("the concept of privity as employed in res judicata doctrine is not limited to conventional privity" and there is a "flexible consideration of whether all of the facts and circumstances of the party's and nonparty's actual relationship, their mutuality of interests and the manner in which the nonparty's interests were represented in the prior litigation establishes a functional representation") (citation and internal quotation marks omitted).

For example, in *State v. Seaport Manor A.C.F.*, 19 A.D.3d 609 (2d Dep't 2005), the New York State Department of Health brought two administrative enforcement proceedings against a defendant, both of which were discontinued with prejudice by stipulations of settlement.  The New York Attorney General then brought a suit against the same defendant.  The Appellate Division held that the New York Attorney General "was in privity" with the Department of Health and concluded that claims regarding conduct that occurred before the stipulation of settlement in the second action was signed were barred by res judicata.  *Id.* at 610; *see also Overview Books, LLC v. United States*, 755 F. Supp. 2d 409, 417-18 (E.D.N.Y. 2010) ("An agency of the United States is [] considered to be the same party as the United States or in privity with it for res judicata purposes."), *aff'd*, 438 F. App'x 31 (2d Cir. 2011).  Clearly, an agency of

-23-

the State and the State itself are in privity.  In fact, New York State Investigator Scala, who purchased King Mountain cigarettes from Indian smoke shops, testified that New York civil tax cases could be brought by both the NYSDTF and the Attorney General.  *See* Scala Dep., pp. 14-18.

Third, the instant litigation is based upon the same series of transactions as the Administrative Proceeding.  In the Division of Tax Appeals, the State sought to assess and collect New York Tax Law Article 20 taxes from King Mountain with respect to the 7,260 cartons of King Mountain cigarettes seized by the State on December 3, 2012.  In the instant federal court action, the State seeks the same relief regarding the same conduct – assessment and collection of taxes owed under Article 20 of the New York State Tax Law (§§471 and 471-e) with respect to (among others) the cigarettes seized by the State on December 3, 2012.  *See* Am. Compl. ¶¶ 67-68; *see also* Jan. 26, 2016 Mem. and Order at 4, 9, and 17.

While the State may argue that the Third Claim for Relief seeks Article 20 taxes on King Mountain cigarettes that were not noticed in the Administrative Proceeding, courts have emphasized that res judicata applies to claims that "'could have been raised'" in a prior action. *Maharaj*, 128 F.3d at 97 (quoting *Federated Dep't Stores, Inc. v. Moiti*e, 452 U.S. 394, 398 (1981)).  The fact that the federal court action was filed just one day after New York State instituted the Administrative Proceeding against King Mountain, and the fact that both the federal court action and the Administrative Proceeding charged King Mountain with failing to pay New York State taxes on the 7,260 cartons of King Mountain cigarettes seized by New York State from a company owned by the Seneca Nation on December 3, 2012, establish that the State had all the facts necessary to seek recovery in the Administrative Proceeding of all taxes allegedly unpaid by King Mountain.  Having sought relief in the Administrative Proceeding for

allegedly unpaid taxes from King Mountain for violation of Article 20, and having finally determined "with prejudice," that King Mountain was not liable for New York State taxes, the State cannot thereafter prosecute an action against King Mountain in federal court seeking the same allegedly unpaid taxes by merely adding additional sales of cigarettes. *See Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 111 (2d Cir. 2000) ("a suit for trespass precludes a subsequent action for trespass as to all the instances of trespass preceding the institution of the original suit") (citing Restatement (Second) of Judgments § 24 cmt. d & illus. 7 (1982)); *U.S. ex rel. Sarafoglou v. Weill Med. Coll. of Cornell Univ.*, 451 F. Supp. 2d 613, 621 (S.D.N.Y. 2006) ("[T]he mere fact that the plaintiff alleges greater misconduct in the amended complaint is of no consequence because ultimately all the false claims in the current complaint are based on the same nucleus of operative fact.").

Because res judicata precludes the State from relitigating its New York State Tax Law claim against King Mountain, the Court should grant King Mountain summary judgment as to the Third Claim for Relief.

## CONCLUSION

For all of the reasons discussed above, the Court should grant summary judgment for King Mountain on the First, Second and Third Claims for Relief in the Amended Complaint.

Dated: January 29, 2016

Respectfully Submitted,

Nelson A. Boxer
Philip Pilmar
Petrillo Klein & Boxer LLP
655 Third Avenue, 22nd Floor
New York, NY 10017
(212) 370-0338
nboxer@pkbllp.com

-25-

Randolph H. Barnhouse
Kelli J. Keegan
Johnson Barnhouse & Keegan LLP
7424 4th Street NW
Los Ranchos de Albuquerque, NM 87107
(505) 842-6123
dbarnhouse@luebbenlaw.com

*Counsel for Defendant King Mountain*
*Tobacco Co. Inc.*