# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

STATE OF NEW YORK,

                              Plaintiff,

        -against-

MOUNTAIN TOBACCO COMPANY d/b/a KING     Civil Action No.
MOUNTAIN TOBACCO COMPANY INC., and
DELBERT WHEELER, Sr.,                  2:12-CV-06276 (JS) (SIL)

                             Defendants.

------------------------------------------------------------- x

### PLAINTIFF STATE OF NEW YORK'S RESPONSE TO DEFENDANT KING MOUNTAIN'S SECOND LOCAL RULE 56.1 STATEMENT

     Pursuant to Local Civil Rule 56.1, the plaintiff State of New York submits its response to defendant Mountain Tobacco Company d/b/a King Mountain Tobacco Company Inc.'s ("King Mountain") Second Local Rule 56.1 Statement, dated September 11, 2015.

**King Mountain Statement No. 1:**

        1.     The Yakama Reservation was established by a Treaty between the Yakama people and the United States that was ratified by the United States Senate and signed by President James Buchanan in 1859. *See* 12 Stat. 951(June 9, 1855).

**State's Response To Statement No. 1:**

    Not disputed.

**King Mountain Statement No. 2:**

        2.     The Yakama Treaty guarantees the Yakama people the continued right to the exclusive use and benefit of their lands, and the right to travel and trade, including trade with other Indians, without State restriction.  *See Id.*; July 29, 2014, Deposition of

1

Yancey Black ("Black Dep."), p. 111; July 30, 2014, Deposition of
Jay Thompson ("Thompson Dep."), pp. 113-14; May 8, 2015,
Deposition of Delbert Wheeler, Sr. ("Wheeler Dep."), p. 89.

## State's Response To Statement No. 2:

Disputed.  This is a question of law.  The "right to travel" is limited to "all public

highways."  Treaty with the Yakama, 12 Stat. 951 (1855).  In addition, the Treaty lacks a "right

to trade," much less a right to trade with other Indians beyond the Yakama Indian Reservation.

*See id.*; *Mescalero Apache Tribe v. Jones*, 411 U.S. 145, 148–49 (1973) ("Absent express federal

law to the contrary, Indians going beyond reservation boundaries have generally be held subject

to nondiscriminatory state law otherwise applicable to all citizens of the State."); *King Mt.*

*Tobacco Co. v. McKenna*, 768 F.3d 989, 998 (9th Cir. 2014) (holding that the Yakama Treaty is a

"federal law," that such law did not contain a "right to trade," and that appellants King Mountain

and the Confederated Tribes and Bands of the Yakama Indian Nation had failed to meet their

burden in showing that such law somehow preempted Washington State's escrow statute, a

nondiscriminatory law that applied to off-reservation activity) ("there is no right to trade in the

Yakama Treaty"), *cert denied*, 135 S.Ct. 1542 (2015); *see also United States v. King Mt.*

*Tobacco Co.*, 2015 U.S. Dist. LEXIS 99832, *40–44 (July 27, 2015 E.D. Wash.) (holding that

the Yakama Treaty lacked express language that might exempt King Mountain from paying a tax

or fee, and granting the United States' motion to dismiss King Mountain's treaty counterclaim)

("the Yakama Treaty does not guarantee the right to trade unencumbered.").

## King Mountain Statement No. 3:

3.      The Yakama Nation is a federally recognized Indian Tribe.
*See* Indian Entities Recognized and Eligible To Receive Services
From the United States Bureau of Indian Affairs, 49 Fed. Red. 19,
4748 (Jan. 29, 2014).

**State's Response To Statement No. 3:**

Not material and not disputed.

**King Mountain Statement No. 4:**

4.      The Yakama Reservation constitutes "Indian Country" as defined by 18 U.S.C. §1151.

**State's Response To Statement No. 4:**

Not material and not disputed.

**King Mountain Statement No. 5:**

5.      The Yakama Treaty's protections extend not only to the Yakama Tribe, but also to its members and their businesses. *See* 12 Stat. 951(June 9, 1855); *Yakama Nation v. F1ores,* 955 F.Supp. 1229, 1260 (E.D. Wash. 1997), *aff'd,* 157 F.3d 762 (9th Cir. 1998).

**State's Response To Statement No. 5:**

Disputed.  This is a question of law.  The Yakama Treaty's protections are reserved

solely to the Yakama Indian Nation, rather than to individual tribal members or such members'

businesses.  *See* Treaty with the Yakama, 12 Stat. 951 (1855); *see also Matter of Smith v. Spitzer*,

28 A.D.3d 1047, 1048 (3d Dep't 2006) (analyzing similar language under the 1664 Treaty of

Fort Albany, and finding that such Treaty's protections were reserved only to the Tribe, rather

than to individual tribal members; thus, where an tribal member failed to show that he had sued

on behalf of the Tribe or otherwise shown that the Tribe had authorized such suit, the tribal

member lacked standing as a matter of law to invoke on his own behalf any rights that the Tribe

may have had under the 1664 Treaty); *State v. Cuomo*, 2007 U.S. Dist. LEXIS 97105, *21–22

(E.D.N.Y. Sept. 30, 2007) (holding that plaintiff tribal member's lack of standing under the 1664

Treaty was a merits-based determination), *aff'd* 306 Fed. Appx. 645 (2d Cir. 2009).

3

**King Mountain Statement No. 6:**

6.     King Mountain is organized under the laws of the Yakama Nation. *See* Amended Complaint ¶ 8; King Mountain Answer to Amended Complaint ¶ 5; May 14, 2014, Declaration of Delbert Wheeler, Sr. ("Wheeler Decl.") ¶ 3; KMTA00874.

**State's Response To Statement No. 6:**

Not material and not disputed.

**King Mountain Statement No. 7:**

7.     King Mountain holds a permit issued pursuant to Chapter 52 of the Internal Revenue Code of 1986 as a manufacturer of tobacco products. *See* Permit No. TP-WA-15000, Dep't of Treasury, Alcohol & Tobacco Tax & Trade Bureau.

**State's Response To Statement No. 7:**

Not material and not disputed.

**King Mountain Statement No. 8:**

8.     The sole shareholder of King Mountain is Delbert Wheeler, Sr. *See* King Mountain's First Supplemental Response to Plaintiffs Interrogatory 15; King Mountain's Response to Plaintiffs Interrogatory 9; Wheeler Decl. ¶ 2.

**State's Response To Statement No. 8:**

Not disputed.

**King Mountain Statement No. 9:**

9.     Delbert Wheeler, Sr., is a member of the Yakama Tribe and lives within the borders of the Yakama Indian Reservation. *See* King Mountain's Response to Plaintiffs Interrogatory 9; King Mountain Answer to Amended Complaint ¶ 7; Wheeler Decl. ¶ 5; Wheeler Dep., p. 9.

**State's Response To Statement No. 9:**

Not material and not disputed.

4

**King Mountain Statement No. 10:**

      10.    King Mountain manufactures cigarettes, operates a manufacturing facility, a warehouse, and a distribution facility, and maintains a business office, all on the Yakama Indian Reservation in White Swan, Washington. *See* Amended Complaint ¶¶ 8, 55; Black Dep., pp. 24-25, Thompson Dep., pp. 31, 102; Wheeler Dep., pp. 42, 55-56; King Mountain Answer to Amended Complaint ¶¶ 5-6.

**State's Response To Statement No. 10:**

      Not material and not disputed.

