UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x

STATE OF NEW YORK,

                              Plaintiff,

      -against-

MOUNTAIN TOBACCO COMPANY d/b/a       Civil Action No.
KING MOUNTAIN TOBACCO COMPANY INC.,

                                                     2:12-CV-06276 (JS) (SIL)

                              Defendant.


------------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF STATE OF NEW YORK'S MOTION FOR REQUESTED RELIEF

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

Christopher K. Leung (CL 6030)
Dana Biberman (DB 9878)
 Chief, Tobacco Compliance Bureau
Assistant Attorneys General
120 Broadway, 3rd Floor
New York, New York 10271
Tel.: 212-416-6389
Fax.: 212-416-8877
Christopher.Leung@ag.ny.gov
Dana.Biberman@ag.ny.gov

*Attorneys for Plaintiff State of New York*

## INTRODUCTION

Pursuant to this Court's December 27, 2016 Order, the plaintiff State of New York hereby moves for a judgment and order granting the State's requested injunctive relief for its prevailed-on claims, namely (1) that portion of the State's third claim, concerning the failure of defendant Mountain Tobacco Company d/b/a King Mountain Tobacco Company, Inc. ("King Mountain") to sell its unstamped cigarettes to a New York State licensed stamping agent, *see* N.Y. Tax Law § 471; (2) the State's fourth claim, concerning King Mountain's failure to comply with the certification requirements set forth by New York Tax Law section 480-b; and (3) the State's fifth claim, concerning King Mountain's failure to file the requisite "fire-safety" certifications mandated by New York Executive Law section 156-c. *See* Mem. & Order, dated July 21, 2016, at 55 (ECF No. 214).

As determined by this Court in its July Order, there is no genuine dispute of material fact for such claims. *Id.* Accordingly, the State's requested relief is appropriately granted here—essentially, an Order directing King Mountain's immediate and full compliance with such laws, and the requisite authority for the State to enforce such compliance. *See* Pl.'s Am. Compl., at 26 (ECF No. 96).

## BACKGROUND

As shown by the State's submitted evidence on the parties' cross-motions for summary judgment, between June 1, 2010 and December 31, 2014, King Mountain sold and delivered over 2.5 million cartons of untaxed and unreported cigarettes to companies located within the State of New York. *See* King Mt. 56.1 Counterstatement, at ¶ 78 (ECF No. 195-6).[1] The undisputed

---

[1] This figure does not include the 6,000 cartons of cigarettes that King Mountain sold and delivered to Valvo Candies, on or around June 29, 2010. As explained by the parties' November 2016 letter to the Court, the State is no longer pursuing its claim or relief for such cigarettes. *See* State's Letter, dated Nov. 30, 2016, at 2 (ECF No. 225). Accordingly, the overall number of cigarettes that the State is alleging that King Mountain improperly imported into the State is 2,558,171 cartons (or 25,581,710 packs) of cigarettes. *See* Pl.'s 56.1 at ¶¶ 77–78 (*i.e.*,

evidence further showed that in violation of state law, King Mountain failed to sell or deliver these cigarettes to a New York State licensed stamping agent, in accordance with New York Tax Law section 471; failed to submit the required certifications to the State Department of Taxation and Finance, Office of the Attorney General, or New York state-licensed stamping agent in advance of such sales and deliveries, *see* N.Y. Tax Law § 480-b; and failed to submit the necessary certifications to the State Office of Fire Prevention and Control, *see* N.Y. Exec. Law §156-c. *See* July 21, 2016 Order, at 46–52. For such sales, King Mountain received millions of dollars. King Mt. 56.1 Counterstatement, at ¶¶ 108–10. The evidence further showed that, despite the manufacturer's ongoing litigation with the State, King Mountain was continuing to sell and deliver such contraband cigarettes into the State. *See id.* at ¶ 79.

For such violations, the State's Amended Complaint requested in relevant part, a judgment and Order—

> b. Authorizing the Attorney General to seize, forfeit, and otherwise destroy any unstamped cigarettes that are (i) manufactured by King Mountain, (ii) found in New York, and (iii) are being delivered to, or otherwise in the possession of a person not authorized by the State of New York to possess unstamped cigarettes.
>
> …
>
> d. Directing [King Mountain] to comply with the certification requirements mandated by New York Tax Law § 480-b, for the years 2005 through the present. *See* N.Y. Exec. L. § 63(12).
>
> ...
>
> g. Enjoining [King Mountain] from continued violations of [New York Executive Law section 156-c] and directing [King Mountain] to pay plaintiff civil penalties authorized by … N.Y. Executive Law § 156-c(8)(a).

