UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x

STATE OF NEW YORK,

                              Plaintiff,

      -against-

MOUNTAIN TOBACCO COMPANY d/b/a     Civil Action No.
KING MOUNTAIN TOBACCO COMPANY INC.,

                                                2:12-CV-06276 (JS) (SIL)

                              Defendant.

---------------------------------------------------------------- x

## REPLY BRIEF IN SUPPORT OF
## PLAINTIFF STATE OF NEW YORK'S MOTION FOR REQUESTED RELIEF

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

Christopher K. Leung (CL 6030)
Dana Biberman (DB 9878)
 Chief, Tobacco Compliance Bureau
Assistant Attorneys General
120 Broadway, 3rd Floor
New York, New York 10271
Tel.: 212-416-6389
Fax.: 212-416-8877
Christopher.Leung@ag.ny.gov
Dana.Biberman@ag.ny.gov

*Attorneys for Plaintiff State of New York*

**Table of Contents**

Introduction ..................................................................................................................................1

Argument ....................................................................................................................................1

    I.      King Mountain's new arguments lack merit and are untimely ....................................1

          A.  The selective prosecution counterclaim is unsupported. .........................................2

               1. No discriminatory purpose is shown. ..................................................................2

               2. No selective treatment is shown ........................................................................3

          B.  The criminal public authority defense does not apply in the civil context ...............4

               1. No facial violation of the dormant commerce clause exists................................6

               2. A "clearly excessive" burden on interstate commerce is absent. .........................6

          C.  The new claim and defense are untimely and waived.. ...........................................8

    II.     The State's proposed injunction is appropriately tailored ............................................9

Conclusion ................................................................................................................................10

## INTRODUCTION

The plaintiff State of New York hereby submits this Reply in support of its motion for injunctive relief (ECF No. 227).

## ARGUMENT

I.   **King Mountain's new arguments lack merit and are untimely.**

Defendant Mountain Tobacco Company d/b/a King Mountain Tobacco Company Inc. ("King Mountain") asserts for the first time a hybrid selective prosecution counterclaim and dormant commerce clause defense. King Mt. Br., at 7 (ECF No. 228). In essence, the company contends that the State selectively enforced the statutes at issue (i.e., N.Y. Tax Law § 471, Tax Law § 480-b, and Executive Law § 156-c) against King Mountain, "solely due to its status as an out-of-State manufacturer[.]" King Mt. Br., at 8. As a result, the State purportedly violated the dormant commerce clause and no injunctive relief should follow.

But these arguments lack merit. *First*, because the factual underpinnings for such arguments are absent, this new claim and defense are non-starters. *Second*, because King Mountain's out-of-circuit cases dealt with different statutes, burdens, and benefits than those at issue here, such cases are simply inapt. *Finally*, because King Mountain's Answer did not include this new claim and defense (per Rules 8(c) and 13(a)), such arguments are waived.

A.   **The selective prosecution counterclaim is unsupported.**

To support a selective prosecution claim, a defendant must provide "clear evidence" that the prosecutorial decision "had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Morrison*, 2009 U.S. Dist. LEXIS 20706, at *108 (E.D.N.Y. Feb. 26, 2009) (quoting *U.S. v. Armstrong*, 517 U.S. 456, 465 (1996)).[1] This requires

---

[1] Notably, the Supreme Court has described this standard as "demanding" and "rigorous." *Armstrong*, 517 U.S. at 465, 468. This is because the government retains broad discretion in enforcing its laws. *See id.*; *Heckler v. Chaney*,

1

the following showing: "(1) [that] the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) ("*Freedom Holdings I*"). Here, neither requirement is shown.