**King Mountain Statement No. 11:**

      11.    Most of the tobacco contained in King Mountain cigarettes is grown on land owned by Delbert Wheeler that is situated on the Yakama Indian Reservation in White Swan, Washington. *See* Wheeler Dep., pp. 39-42.

**State's Response To Statement No. 11:**

      Not material and not disputed.

**King Mountain Statement No. 12:**

      12.    King Mountain presently has approximately 50 employees at its manufacturing facility, warehouse, distribution facility, and business office on the Yakama Indian Reservation. *See* Thompson Dep., pp. 27-28; Black Dep., p. 63.

**State's Response To Statement No. 12:**

      Not material and not disputed.

**King Mountain Statement No. 13:**

      13.    King Mountain sells its cigarettes to Indian Nations, and to companies owned by a member of an Indian Nation, that are situated on Indian Nations, some of which are located within the boundaries of the State of New York, and refers to these sales as "Nation-to-Nation sales." *See* Black Dep., pp. 29, 99; Thompson Dep., pp. 48-49; King Mountain's Third Supplemental Response to Plaintiff's Interrogatory 1, Exhibit A; *see, e.g.,* KMTA00115-145; KMTA00173-259.

**State's Response To Statement No. 13:**

Not material and not disputed as to (a) King Mountain's sale of cigarettes outside the State of New York; and (b) how King Mountain refers to such sales as "Nation-to-Nation sales."

Not disputed that certain companies and persons purchasing cigarettes from King Mountain are located within the State of New York; specifically, those companies with a New York address, identified by King Mountain's Third Supplemental Response to Plaintiff's Interrogatory 1, Exhibit A:

    a.  AJ's Candy & Tobacco, P.O. Box 187, Gowanda, New York 14070;

    b.  ERW Wholesale, 11157 Old Lakeshore Rd., Irving, New York 14081;

    c.  Iriquois (or Iroquois) Wholesale, 11157 Old Lakeshore Rd., Irving, New York 14081;

    d.  Lakeside Trading, 89 State St., Seneca Falls, New York 13148;

    e.  Mohawk Distribution, P.O. Box 508, Hogansburg, New York 13655;

    f.  Oienkwa Trading, P.O. Box 975, Akwesasne, New York 13655;

    g.  Oneida Wholesale, 223 Genesee St., Oneida, New York 13421;

    h.  Onondaga Nation Smoke Shop, P.O. Box 301, Nedrow, New York 13120;

    i.  Shinnecock Smoke Shop, P.O. Box 5036, Southampton, New York 11969; and

    j.  Valvo Candies, Routes 5 & 20, P.O. Box 271, Silver Creek, New York 14136.

Not disputed that certain above-identified distributors (a)–(i) (not including Valvo Candies) are located on the territory of an Indian Nation within the State of New York (*i.e.*, a "qualified reservation," as defined by N.Y. Tax Law sec. 470(16)), but disputed to the extent King Mountain suggests that such territory is somehow separate or apart from the State of New York's territory.  *See Nevada v. Hicks*, 533 U.S. 353, 361–62 (2001) ("'Ordinarily,' it is now

6

clear, 'an Indian reservation is considered part of the territory of the State.'").  Disputed also to

the extent King Mountain suggests that Valvo Candies is located on the territory of an Indian

Nation—it is not.  *See* New York Dept. of State, Entity search results for Valvo Candies

(showing that Valvo Companies is New York domestic business corporation, located within

Chautauqua County)[1]; Chautauqua County Dept. of Finance, Parcel Current Tax Liabilities,

available at http://app.co.chautauqua.ny.us/cctaxonline/#view/064689-32.00-1-24/current (noting

that Valvo Candies owes $6,882.32 in taxes to the County of Chautauqua, New York); Valvo's

Candies' website, http://www.valvoscandy.com/index.html (last visited July 27, 2015).

　　　Disputed to the extent that King Mountain's use of the phrase "Nation-to-Nation sales"

improperly suggests that (a) King Mountain is an Indian Nation or an "arm" of the Yakama

Indian Nation; (b) that King Mountain sells its cigarettes to other Indian Nations, or an "arm" of

any Indian Nation; and (c) that King Mountain's sale of cigarettes "to companies owned by a

member of an Indian Nation" might be considered sales of cigarettes to an Indian Nation or an

arm of an Indian Nation.  *See Gristede's Foods, Inc. v. Unkechauge Nation*, 660 F. Supp. 2d 442,

466, 477–78 (E.D.N.Y. 2009) (identifying factors a court must consider in determining whether a

person or company is a sovereign "arm" of a tribe, rather than a mere business[2]; and holding that

---

[1] Available at
http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=
318792&p_corpid=271406&p_entity_name=valvo%20candies&p_name_type=A&p_search_typ
e=BEGINS&p_srch_results_page=0.

[2] "The factors to consider are whether: [1] The entity is organized under tribal constitution or
laws (rather than federal law).  [2] The organization's purpose(s) are similar to a tribal
government's (*e.g.*, promoting tribal welfare, alleviating unemployment, providing money for
tribal programs).  [3] The organization's managing body is necessarily composed primarily of
tribal officials (e.g., organization's board is, by law, controlled by tribal council members).  [4]
The tribe's governing body has the unrestricted power to dismiss members of the organization's
governing body.  [5] The organization (and/or its governing body) 'acts for the tribe' in
managing the organization's activities.  [6] The tribe is the legal owner of property used by the
organization, with title held in tribe's name.  [7] The organization's administrative and/or

"the burden of proof for an entity asserting immunity as an arm of a sovereign tribe is on the entity [that seeks] to establish that it is, in fact, an arm of the tribe"); *see also Sue/Perior Concrete & Paving, Inc. v. Corporation*, 24 N.Y.3d 538, 549–51 (Ct. App. 2014) (holding that because the Tribe's assets would not be impacted by a judgment against the Tribe's wholly owned subsidiary corporation, the subsidiary corporation was not an "arm" of the Tribe).

King Mountain's cited evidence and prior testimony do not support its assertion that the persons purchasing cigarettes from King Mountain—*i.e.*, AJ's Candy & Tobacco, ERW Wholesale, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Oneida Wholesale, Onondaga Nation Smoke Shop, Shinnecock Smoke Shop, and Valvo Candies—are either an Indian Nation or an "arm" of an Indian Nation. *See Gristede's Foods*, 660 F. Supp. 2d at 477–78 (identifying factors for consideration, none of which King Mountain's cited evidence addresses); King Mt. Rule 30(b)(6) witness CEO Jay Thompson Depo., at 42–44 (July 30, 2014) (testifying that ERW Wholesale was not owned by an Indian Nation; that he did not know whether AJ's Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an Indian Nation; and that his conversations with other King Mountain employees—*i.e.*, hearsay and speculation—informed his belief that an Indian Nation owned Oneida Wholesale and the Onondaga Nation Smoke Shop); King Mt. Rule 30(b)(6) witness Gen. Manager Yancey Black Depo, at 99–103 (June 29, 2014) (testifying that he did not know whether ERW Wholesale, AJ's Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an Indian Nation; that conversations with a "warehouse guy on shipments"—*i.e.*, hearsay and speculation—formed the

---

accounting activities are controlled or exercised by tribal officials.  [8] The organization's activities take place primarily on the reservation."  *Gristede's Foods*, 660 F. Supp. 2d at 477.

basis for his belief that an Indian Nation owned Oneida Wholesale; and that the Onondaga

Nation Smoke Shop's name formed his belief that an Indian Nation owned the company).