---

2,564,171 cartons – 6,000 cartons = 2,558,171 cartons).  As further noted by that correspondence, the State is also declining to pursue that remaining portion of its Section 156-c claim, concerning King Mountain's alleged failure to affix the Fire Standards Compliant mark to its cigarette packages.  *See* State's Nov. 30, 2016 Letter, at 2.

>      h. Enjoining [King Mountain] pursuant to New York Executive Law § 63(12), from continuing to violate any of the aforementioned statutes, and directing [King Mountain] to pay plaintiff … costs incurred in bringing this action.
>
>      i. Granting all such other and further relief as this Court deems appropriate.

Pl.'s Am. Compl., at 25–26 (ECF No. 96); *see also* New York CPLR 8303(a)(6) (permitting discretionary costs to be awarded to plaintiffs up to $2,000 in actions brought under Executive Law section 63); *People by Vacco v. Lipsitz*, 174 Misc. 2d 571, 584, 663 N.Y.S.2d 468, 477 (Sup. Ct. 1997) (same).

For purposes of resolving this litigation, the State is declining to seek penalties or costs. Instead, the State is seeking injunctive relief—specifically, an Order enjoining King Mountain from—

1. "[S]elling unstamped cigarettes directly to Indian nations or tribes and/or reservation cigarette sellers or entities that are not licensed stamping agents," in violation of Section 471 (Order, at 48; *see* N.Y. Tax Law § 471);

2. Continuing to sell cigarettes into the State of New York, without first complying with Section 480-b's certification requirements, namely—

    a. Filing a certification under penalty of perjury, with the New York State Department of Taxation and Finance, the Office of the Attorney General, and any New York state-licensed stamping agent who affixes New York state cigarette tax stamps to King Mountain's packs of cigarettes, that King Mountain is either (i) a participating manufacturer under the 1998 Tobacco Master Settlement, or (ii) is otherwise in full compliance with New York Public Health Law section 1399-pp(2); and

    b. Filing an accompanying list of each cigarette brands that King Mountain sold into the State (*see* Order, at 48–51; N.Y. Tax Law § 480-b(1)); and

3

    3. Continuing to sell or offer cigarettes for sale, without first complying with Section 156-c's certification requirements, which require every such cigarette manufacturer to first certify in writing to the New York State Office of Fire Prevention and Control that the manufacturer's cigarettes meet the performance standards prescribed by such Office (*see* Order, at 51–52; N.Y. Exec. Law §156-c(3)).

To that end, the State further requests all such other equitable relief this Court deems appropriate to ensure King Mountain's compliance with such laws, including an Order expressly granting the State the authority to seize any unstamped King Mountain brand cigarettes that are found in New York, and are being delivered to, or otherwise in the possession of a person not authorized by the State of New York to possess such unstamped cigarettes.  *See* Pl.'s Am. Compl., at 25.

## LEGAL STANDARD

Pursuant to New York Executive Law section 63(12), the Attorney General may seek and obtain injunctive relief to enjoin a defendant's violations of law.  *See* N.Y. Exec. Law § 63(12) (authorizing the Attorney General to apply for an order enjoining "repeated fraudulent or illegal acts").  Significantly, such relief is appropriate even where a defendant has advised that it has discontinued the illegal activity.  *See State v. Midland Equities of New York, Inc.*, 117 Misc. 2d 203, 206 (Sup. Ct. 1982) (noting that "Voluntary discontinuance of improper or illegal activity is no assurance that such activity will not be resumed," and granting the State's request for a permanent injunction); *People v. Ludwig Baumann & Co.*, 56 Misc. 2d 153, 159 (Sup. Ct. 1968) (noting that a permanent injunction would serve as a deterrent to defendant and others).

## ARGUMENT

Here, because there is no genuine dispute of material fact for such claims prevailed on by the State, the State's requested for an Order effectively directing King Mountain to comply with New York law is appropriately granted here.  As noted above, even if King Mountain were to

4

come forth and assert that its improper or illegal activity had ceased, such requested relief is still appropriately granted.