### 1. No discriminatory purpose is shown.

To begin, King Mountain fails to show that the State's enforcement action "was motivated by a discriminatory purpose," such as race or religion or the exercise of a constitutional right. Instead, the company simply cites its status as an out-of-state cigarette manufacturer—i.e., a permissible consideration that does not implicate any constitutional right. Accordingly, this new claim fails. *See Morrison*, 2009 U.S. Dist. LEXIS 20706, at *108–09 (holding that when no evidence was adduced that the government's prosecution was based on "bad faith or any other impermissible consideration," a selective prosecution claim fails); *e.g.*, *Tyk v. Surat*, 2017 U.S. App. LEXIS 745, *4 (2d Cir. Jan. 12, 2017); *Mental Disability Law Clinic Hogan*, 853 F. Supp. 2d 307, 316 (E.D.N.Y. Mar. 30, 2012).[2]

---

470 U.S. 821, 831 (1985) ("an agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion."). Accordingly, unless a constitutional violation is at issue, "[i]t is the settle policy of the courts not to review the exercise of discretion by public officials in the enforcement of State statutes[.]" *Gaynor v. Rockefeller*, 15 N.Y.2d 120, 131 (1965). As *Armstrong* further explains—

> Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. It also stems from a concern not to unnecessarily impair the performance of a core executive constitutional function. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.

517 U.S. at 465 (citations and internal quotation marks omitted).

[2] As *Morrison* further notes—

> The conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Selective enforcement of the law is not in itself a constitutional violation, in the absence

## 2. No selective treatment is shown.

Next, King Mountain fails to show that it was selectively treated. It does so by first comparing itself with an arbitrary group of out-of-state cigarette manufacturers. But this is incorrect. Rather, the relevant comparison group is all other persons prosecuted by the State that have (1) sold unstamped and untaxed cigarettes to persons other than State-licensed stamping agents in violation of Tax Law § 471; (2) failed to submit the required certifications and brand list mandated by Tax Law § 480-b; or (3) failed to submit the required "fire-safety" certifications required by N.Y. Executive Law §156-c.

King Mountain then attempts to rely on "evidence" (which is limited to only the Tax Law § 471 group only) that is composed largely of (a) inadmissible hearsay gathered from third-party websites, and (b) purported court filings made in a third-party action that have not been certified, not been authenticated, and not been shown to be subject to judicial notice or otherwise fall within some hearsay exception.[3] But again, this is wrong. Because these documents are inadmissible (and produced less than two weeks ago), such "evidence" must be excluded.

---

of invidious purpose. … Selection of cases for close investigation and for prosecution (only if illegal conduct is discovered) is not impermissible simply because focused upon those most vocal in a concerted effort to encourage violation of the nation's tax laws[.] Selection for prosecution based in part upon the potential deterrent effect on others serves a legitimate interest in promoting more general compliance with the tax laws. Since the government lacks the means to investigate every suspected violation of the tax laws, it makes good sense to prosecute those who will receive, or are likely to receive, the attention of the media. As long as a law or regulation is rationally based, the mere failure of those who administer it to treat all persons who have violated it with complete equality does not of itself infringe the constitutional principle of equal protection. Many actions resulting in unequal enforcement are wholly unrelated to the kind that are actionable under equal protection law. The failure to enforce against all may be random, or may result from lack of resources, or an effort by the authorities to get the most 'bang for their buck' by concentrating on the most notable lawbreakers.

2009 U.S. Dist. LEXIS 20706, at *109–11 (citations and internal quotation marks and brackets omitted). King Mountain does not dispute that the statutes at issue are rationally based.

[3] *See* Decl. of Philip Pilmar (ECF No. 228-1), at Ex. B–C (screenshots of third-party website), H–I (same), J–K (uncertified, purported court filing made by a third-party, concerning another third-party cigarette dealer—i.e., hearsay within hearsay, Fed. R. Evid. 805); *see also Novak v. Tucows, Inc.*, 2007 U.S. Dist. LEXIS 21269, at *15 (E.D.N.Y. Mar. 26, 2007) ("Where postings from internet websites are not statements made by declarants testifying

Turning then to King Mountain's remaining evidence, no selective treatment is shown. And in fact, the State has prosecuted a wide range of similarly situated defendants—located both in-state and out-of-state—for selling unstamped cigarettes in violation of New York's tax laws:

- A.G. Schneiderman Announces 198 Count Conviction of Ring Leader in Massive Eastern Seaboard Unstamped Cigarette Trafficking Enterprise (Sept. 29, 2015) (announcing the conviction of a defendant who transported millions of contraband cigarettes into New York from Virginia, and sold such unstamped cigarettes to persons who were not state-licensed stamping agents or wholesalers), *available* at https://ag.ny.gov/press-release/ag-schneiderman-announces-198-count-conviction-ring-leader-massive-eastern-seaboard;

- Thirty-one Indicted in Cigarette Tax Fraud Investigation (Nov. 8, 2005) (detailing 375-count indictment charging 31 people in upstate New York with tax evasion and other crimes in connection with a scheme to sell untaxed cigarettes), *available* at https://ag.ny.gov/press-release/thirty-one-indicted-cigarette-tax-fraud-investigation;

- Schneiderman Sues Tobacco Retailers for Illegally Selling Cigarettes Online Amid Teen Smoking Epidemic (Feb. 3, 2011) (detailing lawsuit brought against six Internet websites[4] for selling cigarettes to persons who were not licensed stamping agents or wholesalers), *available* at https://ag.ny.gov/press-release/schneiderman-sues-tobacco-retailers-illegally-selling-cigarettes-online-amid-teen-0;

- NYS Tax Department Announces the Seizure of 5,305 Cartons of Contraband Cigarettes (May 27, 2016) (detailing seizures and arrests of persons selling or possessing unstamped cigarettes in different parts of New York State), *available* at https://www.tax.ny.gov/press/rel/2016/cigarettestrikeforce052716.htm.

Decl. of Christopher K. Leung, Ex. A–D.  Thus, because King Mountain fails to present any "clear evidence" showing "intentional and purposeful discrimination" on the basis of a constitutionally protected status or right, the selective prosecution claim must fail.

### B. The dormant commerce clause defense is unsupported.

King Mountain's dormant commerce clause defense is similarly unavailing. The dormant

---

at trial and are offered to prove the truth of the matter asserted, such postings generally constitute hearsay under Fed. R. Evid. 801."); *see also* Fed. R. Evid. 201, 901, 902.

[4] These Internet websites were later determined to be located outside the State of New York, and in at least one instance, outside the United States.  Leung Dec., ¶ 4.

4

commerce clause limits state legislation that adversely affects interstate commerce. *See Hughes v. Oklahoma*, 441 U.S. 322, 326 (1979). A state statute may violate the clause in three ways:

> First, a statute that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid per se and can survive only if the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism. Second, if the statute does not discriminate against interstate commerce, it will nevertheless be invalidated under the *Pike* [*v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970),] balancing test if it imposes a burden on interstate commerce incommensurate with the local benefits secured. Third, a statute will be invalid per se if it has the practical effect of extraterritorial control of commerce occurring entirely outside the boundaries of the state in question.

*Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 168 (2d Cir. 2005) (quoting *Freedom Holdings I*, 357 F.3d at 216 (internal quotation marks and citations omitted)).

Under the *Pike* balancing test, a court considers "(1) the nature of the local benefits advanced by the statute; (2) the burden placed on interstate commerce by the statute; and (3) whether the burden is 'clearly excessive' when weighed against these local benefits." *Grand River*, 425 F.3d at 169 (quoting *Pike*, 397 U.S. at 142). An "excessive" burden is one that places a different burden on interstate commerce than on intrastate commerce. *Brown & Williamson*, 320 F.3d at 209. In other words, if a statute "affects intrastate and interstate interests similarly" (*id*.), then the statute's burden on interstate commerce is not "clearly excessive" and does not violate the dormant commerce clause. *Id*. (noting further that this test "does not invite courts to second-guess legislatures by estimating the probable costs and benefits of the statute, nor is it within the competency of courts to do so").

And significantly, a party challenging the validity of a statute bears the burden of initially showing that it is discriminatory. *Brown & Williamson Tobacco Corp. v. Pataki*, 320 F.3d 200, 209 (2d Cir. 2003). In addition, "[t]he mere fact that state action may have repercussions beyond state lines is of no judicial significance so long as the action is not within that domain which the

5

Constitution forbids." *Freedom Holdings, Inc. v. Cuomo*, 624 F.3d 38, 67 (2d Cir. 2010) ("*Freedom Holdings II*") (quoting *Osborn v. Ozlin*, 310 U.S. 53, 62 (1940)).