King Mountain's cited evidence similarly does not support its suggested assertion that

King Mountain is an Indian Nation or an "arm" of the Yakama Indian Nation.  Instead, the

evidence shows that—

- The Yakama Nation does not own or operate King Mountain.  King Mt. Answer, ¶ 5; *see also* KMTID 448 (noting that Wheeler owns and operates King Mountain); *Wheeler v. TTB*, 1st Am. Compl., ¶ 2.51 (same).

- The Yakama Nation did not establish King Mountain.  King Mt. Resp. to Req. For Admis. No. 98.

- The Yakama Nation is not the legal owner of King Mountain's business properties (*e.g.*, cigarette manufacturing equipment, buildings, trade names, etc.). King Mt. Resp. to Req. For Admis. No. 93.

- The Yakama Nation's Tribal Council and General Council do not manage King Mountain's business decisions or activities.  King Mt. Resp. to Req. For Admis. No. 95.

- The Yakama Nation's Tribal Council and General Council do not control, and do not exercise control over, King Mountain's administrative and accounting activities.  King Mt. Resp. to Req. For Admis. No. 94.

- The Yakama Nation's Tribal Council and General Council lack the unrestricted power to dismiss members of King Mountain's governing body.  King Mt. Resp. to Req. For Admis. No. 97.

- King Mountain is not an official trial enterprise or enterprise or official tribal program of the Yakama Nation.  King Mt. Resp. to Req. For Admis. No. 84 (Pl. Ex. 7).

- King Mountain does not act as a division or arm of the Yakama Nation.  King Mt. Resp. to Req. For Admis. No. 85.

- King Mountain does not act on behalf of the Yakama Nation in managing King Mountain's business activities.  King Mt. Resp. to Req. For Admis. No. 92.

- And, King Mountain's profits go to the owner of King Mountain and not the Yakama Nation.  King Mt. Resp. to Req. For Admis. No. 97.

**King Mountain Statement No. 14:**

> 14.    All of King Mountain's sales of cigarettes to Indian Nations, and to companies owned by a member of an Indian Nation, that are located within the boundaries of the State of New York, are shipped via common carrier from King Mountain's warehouse in White Swan or are mailed from King Mountain's warehouse in White Swan. *See* Thompson Dep., pp. 53-54; Black Dep., p. 74; *see, e.g.,* KMTA00302-303; KMTA00356.

**State's Response To Statement No. 14:**

Not disputed that such persons purchasing cigarettes from King Mountain are located within the State of New York.  Not disputed that King Mountain's sales of cigarettes are shipped via common carrier from King Mountain's warehouse in White Swan.

Disputed to the extent that King Mountain improperly suggests (a) that it sells its cigarettes to other Indian Nations or an "arm" of an Indian Nation; and (b) that King Mountain's sale of cigarettes "to companies owned by a member of an Indian Nation" might be considered sales of cigarettes to an Indian Nation or an arm of an Indian Nation.  *See Gristede's Foods*, 660 F. Supp. 2d at 466, 477–78 (identifying factors a court must consider in determining whether a person or company is a sovereign "arm" of a tribe, rather than a mere business[3]; and holding that "the burden of proof for an entity asserting immunity as an arm of a sovereign tribe is on the entity [that seeks] to establish that it is, in fact, an arm of the tribe"); *see also Sue/Perior*

---

[3] "The factors to consider are whether: [1] The entity is organized under tribal constitution or laws (rather than federal law).  [2] The organization's purpose(s) are similar to a tribal government's (*e.g.*, promoting tribal welfare, alleviating unemployment, providing money for tribal programs).  [3] The organization's managing body is necessarily composed primarily of tribal officials (e.g., organization's board is, by law, controlled by tribal council members).  [4] The tribe's governing body has the unrestricted power to dismiss members of the organization's governing body.  [5] The organization (and/or its governing body) 'acts for the tribe' in managing the organization's activities.  [6] The tribe is the legal owner of property used by the organization, with title held in tribe's name.  [7] The organization's administrative and/or accounting activities are controlled or exercised by tribal officials.  [8] The organization's activities take place primarily on the reservation."  *Gristede's Foods*, 660 F. Supp. 2d at 477.

*Concrete & Paving*, 24 N.Y.3d at 549–51 (holding that because the Tribe's assets would not be impacted by a judgment against the Tribe's wholly owned subsidiary corporation, the subsidiary corporation was not an "arm" of the Tribe).

King Mountain's cited evidence and prior testimony do not support its assertion that the persons purchasing cigarettes from King Mountain—*i.e.*, AJ's Candy & Tobacco, ERW Wholesale, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Oneida Wholesale, Onondaga Nation Smoke Shop, Shinnecock Smoke Shop, and Valvo Candies—are either an Indian Nation or an "arm" of an Indian Nation. *See Gristede's Foods*, 660 F. Supp. 2d at 477–78 (identifying factors for consideration, none of which King Mountain's cited evidence addresses); King Mt. Rule 30(b)(6) witness CEO Jay Thompson Depo., at 42–44 (July 30, 2014) (testifying that ERW Wholesale was not owned by an Indian Nation; that he did not know whether AJ's Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an Indian Nation; and that his conversations with other King Mountain employees—*i.e.*, hearsay and speculation—informed his belief that an Indian Nation owned Oneida Wholesale and the Onondaga Nation Smoke Shop); King Mt. Rule 30(b)(6) witness Gen. Manager Yancey Black Depo, at 99–103 (June 29, 2014) (testifying that he did not know whether  ERW Wholesale, AJ's Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an Indian Nation; that conversations with a "warehouse guy on shipments"—*i.e.*, hearsay and speculation—formed the basis for his belief that an Indian Nation owned Oneida Wholesale; and that the Onondaga Nation Smoke Shop's name formed his belief that an Indian Nation owned the company).

**King Mountain Statement No. 15:**

> 15.     King Mountain's sales of cigarettes to Indian Nations, and to companies owned by a member of an Indian Nation, that are located within the boundaries of the State of New York, were shipped via a common carrier trucking company owned by a member of the Yakama Tribe located within the borders of the Yakama Indian Reservation. *See* Thompson Dep., pp. 53-54.

**State's Response To Statement No. 15:**

Not disputed that such persons purchasing cigarettes from King Mountain are located within the State of New York.

Disputed to the extent that King Mountain improperly suggests (a) that it sells its cigarettes to other Indian Nations or an "arm" of an Indian Nation; and (b) that King Mountain's sale of cigarettes "to companies owned by a member of an Indian Nation" might be considered sales of cigarettes to an Indian Nation or an arm of an Indian Nation.  *See Gristede's Foods*, 660 F. Supp. 2d at 466, 477–78 (identifying factors a court must consider in determining whether a person or company is a sovereign "arm" of a tribe, rather than a mere business; and holding that "the burden of proof for an entity asserting immunity as an arm of a sovereign tribe is on the entity [that seeks] to establish that it is, in fact, an arm of the tribe"); *see also Sue/Perior Concrete & Paving*, 24 N.Y.3d at 549–51 (holding that because the Tribe's assets would not be impacted by a judgment against the Tribe's wholly owned subsidiary corporation, the subsidiary corporation was not an "arm" of the Tribe).