Furthermore, the State's request for an Order expressly granting the State the authority to seize King Mountain's cigarettes, is well within the permissible bounds of appropriate relief, when as here, (a) the Indian nations or tribes that King Mountain has sold its unstamped cigarettes to have refused to cooperate in collecting the validly imposed cigarette excise taxes, and (b) such seizures occur outside any such reservation.  *Wash. v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 161–62 (1980).  As explained by the Supreme Court—

> Finally, the State contends that it has the power to seize unstamped cigarettes as contraband if the Tribes do not cooperate in collecting the State's taxes. … The Tribes contest this power, noting that because sales by wholesalers to the tribal businesses are concededly exempt from state taxation, no state tax is due while the cigarettes are in transit.
>
> We find that Washington's interest in enforcing its valid taxes is sufficient to justify these seizures.  Although the cigarettes in transit are as yet exempt from state taxation, they are not immune from seizure when the Tribes, as here, have refused to fulfill collection and remittance obligations which the State has validly imposed.  It is significant that these seizures take place outside the reservation, in locations where state power over Indian affairs is considerably more expansive than it is within reservation boundaries.  *Cf. Mescalero Apache Tribe v. Jones*, 411 U.S. 145 (1973).  By seizing cigarettes en route to the reservation, the State polices against wholesale evasion of its own valid taxes without unnecessarily intruding on core tribal interests.

*Id*.  Notably, only the Oneida Nation, pursuant to a 2013 settlement agreement entered into with the State of New York, may validly receive unstamped cigarettes directly from federally licensed manufacturers without going through a New York State licensed cigarette stamping agent.  *See*

5

Settlement Agreement, at 9.[2]  In addition, the record reflects that King Mountain may be continuing to sell unstamped cigarettes to persons that are not affiliated with the Oneida Nation, and who are not otherwise authorized to possess such unstamped cigarettes.  *See* King Mt. 56.1 Counterstatement, at ¶ 79 (identifying continuing sales to companies located on the Seneca and Onondaga Indian reservations).  Under such circumstances then, it is appropriate for this Court to grant the State's requested Order, expressly affirming the State's right to seize, forfeit, and otherwise destroy any such unstamped cigarettes that are found in New York State, which are seized outside any given Indian reservation and not otherwise directed to the Oneida Nation when such Nation is in substantial compliance with its 2013 settlement agreement.

## CONCLUSION

For all the foregoing reasons, the State requests a judgment and Order granting the State's request for injunctive relief, and all such other and further relief this Court deems appropriate.

---

[2] A copy of this 2013 settlement agreement between the Oneida Nation, State of New York, County of Madison and County of Oneida is available on the website of the New York State Department of Tax and Finance, *see* https://www.tax.ny.gov/pdf/publications/oin_settlement_agreement.pdf.  Notably, the above-described exemption for cigarettes directed to the Oneida Nation is dependent on the tribe taking certain agreed-upon actions.  For example, if the Oneida Nation has "substantially failed to comply with" certain provisions of the settlement agreement (*e.g.*, Section V(A)(5), which requires the Nation to affix its own tax stamp, *id*. at 9), then such exemption "shall be void and Articles 20 and 20-A of the State Tax Law shall apply to all sales of cigarettes on Nation lands that occur more than seven (7) days after the State has notified the Nation of such finding of substantial failure to comply[.]"  *Id*. at 10 (describing further preconditions to void such exemption).  The agreement also provides, *inter alia*, that the Oneida Nation "shall report to the State … its purchases of all cigarettes for the express and limited purpose of ensuring appropriate third-party compliance [*e.g.*, King Mountain's compliance] with the requirements of the Master Settlement Agreement, as amended and interpreted."  *Id*.

Dated: New York, New York  
January 18, 2017

ERIC T. SCHNEIDERMAN  
Attorney General of the State of New York

By: /s/ Christopher K. Leung

Christopher K. Leung (CL 6030)  
Dana Biberman (DB 9878)  
 Chief, Tobacco Compliance Bureau  
Assistant Attorneys General  
120 Broadway, 3rd Floor  
New York, New York 10271  
Tel.: 212-416-6389  
Fax.: 212-416-8877  
Christopher.Leung@ag.ny.gov  
Dana.Biberman@ag.ny.gov

*Attorneys for Plaintiff State of New York*