### 1. No facial violation of the dormant commerce clause exists.

Here, King Mountain implicitly concedes that the statutes at issue do not constitute a per se, facial violation of dormant commerce clause. *See* King Mt. Br., at 7. No effort is made to either (1) identify statute provisions that "clearly discriminate[] against interstate commerce," or (2) explain how any statute may have the "practical effect" of controlling out-of-state commerce. Accordingly, no per se violation exists.

### 2. A "clearly excessive" burden on interstate commerce is absent.

As to King Mountain's purported comparison of "local benefits secured" and "burden on interstate commerce," such analysis is again lacking.

#### a) No valid burden on interstate commerce is identified.

For starters, King Mountain fails to identify any burden on interstate commerce, except perhaps the cost of possibly being subject to an enforcement action for its noncompliance with such statutes. *See* King Mt. Br., at 7–8, 10. In that instance, however, the purported "burden" is a self-inflicted one. The company's "burden" (of being potentially subject to an enforcement action) is not one imposed by the statute; rather, it is the result of the company's decision *to avoid* compliance with the statute. Such a decision cannot form the basis for a *statute's* violation of the dormant commerce clause. Moreover, because the clause protects only the "interstate market, not particular interstate firms," any compliance costs specific to King Mountain only would not rise to the level of a "burden" on interstate commerce. *Brown & Williamson*, 320 F.3d at 213 ("The fact that these particular Plaintiffs may be priced out of the retail cigarette market does not establish a discriminatory effect"). In short, King Mountain fails to show any valid burden on interstate commerce.

6

### b) The secured local benefits are substantial.

In addition, King Mountain fails to suggest that the local benefits advanced by the statutes are not extensive. For example—

**Tax Law § 471** ensures that when unstamped cigarettes are introduced into the State, the cigarette excise tax is paid by the stamping agent (as evidenced by an affixed and canceled tax stamp) and passed on to the consumer. *See* N.Y. Tax Law § 471; *Cayuga Indian Nation of N.Y. v. Gould*, 14 N.Y.3d 614, 622–23 (2010); King Mt. 56.1 Counterstatement, at ¶ 19(a)–(d) (ECF No. 195-6). The incorporated higher price improves public health by increasing public revenues, and decreasing the consumption of cigarettes. King Mt. Counterstatement, ¶¶ 9–10. And in all, this system works to prevent the widespread evasion of New York's cigarette excise taxes. *Id*. ¶ 19(d); *City of N.Y. v. Golden Feather Smoke Shop, Inc.*, 2013 U.S. Dist. LEXIS 47037, at *8 (E.D.N.Y. Mar. 29, 2013) (citing cases).

**Tax Law § 480-b** enforces the State's escrow statute, Public Health Law 1399-pp, which promotes public health by requiring manufacturers to make per-cigarette payments to the State, thereby assisting the State's potential recovery of costs associated with tobacco-related illnesses. *Freedom Holdings II*, 624 F.3d at 44, 53–54 (holding further that § 480-b does not control out-of-state commerce in violation of the dormant commerce clause); *Grand River*, 425 F.3d at 175.

**Executive Law § 156-c** ensures that cigarettes entering or offered for sale in the New York market are "fire-safe" (i.e., are self-extinguishing) pursuant to the safety standards set by the Office of Fire Prevention and Control. Since these standards were implemented in 2004, the number of smoking-related fires (and deaths caused by such fires) has been dramatically reduced. In 2003, there were 2,456 smoking-related fires and 31 deaths caused by such fires in New York. *See* N.Y.S. Smoking Materials Fires 2000–2011, N.Y.S. Div. of Homeland Security and Emergency Services, Office of Fire Prevention and Control (Sept. 2, 2013), *available* at

7

http://www.dhses.ny.gov/ofpc/cigarette/documents/smoking-materials-tabulation-2013.pdf (Leung Dec. Ex. E).[5]  By 2011, those figures were reduced to only 826 smoking-related fires and only 17 deaths caused by such fires (*id.*)—a substantial benefit for the State.[6]

        c)       **The burden on interstate commerce is not "clearly excessive" to the local benefits secured.**

In sum, the statutes' identified "burden" on interstate commerce is nonexistent, and the local benefits secured are substantial.  Thus, under the *Pike* balancing test, no violation exists—interstate and intrastate commerce are treated similarly.  This is true even when considering King Mountain's several out-of-circuit decisions[7], which no court within the Second Circuit appears to have relied on.  Those cases dealt with different statutes that imposed different burdens on interstate commerce and secured different local benefits; accordingly, such cases are inapt.