King Mountain's cited evidence and prior testimony do not support its assertion that the persons purchasing cigarettes from King Mountain—*i.e.*, AJ's Candy & Tobacco, ERW Wholesale, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Oneida Wholesale, Onondaga Nation Smoke Shop, Shinnecock Smoke Shop, and Valvo Candies—are either an Indian Nation or an "arm" of an Indian Nation.  *See Gristede's Foods*,

660 F. Supp. 2d at 477–78 (identifying factors for consideration, none of which King Mountain's

cited evidence addresses); King Mt. Rule 30(b)(6) witness CEO Jay Thompson Depo., at 42–44

(July 30, 2014) (testifying that ERW Wholesale was not owned by an Indian Nation; that he did

not know whether AJ's Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk

Distribution, Oienkwa Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an

Indian Nation; and that his conversations with other King Mountain employees—*i.e.*, hearsay

and speculation—informed his belief that an Indian Nation owned Oneida Wholesale and the

Onondaga Nation Smoke Shop); King Mt. Rule 30(b)(6) witness Gen. Manager Yancey Black

Depo, at 99–103 (June 29, 2014) (testifying that he did not know whether  ERW Wholesale, AJ's

Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa

Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an Indian Nation; that

conversations with a "warehouse guy on shipments"—*i.e.*, hearsay and speculation—formed the

basis for his belief that an Indian Nation owned Oneida Wholesale; and that the Onondaga

Nation Smoke Shop's name formed his belief that an Indian Nation owned the company).

Disputed that King Mountain's shipments of cigarettes to such persons located within the

State of New York, were made solely via a common carrier trucking company owned by a

member of the Yakama Tribe located within the borders of the Yakama Indian Reservation.  *See*

Deposition of Yancey Black, at 74 ("Q.  And when King Mountain cigarettes were then shipped

to each of these distributors, these cigarettes were delivered via common carrier or a private

delivery service; is that right?  A.  Yes."); Thompson Depo., at 53–54 (noting that King

Mountain uses both FedEx and Spencer Trucking for its cigarette deliveries to New York).

**King Mountain Statement No. 16:**

> 16.     All of King Mountain's sales of cigarettes to Indian
> Nations and to companies owned by a member of an Indian
> Nation, that are located within the boundaries of the State of New
> York, are to lawfully operating distributors, wholesalers, or
> retailers of cigarettes; none of these sales were or are to consumers
> (as defined in 15 U.S. C. § 375(4)) of cigarettes. *See* King
> Mountain's Response to Plaintiffs Interrogatory 10; King
> Mountain's Supplemental Response to Plaintiffs Interrogatory 1,
> Exhibit A; King Mountain's Third Supplemental Response to
> Plaintiffs Interrogatory 1, Exhibit A; Black Dep., pp. 29, 90-92;
> Thompson Dep., pp. 46-49; Wheeler Dep., pp. 81-82.

**State's Response To Statement No. 16:**

Disputed.  King Mountain improperly suggests (a) that it sells its cigarettes to other

Indian Nations or an "arm" of an Indian Nation; and (b) that King Mountain's sale of cigarettes

"to companies owned by a member of an Indian Nation" might be considered sales of cigarettes

to an Indian Nation or an arm of an Indian Nation.  *See Gristede's Foods*, 660 F. Supp. 2d at

466, 477–78 (identifying factors a court must consider in determining whether a person or

company is a sovereign "arm" of a tribe, rather than a mere business; and holding that "the

burden of proof for an entity asserting immunity as an arm of a sovereign tribe is on the entity

[that seeks] to establish that it is, in fact, an arm of the tribe"); *see also Sue/Perior Concrete &*

*Paving*, 24 N.Y.3d at 549–51 (holding that because the Tribe's assets would not be impacted by

a judgment against the Tribe's wholly owned subsidiary corporation, the subsidiary corporation

was not an "arm" of the Tribe).

King Mountain's cited evidence and prior testimony do not support its assertion that the

persons purchasing cigarettes from King Mountain—*i.e.*, AJ's Candy & Tobacco, ERW

Wholesale, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading,

Oneida Wholesale, Onondaga Nation Smoke Shop, Shinnecock Smoke Shop, and Valvo

Candies—are either an Indian Nation or an "arm" of an Indian Nation.  *See Gristede's Foods*,

14

660 F. Supp. 2d at 477–78 (identifying factors for consideration, none of which King Mountain's

cited evidence addresses); King Mt. Rule 30(b)(6) witness CEO Jay Thompson Depo., at 42–44

(July 30, 2014) (testifying that ERW Wholesale was not owned by an Indian Nation; that he did

not know whether AJ's Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk

Distribution, Oienkwa Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an

Indian Nation; and that his conversations with other King Mountain employees—*i.e.*, hearsay

and speculation—informed his belief that an Indian Nation owned Oneida Wholesale and the

Onondaga Nation Smoke Shop); King Mt. Rule 30(b)(6) witness Gen. Manager Yancey Black

Depo, at 99–103 (June 29, 2014) (testifying that he did not know whether  ERW Wholesale, AJ's

Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa

Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an Indian Nation; that

conversations with a "warehouse guy on shipments"—*i.e.*, hearsay and speculation—formed the

basis for his belief that an Indian Nation owned Oneida Wholesale; and that the Onondaga

Nation Smoke Shop's name formed his belief that an Indian Nation owned the company).

Disputed also to the extent that King Mountain improperly suggests that such New York

persons or companies purchasing cigarette from King Mountain are "lawfully operating

distributors, wholesalers, or retailers of cigarettes" within the State of New York, or that such

persons are "consumers" within the meaning of 15 U.S.C. sec. 375(4); N.Y. Tax Law § 471(1)

("It shall be presumed that all cigarettes within the state are subject to tax until the contrary is

established, and the burden of proof that any cigarettes are not taxable [t]hereunder shall be upon

the person in possession thereof.").  The term "lawfully operating" means "compliance with

applicable Federal, State, and Tribal Laws."  U.S. Dept. of Justice, Bureau of Alcohol, Tobacco,

Firearms and Explosives ("ATF"), Implementation of the Prevent All Cigarette Trafficking Act

of 2009 (PACT Act) – Tribal Consultation Process, at 6 (dated Nov. 18, 2010).  And, because

New York law does not permit a tribally issued license to stand in the place of a State-issued

license (N.Y. Tax Law § 470 *et seq.*), a New York State-issued license is required.  *See id.*; ATF

Tribal Consultation Process, at 3.

As to the following New York companies at issue in this case—*i.e.*, AJ's Candy &

Tobacco, ERW Wholesale, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution,

Oienkwa Trading, Oneida Wholesale, Onondaga Nation Smoke Shop, and Shinnecock Smoke

Shop; *see* State's Response to Statement No. 13, above—King Mountain's evidence fails to

show that these companies are licensed or registered by the State of New York as a stamping

agent, wholesaler, distributor, or retailer of cigarettes.  *See* New York Dep't of Taxation and

Finance, New York State Licensed and Registered Cigarette Tax Agents, Wholesale Dealers and

Retail Dealers List (available at https://www8.tax.ny.gov/CGTX/cgtxHome); *see also* Decl. of

Peter Spitzer, ¶¶ 4–5 (dated Oct. 15, 2015).   Accordingly, these companies are not "lawfully

operating" within the meaning of the PACT Act, and must be considered as "consumers."  *See*

15 U.S.C. § 375(4) (defining a "consumer" as any person purchasing cigarettes, and who is not

"lawfully operating as a manufacturer, distributor, wholesaler, or retailer of cigarettes or

smokeless tobacco"); ATF Quarterly Bulletin 1999, vol. 3, Industry Circular 99–2: Unlawful

Transportation, Shipment, or Sale of Cigarettes and Domestic Sale of Cigarettes Labeled for

Export (defining persons liable under the PACT Act as any person "other than a person licensed

by that State as a wholesale or retail distributor").