    **C.**     **The new claim and defense are untimely and waived.**

In any case, King Mountain's new arguments are untimely and are appropriately treated as being waived.  For example, because the company's selective enforcement claim arises from the same "transaction or occurrence" as the State's claims, this counterclaim was required to be specifically asserted and identified in its Answer.  *See* Fed. R. Civ. P. 13(a)(1); 3-13 Moore's

---

[5] *See also* G.N. Connolly et al., *Effect Of The New York State Cigarette Fire Safety Standard On Ignition Propensity, Smoke Constituents, And The Consumer Market*, Tobacco Control 2005; 14:321–327 (2005) (noting that in 2001, over 31,000 cigarette-induced fires occurred, which resulted in "830 civilian lives lost as well as firefighter fatalities, 1770 persons injured, and $386 million in direct property damage.  Other costs include[d] health care costs, lost productivity, and use of fire and emergency services.  Furthermore, two out of five victims of cigarette induced fires are not the smokers themselves but persons who live in the same building.  These victims often include young children or older persons who are less able to respond to and escape from the fire."), *available* at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1748088/pdf/v014p00321.pdf (Leung Dec. Ex. F).

[6] *See* Hillel R. Alpert et al., Effectiveness of the Cigarette Ignition Propensity Standard in Preventing Unintentional Residential Fires in Massachusetts, Am. J. Public Health, 104(4): e56–e61 (April 2014) (noting that New York was the first state to implement fire safety standards for cigarettes; and that the effect of Massachusetts' fire safety law appears to have decreased the likelihood of cigarette-caused residential fires), *available* at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4025697/ (Leung Dec. Ex. G).

[7] I.e., *Walgreen Co. v. Rullan*, 405 F.3d 50 (1st Cir. 2005); *Florida Transp. Serv. v. Miami-Dade County*, 703 F.3d 1230, 1257–63 (11th Cir. 2012); and *Major Tours, Inc. v. Colorel*, 720 F. Supp. 2d 587, 608–09 (D. N.J. 2010).  *See* King Mt. Br., 7–10.

8

Fed. Prac.– Civil § 13.91 (2016) ("As with any other claim, counterclaims should be clearly pleaded and designated").  Rule 8 further required the specific inclusion of King Mountain's dormant commerce clause defense.  Fed. R. Civ. 8(c); 2-8 Moore's Fed. Prac. – Civil § 8.08 (2016) (a defendant "must specifically plead all affirmative defenses … because affirmative defenses, if accepted by the court, will defeat an otherwise legitimate claim for relief.").  But because King Mountain made no effort to include either (*see* Answer, ECF No. 47; Am. Answer, ECF No. 216)[8], this new claim and defense are appropriately treated as being waived.  *See*, *e.g.*, *Mali v. Fed. Ins. Co.*, 720 F.3d 387, 395 (2d Cir. 2013) ("A counterclaim that is not timely pled is subsequently barred"); *Bonded Life Fund, LLC v. AXA Equitable Life Ins. Co.*, 2014 U.S. Dist. LEXIS 31491, at *6 (S.D.N.Y. Feb. 28, 2014).