As to Valvo Candies, because this company did not report affixing any New York State

tax stamps on any packs of King Mountain cigarettes (Decl. of Peter Spitzer, ¶ 5, dated Oct. 15,

2015), Valvo Candies cannot be considered to be "lawfully operating" within the meaning of the

Act (15 U.S.C. § 375(4)), and must also be considered a "consumer."  *See* N.Y. Tax Law § 471;

20 N.Y. Comp. Codes R. & Regs. § 75.5.

## King Mountain Statement No. 17:

> 17.    In instances where King Mountain makes Nation-to-Nation sales of its cigarettes, King Mountain does not file forms with State governments, including forms referenced in the Prevent All Cigarette Trafficking Act ("PACT Act"). *See* Thompson Dep., p. 23; Black Dep., pp. 28-29, 32-33, 56-57.

## State's Response To Statement No. 17:

Not material and not disputed, to the extent King Mountain is referring to the filing of

forms with non-New York state governments.  Not disputed to the extent that King Mountain

does not file forms with the State of New York, including forms referenced in the Prevent All

Cigarette Trafficking Act.

Disputed to the extent that King Mountain's use of the phrase "Nation-to-Nation sales"

improperly suggests that (a) King Mountain is an Indian Nation or an "arm" of the Yakama

Indian Nation; and (b) that King Mountain sells its cigarettes to other Indian Nations, or an

"arm" of any Indian Nation.  *See Gristede's Foods*, 660 F. Supp. 2d at 466, 477–78 (identifying

factors a court must consider in determining whether a person or company is a sovereign "arm"

of a tribe, rather than a mere business[4]; and holding that "the burden of proof for an entity

---

[4] "The factors to consider are whether: [1] The entity is organized under tribal constitution or laws (rather than federal law).  [2] The organization's purpose(s) are similar to a tribal government's (*e.g.*, promoting tribal welfare, alleviating unemployment, providing money for tribal programs).  [3] The organization's managing body is necessarily composed primarily of tribal officials (e.g., organization's board is, by law, controlled by tribal council members).  [4] The tribe's governing body has the unrestricted power to dismiss members of the organization's governing body.  [5] The organization (and/or its governing body) 'acts for the tribe' in managing the organization's activities.  [6] The tribe is the legal owner of property used by the organization, with title held in tribe's name.  [7] The organization's administrative and/or accounting activities are controlled or exercised by tribal officials.  [8] The organization's activities take place primarily on the reservation."  *Gristede's Foods*, 660 F. Supp. 2d at 477.

asserting immunity as an arm of a sovereign tribe is on the entity [that seeks] to establish that it is, in fact, an arm of the tribe"); *see also Sue/Perior Concrete & Paving*, 24 N.Y.3d at 549–51 (holding that because the Tribe's assets would not be impacted by a judgment against the Tribe's wholly owned subsidiary corporation, the subsidiary corporation was not an "arm" of the Tribe).

King Mountain's cited evidence and prior testimony do not support its assertion that the persons purchasing cigarettes from King Mountain—*i.e.*, AJ's Candy & Tobacco, ERW Wholesale, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Oneida Wholesale, Onondaga Nation Smoke Shop, Shinnecock Smoke Shop, and Valvo Candies—are either an Indian Nation or an "arm" of an Indian Nation. *See Gristede's Foods*, 660 F. Supp. 2d at 477–78 (identifying factors for consideration, none of which King Mountain's cited evidence addresses); King Mt. Rule 30(b)(6) witness CEO Jay Thompson Depo., at 42–44 (July 30, 2014) (testifying that ERW Wholesale was not owned by an Indian Nation; that he did not know whether AJ's Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an Indian Nation; and that his conversations with other King Mountain employees—*i.e.*, hearsay and speculation—informed his belief that an Indian Nation owned Oneida Wholesale and the Onondaga Nation Smoke Shop); King Mt. Rule 30(b)(6) witness Gen. Manager Yancey Black Depo, at 99–103 (June 29, 2014) (testifying that he did not know whether  ERW Wholesale, AJ's Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an Indian Nation; that conversations with a "warehouse guy on shipments"—*i.e.*, hearsay and speculation—formed the basis for his belief that an Indian Nation owned Oneida Wholesale; and that the Onondaga Nation Smoke Shop's name formed his belief that an Indian Nation owned the company).

King Mountain's cited evidence similarly does not support its assertion that King Mountain is an Indian Nation or an "arm" of the Yakama Indian Nation.  Instead, the evidence shows that—

- The Yakama Nation does not own or operate King Mountain.  King Mt. Answer, ¶ 5; *see also* KMTID 448 (noting that Wheeler owns and operates King Mountain); *Wheeler v. TTB*, 1st Am. Compl., ¶ 2.51 (same).

- The Yakama Nation did not establish King Mountain.  King Mt. Resp. to Req. For Admis. No. 98.

- The Yakama Nation is not the legal owner of King Mountain's business properties (*e.g.*, cigarette manufacturing equipment, buildings, trade names, etc.).  King Mt. Resp. to Req. For Admis. No. 93.

- The Yakama Nation's Tribal Council and General Council do not manage King Mountain's business decisions or activities.  King Mt. Resp. to Req. For Admis. No. 95.

- The Yakama Nation's Tribal Council and General Council do not control, and do not exercise control over, King Mountain's administrative and accounting activities.  King Mt. Resp. to Req. For Admis. No. 94.

- The Yakama Nation's Tribal Council and General Council lack the unrestricted power to dismiss members of King Mountain's governing body.  King Mt. Resp. to Req. For Admis. No. 97.

- King Mountain is not an official trial enterprise or enterprise or official tribal program of the Yakama Nation.  King Mt. Resp. to Req. For Admis. No. 84 (Pl. Ex. 7).

- King Mountain does not act as a division or arm of the Yakama Nation.  King Mt. Resp. to Req. For Admis. No. 85.

- King Mountain does not act on behalf of the Yakama Nation in managing King Mountain's business activities.  King Mt. Resp. to Req. For Admis. No. 92.

- King Mountain's profits go to the owner of King Mountain and not the Yakama Nation.  King Mt. Resp. to Req. For Admis. No. 97.

**King Mountain Statement No. 18:**

18.     In 2011, 2012, and in 2013, King Mountain sold its cigarettes to Indian Nations, or companies owned by a member of an Indian Nation and situated on Indian Nations, that are located

19

within the boundaries of the State of New York, including to the Seneca Nation in Irving and in Gowanda, New York; to the Oneida Nation in Oneida, New York; to the Onondaga Nation in Nedrow, New York; to the Iroquois Nation in Irving, New York; to the Cayuga Nation in Seneca Falls, New York; and to the St. Regis Mohawk or Akwesasne Nation in Hogansburg, New York. *See* King Mountain's Responses 9 through 62 to Plaintiffs First Requests for Admissions; *see also, e.g.,* KMTA00115-145; KMTA00173-259.