## II.     The State's proposed injunction is appropriately tailored.

Finally, King Mountain argues that the State's request for an injunction is too broad and that open questions remain, such as how the State will determine whether a pack of cigarettes is stamped or not.  King Mt. Br., at 10.  But such musings are an insufficient basis for denying the State's requested relief.  To answer but a few of King Mountain's concerns:

---

[8] Certainly, King Mountain never raised a selective enforcement counterclaim or dormant commerce clause defense as part of any Rule 12(b)(6) motion to dismiss, pre-motion summary judgment conference letter, or summary judgment briefing.  *See*, *e.g.*, King Mt. Ltr. (Oct. 27, 2015; ECF No. 173) (pre-motion conf. ltr.); King Mt. Mot. for Partial Summ. J. (Jan. 29, 2016; ECF No. 195).  The State never agreed to try such matters by trial or by a motion under Rule 12(c).  *See* Fed. R. Civ. P. 12(h)(2).  And on the several occasions King Mountain spoke to this Court following the July 21, 2016 Order (ECF No. 214), King Mountain never once sought to raise either argument.  For example, in opposing the State's motion to certify an appeal under Rule 54, King Mountain laid out certain remaining issues left to be decided, but declined to include any mention of its selective enforcement / dormant commerce clause arguments.  *See* King Mt. Opp. Br. to Cert. App., at 3 (Sept. 9, 2016; ECF No. 221).  Likewise, following the State's November 2016 letter to the Court (Nov. 30, 2016; ECF No. 225) that informed the Court of the State's decision to decline the prosecution of certain outstanding matters (left open by the Court's July Order), King Mountain never sought to suggest that an additional defense or counterclaims remained to be decided.  Instead, King Mountain stood silently as the Court then terminated the parties' (1) final pretrial conference and (2) need to submit a joint pretrial statement concerning the remaining claims and defenses to be tried.  *See* Elec. Orders, dated Dec. 8, 2016 and Dec. 9, 2016.  Thus, under such facts, this Court should treat King Mountain's eleventh-hour arguments as being waived.  King Mountain has enjoyed numerous opportunities to specifically raise this defense/counter-claim, but chose not to.

The irreparable harm to the State includes the diminished public health of its citizens. King Mt. 56.1 Counterstatement, at ¶¶ 4–10, 19. Monetary damages are inadequate because of certain rulings made by the July 21, 2016 Order. *See* Mem. & Order (ECF No. 214). Unstamped cigarettes can be discerned by observing the bottom of each pack. 20 N.Y. Codes R. & Regs. § 74.3. The legal authority of persons receiving such cigarettes can be discerned by reviewing the accompanying invoice (N.Y. Tax Law § 474) and contacting the New York State Department of Taxation and Finance, which maintains and publishes such records. *See* N.Y.S. Dept. of Taxation and Finance list of such agents and dealers, *available* at https://www8.tax.ny.gov/CGTX/cgtxHome (Leung Dec. Ex. H). And to protect the constitutional rights of third party's carrying unstamped King Mountain cigarettes, the State would apply the same measures used when seizing the 8,400 cartons of unstamped King Mountain cigarettes referenced by the State's initial complaint (at ¶ 67, ECF No. 1; *see also* King Mt. Answer, at ¶ 67, ECF No. 216), preliminary injunction motion (specifically, the Declaration of Investigator Joel Revette, ECF No. 15), and Post-Hearing Brief submitted to the State Division of Tax Appeals (Leung Dec. Ex. I). *See also* 20 N.Y. Codes R. & Regs. §3000.0 et seq. (N.Y.S. Tax Appeals, Rules of Practice and Procedure).

In sum, the State's requested injunction is appropriately tailored to address King Mountain's position. *See* State Br., generally (ECF No. 227)

## CONCLUSION

For all the foregoing reasons, the State requests an Order granting the State's request for injunctive relief, and all such other and further relief this Court deems appropriate.

| | | |
|---|---|---|
| Dated: | New York, New York<br>February 17, 2017 | ERIC T. SCHNEIDERMAN<br>Attorney General of the State of New York |

By: ___/s/ Christopher K. Leung_____

Christopher K. Leung (CL 6030)
Dana Biberman (DB 9878)
 Chief, Tobacco Compliance Bureau
Assistant Attorneys General
120 Broadway, 3rd Floor
New York, New York 10271
Tel.: 212-416-6389
Fax.: 212-416-8877
Christopher.Leung@ag.ny.gov
Dana.Biberman@ag.ny.gov

*Attorneys for Plaintiff State of New York*

11