**State's Response To Statement No. 18:**

Disputed to the extent that King Mountain improperly suggests (a) that it sells its cigarettes to other Indian Nations or an "arm" of an Indian Nation; and (b) that King Mountain's sale of cigarettes "to companies owned by a member of an Indian Nation" might be considered sales of cigarettes to an Indian Nation or an arm of an Indian Nation. *See Gristede's Foods*, 660 F. Supp. 2d at 466, 477–78 (identifying factors a court must consider in determining whether a person or company is a sovereign "arm" of a tribe, rather than a mere business[5]; and holding that "the burden of proof for an entity asserting immunity as an arm of a sovereign tribe is on the entity [that seeks] to establish that it is, in fact, an arm of the tribe"); *see also Sue/Perior Concrete & Paving*, 24 N.Y.3d at 549–51 (holding that because the Tribe's assets would not be impacted by a judgment against the Tribe's wholly owned subsidiary corporation, the subsidiary corporation was not an "arm" of the Tribe).

---

[5] "The factors to consider are whether: [1] The entity is organized under tribal constitution or laws (rather than federal law).  [2] The organization's purpose(s) are similar to a tribal government's (*e.g.*, promoting tribal welfare, alleviating unemployment, providing money for tribal programs).  [3] The organization's managing body is necessarily composed primarily of tribal officials (e.g., organization's board is, by law, controlled by tribal council members).  [4] The tribe's governing body has the unrestricted power to dismiss members of the organization's governing body.  [5] The organization (and/or its governing body) 'acts for the tribe' in managing the organization's activities.  [6] The tribe is the legal owner of property used by the organization, with title held in tribe's name.  [7] The organization's administrative and/or accounting activities are controlled or exercised by tribal officials.  [8] The organization's activities take place primarily on the reservation."  *Gristede's Foods*, 660 F. Supp. 2d at 477.

20

King Mountain's cited evidence and prior testimony do not support its assertion that the persons purchasing cigarettes from King Mountain—*i.e.*, AJ's Candy & Tobacco, ERW Wholesale, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Oneida Wholesale, Onondaga Nation Smoke Shop, Shinnecock Smoke Shop, and Valvo Candies—are either an Indian Nation or an "arm" of an Indian Nation. *See Gristede's Foods*, 660 F. Supp. 2d at 477–78 (identifying factors for consideration, none of which King Mountain's cited evidence addresses); King Mt. Rule 30(b)(6) witness CEO Jay Thompson Depo., at 42–44 (July 30, 2014) (testifying that ERW Wholesale was not owned by an Indian Nation; that he did not know whether AJ's Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an Indian Nation; and that his conversations with other King Mountain employees—*i.e.*, hearsay and speculation—informed his belief that an Indian Nation owned Oneida Wholesale and the Onondaga Nation Smoke Shop); King Mt. Rule 30(b)(6) witness Gen. Manager Yancey Black Depo, at 99–103 (June 29, 2014) (testifying that he did not know whether ERW Wholesale, AJ's Candy & Tobacco, Iroquois Wholesale, Lakeside Trading, Mohawk Distribution, Oienkwa Trading, Shinnecock Smoke Shop, or Valvo Candies were owned by an Indian Nation; that conversations with a "warehouse guy on shipments"—*i.e.*, hearsay and speculation—formed the basis for his belief that an Indian Nation owned Oneida Wholesale; and that the Onondaga Nation Smoke Shop's name formed his belief that an Indian Nation owned the company).

**King Mountain Statement No. 19:**

> 19.    King Mountain also sells its cigarettes to State licensed distributors located within certain State jurisdictions (for example, in Idaho, Oregon and Washington), and refers to these sales as "open market sales"; those distributors are responsible for affixing any required tax stamp for open market sales within that State's jurisdiction. *See* King Mountain's Third Supplemental Response to

Plaintiffs Interrogatory 1, Exhibit A; Black Dep., pp. 59-61, 84-85;
Thompson Dep., pp. 34-35, 56, 70-71; *see, e.g.*, State of Oregon
Directory of Cigarette Brands Approved for Stamping and Sale,
http://www.doj.state.or.us/tobacco/pdf/branddirectory.pdf (last
visited Nov. 26, 2014).

**State's Response To Statement No. 19:**

Not material and not disputed to the extent King Mountain is referring to non-New York

distributors and the legal obligations those distributors have outside the State of New York.  Not

material and not disputed to the extent King Mountain seeks to define the term "open market

sales."

Disputed to the extent King Mountain's statement suggests that it sells its cigarettes to

licensed distributors within the State of New York.  As to the following New York companies at

issue in this case—*i.e.*, AJ's Candy & Tobacco, ERW Wholesale, Iroquois Wholesale, Lakeside

Trading, Mohawk Distribution, Oienkwa Trading, Oneida Wholesale, Onondaga Nation Smoke

Shop, and Shinnecock Smoke Shop; *see* State's Response to Statement Nos. 13 and 16, above—

none of these companies are licensed or registered by the State of New York as a stamping agent,

wholesaler, distributor, or retailer of cigarettes.  *See* New York Dep't of Taxation and Finance,

New York State Licensed and Registered Cigarette Tax Agents, Wholesale Dealers and Retail

Dealers List (available at https://www8.tax.ny.gov/CGTX/cgtxHome).

Disputed to the extent King Mountain improperly suggests that such unlicensed

distributors are responsible for affixing any New York State tax stamp to the packs of cigarettes

sold and delivered by King Mountain.  Only stamping agents licensed by the State of New York

are authorized to purchase and affix New York State cigarette tax stamps.  N.Y. Tax Law § 471;

20 N.Y. Comp. Codes R. & Regs. §§ 74.3(a)(2), 74.2(c); N.Y. State, Dept. of Taxation and

Finance, Cigarette And Tobacco Products Tax (available at

http://www.tax.ny.gov/bus/cig/cigidx.htm).  And under this system, these stamping agents are

"the only entry point for cigarettes into New York's stream of commerce." *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 158 (2d Cir. 2011); *City of New York v. Golden Feather Smoke Shop, Inc.*, 2013 U.S. Dist. Lexis 47037, *8 (E.D.N.Y., Mar. 29, 2013) (noting that the purpose of this system is to prevent the widespread evasion of New York cigarette taxes). Accordingly, King Mountain initial responsibility was to ensure that the persons purchasing its cigarettes for sale and later distribution in New York were state-licensed stamping agents. *See id*. King Mountain's decision to ignore this legal requirement—whether deliberate or mistaken—is not a defense. *See United States v. Duggan*, 743 F.2d 59, 83 (2d Cir. 1984).

## King Mountain Statement No. 20:

> 20. In instances where King Mountain makes open market sales of its cigarettes, King Mountain files applicable forms with the State governments, including forms required under the PACT Act. *See* Thompson Dep., p. 23; Black Dep. p. 28; Wheeler Dep., p. 68; *see, e.g.,* State of Oregon Directory of Cigarette Brands Approved for Stamping and Sale, http://www.doj.state.or.us/tobacco/pdf/branddirectory.pdf (last visited Nov. 26, 2014).

## State's Response To Statement No. 20:

Not material and not disputed to the extent King Mountain is referring to non-New York sales of its cigarettes.

Disputed to the extent King Mountain is suggesting that it files any applicable forms with the State of New York, including any forms as required under the PACT Act. *See* King Mt. Answer, ¶ 18; King Mt. Resp. to Req. For Admis. No 5 ( "King Mountain has not filed reports nor registrations with the New York State Department of Taxation and Finance under the PACT Act"); Decl. of Peter Spitzer, ¶ 5 (dated Feb. 21, 2013; ECF No. 16).

## King Mountain Statement No. 21:

> 21. King Mountain has not and does not make open market sales of its cigarettes within New York State. *See* King Mountain's

23

Supplemental Response to Plaintiffs Interrogatory 1, Exhibit A;
Black Dep., p. 29; Thompson Dep., pp. 46-49; Wheeler Dep., p.
81.

**State's Response To Statement No. 21:**

Not material as to whether such sales of cigarettes within the State of New York are

"open market sales."

Disputed to the extent King Mountain's statement suggests that it sells its cigarettes to

licensed distributors within the State of New York.  As to the following New York companies at

issue in this case—*i.e.*, AJ's Candy & Tobacco, ERW Wholesale, Iroquois Wholesale, Lakeside

Trading, Mohawk Distribution, Oienkwa Trading, Oneida Wholesale, Onondaga Nation Smoke

Shop, and Shinnecock Smoke Shop; *see* State's Response to Statement Nos. 13 and 16, above—

none of these companies are licensed or registered by the State of New York as a stamping agent,

wholesaler, distributor, or retailer of cigarettes.  *See* New York Dep't of Taxation and Finance,

New York State Licensed and Registered Cigarette Tax Agents, Wholesale Dealers and Retail

Dealers List (available at https://www8.tax.ny.gov/CGTX/cgtxHome); Decl. of Peter Spitzer, ¶¶

4–5 (dated Oct. 15, 2015) (noting that Valvo Candies has not reported nor affixed any tax stamps

on any King Mountain cigarettes).

**King Mountain Statement No. 22:**

> 22.      King Mountain has not filed certifications with the New
> York State Department of Taxation and Finance reporting the
> number and brands of its cigarettes sold to Indian Nations/member
> businesses within the boundaries of New York. *See* King
> Mountain's Response 4 to Plaintiffs First Requests for Admissions;
> February 21, 2013, Declaration of New York State Department of
> Taxation and Finance Excise Technician Peter Spitzer ("Spitzer
> Decl.").

**State's Response To Statement No. 22:**

Not disputed.

24

**King Mountain Statement No. 23:**

       23.    King Mountain has not filed reports or registrations with the New York State Department of Taxation and Finance under the PACT Act. *See* King Mountain's Response 5 to Plaintiffs First Requests for Admissions; Spitzer Decl.

**State's Response To Statement No. 23:**

    Not disputed.

**King Mountain Statement No. 24:**

       24.    King Mountain has not certified in writing to the New York State Office of Fire Prevention and Control that its cigarettes meet the performance standards prescribed by that Office pursuant to N.Y. Executive Law§ 156-c(2). *See* King Mountain's Response 6 to Plaintiffs First Requests for Admissions.

**State's Response To Statement No. 24:**

    Not disputed.

**King Mountain Statement No. 25:**

       25.    On November 6, 2012, New York State Investigator Andrew Scala purchased one carton of unstamped (not bearing a New York State excise tax stamp) King Mountain brand cigarettes at the Native Delight smoke shop on the Poospatuck Indian Reservation in Mastic, New York, for $25. *See* March 4, 2013, Declaration of New York State Office of the Attorney General Investigator Andrew Scala; August 13, 2014, Deposition of Andrew Scala ("Scala Dep."), pp. 34-35, 45-46; KM 2 (NY000199).

**State's Response To Statement No. 25:**

    Not disputed.

**King Mountain Statement No. 26 (not including subparts (a)–(e)):**

       26.    On December 3, 2012, New York State troopers stopped a truck on New York Interstate 87 in Clinton County, New York. The troopers and a New York State Investigator subsequently found and seized 140 cases of unstamped (not bearing a New York State excise tax stamp) King Mountain brand cigarettes inside the locked storage compartment of the truck. *See* March 4, 2013

Declaration of New York State Police Investigator Joel Revette ("Revette Decl."); KM 14 (NY000370-372).

**State's Response To Statement No. 26 (not including subparts (a)–(e)):**

Not material and not disputed.  The cigarettes at issue in this case (*i.e.*, the cigarettes upon which the State seeks to obtain damages, penalties, and other appropriate relief) do not include these seized cigarettes.  *See* State of New York's Statement of Undisputed Material Facts, ¶¶ 66–85 (identifying cigarettes at issue and corresponding evidence).

**King Mountain Statement No. 26(a):**

> 26(a).   The cigarettes inside the truck were being transported by ERW Wholesale of the Seneca Nation, Irving, New York. The Bill of Lading presented by the driver reflected the sale of cigarettes from the Oneida Nation in Oneida, New York, to the Ganienkeh Nation in Altona, New York, and at the time of the stop the driver of the truck presented an "Iroquois Wholesale" business license of the Seneca Nation. The bill of lading made no mention of delivery or sale by King Mountain, and King Mountain did not own or control the cigarettes in the truck. In addition, the truck contained cartons of cigarettes of manufacturers other than King Mountain. *See* Revette Decl.; NY000348-353; September 11, 2014, Deposition of New York State Police Investigator Joel Revette, pp. 22-24, 47; KM 14 (NY000370-372); KM 17 (NY000204-206); September 12, 2014, Deposition of New York State Trooper Stephen Posada, pp. 13, 32.

**State's Response To Statement No. 26(a):**

Not material and not disputed.  The cigarettes at issue in this case (*i.e.*, the cigarettes upon which the State seeks to obtain damages, penalties, and other appropriate relief) do not include these seized cigarettes.  *See* State of New York's Statement of Undisputed Material Facts, ¶¶ 66–85 (identifying cigarettes at issue and corresponding evidence).

**King Mountain Statement No. 26(b):**

> 26(b).   ERW Wholesale is owned by Eric White, a member of the Seneca Indian nation, and is a tobacco wholesaler licensed by the Seneca Nation. ERW Wholesale buys cigarettes from Indian

Nations and sells cigarettes to Indian nations. *See* Thompson Dep. p. 47; NY000348-353.

**State's Response To Statement No. 26(b):**

Not material and not disputed as to "ERW Wholesale is owned by Eric White, a member of the Seneca Indian nation, and is a tobacco wholesaler licensed by the Seneca Nation."

Disputed to the extent King Mountain suggests that (a) ERW Wholesale's purchase of cigarettes from King Mountain constitute the purchase of cigarettes an Indian Nation; and (b) that ERW sells cigarettes to Indian Nations. *See Gristede's Foods, Inc. v. Unkechauge Nation*, 660 F. Supp. 2d 442, 466, 477–78 (E.D.N.Y. 2009) (holding that there are numerous factors to consider before a person or company purchasing cigarettes may be considered an "arm" of a tribe, *i.e.*, an "extension of the tribe's own economic activity," rather than a mere business; and that "the burden of proof for an entity asserting immunity as an arm of a sovereign tribe is on the entity [that seeks] to establish that it is, in fact, an arm of the tribe"); *see also Sue/Perior Concrete & Paving*, 24 N.Y.3d at 549–51 (holding that because the Tribe's assets would not be impacted by a judgment against the Tribe's wholly owned subsidiary corporation, the subsidiary corporation was not an "arm" of the Tribe).

King Mountain's cited evidence does not support its suggested assertion that ERW sells to other Indian Nations.

King Mountain's cited evidence similarly does not support its suggested assertion that King Mountain is an Indian Nation or an "arm" of the Yakama Indian Nation.  Instead, the evidence shows that—

- The Yakama Nation does not own or operate King Mountain.  King Mt. Answer, ¶ 5; *see also* KMTID 448 (noting that Wheeler owns and operates King Mountain); *Wheeler v. TTB*, 1st Am. Compl., ¶ 2.51 (same).

- The Yakama Nation did not establish King Mountain.  King Mt. Resp. to Req. For Admis. No. 98.

27

- The Yakama Nation is not the legal owner of King Mountain's business properties (*e.g.*, cigarette manufacturing equipment, buildings, trade names, etc.). King Mt. Resp. to Req. For Admis. No. 93.

- The Yakama Nation's Tribal Council and General Council do not manage King Mountain's business decisions or activities.  King Mt. Resp. to Req. For Admis. No. 95.

- The Yakama Nation's Tribal Council and General Council do not control, and do not exercise control over, King Mountain's administrative and accounting activities.  King Mt. Resp. to Req. For Admis. No. 94.

- The Yakama Nation's Tribal Council and General Council lack the unrestricted power to dismiss members of King Mountain's governing body.  King Mt. Resp. to Req. For Admis. No. 97.

- King Mountain is not an official trial enterprise or enterprise or official tribal program of the Yakama Nation.  King Mt. Resp. to Req. For Admis. No. 84 (Pl. Ex. 7).

- King Mountain does not act as a division or arm of the Yakama Nation.  King Mt. Resp. to Req. For Admis. No. 85.

- King Mountain does not act on behalf of the Yakama Nation in managing King Mountain's business activities.  King Mt. Resp. to Req. For Admis. No. 92.

- And, King Mountain's profits go to the owner of King Mountain and not the Yakama Nation.  King Mt. Resp. to Req. For Admis. No. 97.

**King Mountain Statement No. 26(c):**

> 26(c).  On December 20, 2012, the New York State Department of Taxation and Finance issued Notice of Determination Number L-038986040 against King Mountain for its failure to pay $1,259,250 in State taxes under Article 20 of the New York State Tax Law related to the cigarettes seized on December 3, 2012 (for the Tax Period Ended January 23, 2012). *See* December 20, 2012 New York State Department of Taxation and Finance Notice of Determination Number L-038986040.

**State's Response To Statement No. 26(c):**

Not material and not disputed.  The cigarettes at issue in this case (*i.e.*, the cigarettes

upon which the State seeks to obtain damages, penalties, and other appropriate relief) do not

include these seized cigarettes.  *See* State of New York's Statement of Undisputed Material

Facts, ¶¶ 66–85.

**King Mountain Statement No. 26(d):**

> 26(d).  On October 23, 2014, the New York State Department of
> Taxation and Finance submitted a Stipulation of Discontinuance
> with respect to King Mountain, which provided that King
> Mountain owes $0 in tax, penalty and interest for Notice of
> Determination Number L-038986040. *See In the Matter of the
> Petition of King Mountain Tobacco Company,* DTA # 825886
> (N.Y. Division of Tax Appeals), Stipulation for Discontinuance of
> Proceeding.

**State's Response To Statement No. 26(d):**

Not material and not disputed.  The cigarettes at issue in this case (*i.e.*, the cigarettes

upon which the State seeks to obtain damages, penalties, and other appropriate relief) do not

include these seized cigarettes.  *See* State of New York's Statement of Undisputed Material

Facts, ¶¶ 66–85 (identifying cigarettes at issue and corresponding evidence).

**King Mountain Statement No. 26(e):**

> 26(e).  On November 19, 2014, the Administrative Law Judge
> presiding over Notice of Determination Number L-038986040
> issued an Order adjudging and decreeing that the State's
> assessment against King Mountain in Assessment Number L-
> 038986040 is cancelled, and the ALJ dismissed Notice of
> Assessment Number L-038986040 with prejudice. *See In the
> Matter of the Petition of King Mountain Tobacco Company,* DTA
> # 825886 (N.Y. Division of Tax Appeals), Order of
> Discontinuance.

**State's Response To Statement No. 26(e):**

Not material and not disputed.  The cigarettes at issue in this case (*i.e.*, the cigarettes

upon which the State seeks to obtain damages, penalties, and other appropriate relief) do not

include these seized cigarettes.  *See* State of New York's Statement of Undisputed Material

Facts, ¶¶ 66–85 (identifying cigarettes at issue and corresponding evidence).

**King Mountain Statement No. 27:**

> 27.     On May 15, 2013, Investigator Scala purchased one carton of unstamped (not bearing a New York State excise tax stamp) King Mountain brand cigarettes at the Rising Native Sisters smoke shop (for $30), one carton of unstamped King Mountain brand cigarettes at the Native Delight smoke shop (for $25), and one carton of unstamped King Mountain brand cigarettes at the AMH smoke shop (for $27), all on the Poospatuck Indian Reservation in Mastic, New York. *See* May 21, 2013 Supplemental Declaration of New York State Office of the Attorney General Investigator Andrew Scala; Scala Dep., pp. 67-79; KM 4 (NY000619).

**State's Response To Statement No. 27:**

Not disputed.

**King Mountain Statement No. 28:**

> 28.     The cigarettes purchased by Investigator Scala on May 15, 2013 from the AMH smoke shop and from the Native Delight Smoke Shop bore the stamp "FSC," which stands for federal fire safety control compliance. *See* Scala Dep., pp. 83-84; NY000635-641.

**State's Response To Statement No. 28:**

Disputed to the extent that King Mountain asserts that FSC stands for "federal fire safety control compliance."  *See* N.Y. Exec. Law §156-c(6) ("'FSC' which signifies Fire Standards Compliant," and further referring to the regulations set forth in 19 N.Y.C.R.R. 429.8)

**King Mountain Statement No. 29:**

> 29.     On May 16, 2013, New York State Investigator Chad Shelmidine purchased one carton of unstamped (not bearing a New York State excise tax stamp) King Mountain brand cigarettes at the Lake Side Trading smoke shop on the Cayuga Indian Reservation in Union Springs, New York, for $20. *See* May 21, 2013 Declaration of New York State Law Department Investigator Chad Shelmidine; September 11, 2014, Deposition of Chad Shelmidine, pp. 15, 21-22; KM 26 (NY000618).

**State's Response To Statement No. 29:**

Not disputed.

**King Mountain Statement No. 30:**

       30.     On June 5, 2013, Investigator Scala purchased one carton of unstamped (not bearing a New York State excise tax stamp) King Mountain brand cigarettes at the Rising Native Sisters smoke shop (for $30) and one carton at the Native Delight smoke shop (for $25), both on the Poospatuck Indian Reservation in Mastic, New York. *See* KM 8 (NY000620); Scala Dep., pp. 88-90.

**State's Response To Statement No. 30:**

      Not disputed.


Dated:    New York, New York          ERIC T. SCHNEIDERMAN
          October 19, 2015            Attorney General of the State of New York


                                By:   /s/ Christopher K. Leung

                                Christopher K. Leung (CL 6030)
                                Dana Biberman (DB 9878)
                                 Chief, Tobacco Compliance Bureau
                                Assistant Attorneys General
                                120 Broadway, 3rd Floor
                                New York, New York 10271
                                Tel.: 212-416-6389
                                Fax.: 212-416-8877
                                Christopher.Leung@ag.ny.gov
                                Dana.Biberman@ag.ny.gov

                                *Attorneys for Plaintiff State of New York*