FILED
CLERK

8/29/2017 10:27 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
STATE OF NEW YORK,

                          Plaintiff,

          -against-                        MEMORANDUM & ORDER
                                           12-CV-6276(JS)(SIL)

MOUNTAIN TOBACCO COMPANY, doing business
as King Mountain Tobacco Company Inc.,

                          Defendant.
----------------------------------------X
APPEARANCES
For Plaintiff:          Christopher K. Leung, Esq.
                        Dana H. Biberman, Esq.
                        Office of the Attorney General
                        120 Broadway, 3rd Floor
                        New York, NY 10271

For Defendant:          Kelli J. Keegan, Esq.
                        Randolph Barnhouse, Esq.
                        Johnson Barnhouse & Keegan LLP
                        7424 4th St. NW
                        Los Ranchos De Albuq, NM 87107

                        Nelson A. Boxer, Esq.
                        Philip Nathan Pilmar, Esq.
                        Petrillo Klein & Boxer LLP
                        655 Third Avenue, 22nd Floor
                        New York, NY 10017

SEYBERT, District Judge:

        Presently pending before the Court is plaintiff State of

New York's (the "State") motion for injunctive relief as to the

claims it prevailed on at the summary judgment stage.  (State's

Mot., Docket Entry 227.)  For the foregoing reasons, the State's

motion is GRANTED IN PART and DENIED IN PART.

BACKGROUND

The Court assumes familiarity with the facts of this matter, which are set forth in its Memorandum and Order dated July 21, 2016. See New York v. Mountain Tobacco Co., No. 12-CV-6276, 2016 WL 3962992 (E.D.N.Y. Jul. 21, 2016). Briefly, the State commenced this action against defendant Mountain Tobacco Company ("King Mountain"), a company that manufactures and sells its own brand of cigarettes, asserting claims pursuant to the Contraband Cigarette Trafficking Act ("CCTA"), Prevent All Cigarette Trafficking Act ("PACT Act"), New York Tax Law ("NYTL") §§ 471, 471-e, and 480-b, and New York Executive Law ("NYEL") § 156-c. Mountain Tobacco, 2016 WL 3962992, at *1-2. The State's claims were based on allegations that State investigators purchased cartons of unstamped King Mountain brand cigarettes at reservation smoke shops, and State troopers seized unstamped King Mountain brand cigarettes from a truck. Id. at *2. Particularly, the State alleged that King Mountain violated NYTL Sections 471 and 471-e by (1) possessing cigarettes in New York State without paying excise taxes or affixing tax stamps, and (2) failing to ship unstamped cigarettes directly to a licensed stamping agent. Id. at *15. The State alleged that King Mountain violated NYTL Section 480-b by failing to file the requisite certifications and failing to

2

either join the 1998 Tobacco Master Settlement Agreement ("MSA")[1] or otherwise comply with state escrow requirements. Id. at *18. The State also asserted that King Mountain violated NYEL Section 156-c by (1) failing to certify to the State Office of Fire Prevention and Control that its cigarettes meet the requisite performance standards, and (2) failing to affix the Fire Standards Compliant mark to its cigarette packaging. Id. at *18-19.

The Court determined the parties' summary judgment motions in its Memorandum and Order dated July 21, 2016 (the "Summary Judgment Order"). See id. As to the federal claims, the Court granted summary judgment to King Mountain on the CCTA claim, denied summary judgment on the PACT Act claim with respect to one particular 2010 sale, and granted summary judgment to King Mountain on the balance of the PACT Act claim. Id. at *19. As to the state claims, the Court granted summary judgment to King Mountain on the claim under NYTL Sections 471 and 471-e regarding King Mountain's alleged possession of unstamped cigarettes, and granted summary judgment to the State on its claim under NYTL Sections 471 and 471-e regarding King Mountain's failure to sell unstamped cigarettes to licensed stamping agents. Id. Summary judgment was

---

[1] In November 1998, cigarette manufacturers settled litigation with states including New York by entering into a Master Settlement Agreement in which the manufacturers agreed to make substantial annual payments to compensate the states for past and future health care expenses incurred as a result of the smoking-related ailments of their citizens. Id. at *17, n.18.

granted to the State on its NYTL Section 480-b claim. Id. Finally, the Court granted summary judgment to the State on its NYEL Section 156-c claim that King Mountain failed to file certifications, and summary judgment was denied as to the State's NYEL Section 156-c claim that King Mountain failed to affix the Fire Standards Compliant mark to its cigarette packaging. Id. Thus, the State was awarded summary judgment on the following claims: (1) claim under NYTL Sections 471 and 471-e regarding King Mountain's failure to sell its unstamped cigarettes to licensed stamping agents, (2) NYTL Section 480-b claim, and (3) NYEL Section 156-c claim regarding King Mountain's failure to file certifications. Id.

The Court noted that the Amended Complaint did not expressly specify the relief the State was seeking as to its claims under NYTL Sections 471 and 471-e. Id. at *17. The Court held this issue would be addressed after the completion of the trial in this matter. Id.

On November 30, 2016, the State filed a letter advising the Court that it declined to prosecute the remaining PACT Act and NYEL Section 156-c claims, which left no claims to be tried. (State's Ltr., Docket Entry 225.) The State also indicated that it was seeking injunctive relief for the claims it prevailed upon. (State.'s Ltr. at 2.) On December 8, 2016, the Court entered an Electronic Order holding that the State's request for injunctive relief should be made by motion.

4

I.    The State's Motion

        On January 18, 2017, the State filed its motion for
injunctive relief as to the claims it prevailed upon.  The State
asserts that it is not seeking penalties or costs and instead
seeks:

> [A]n Order enjoining King Mountain from—
>
> 1.   [S]elling unstamped cigarettes directly
> to Indian nations or tribes and/or reservation
> cigarette sellers or entities that are not
> licensed stamping agents, in violation of
> Section 471;
>
> 2.   Continuing to sell cigarettes into the
> State of New York, without first complying
> with  Section  480-b's  certification
> requirements, namely—
>
>> a.   Filing a certification under penalty of
>> perjury,  with  the  New  York  State
>> Department of Taxation and Finance, the
>> Office of the Attorney General, and any
>> New York state-licensed stamping agent
>> who affixes New York state cigarette tax
>> stamps  to  King  Mountain's  pack  of
>> cigarettes, that King Mountain is either
>> (i) a participating manufacturer under
>> the 1998 Tobacco Master Settlement, or
>> (ii) is otherwise in full compliance with
>> New York Public Health Law section 1399-
>> pp(2); and
>>
>> b.   Filing an accompanying list of each
>> cigarette brands that King Mountain sold
>> into the State; and
>
> 3.   Continuing to sell or offer cigarettes
> for sale, without first complying with Section
> 156-c's  certification  requirements,  which
> require every such cigarette manufacturer to
> first certify in writing to the New York State
> Office of Fire Prevention and Control that the

manufacturer's cigarettes meet the performance standards prescribed by such Office.

(State's Br., Docket Entry 227-1, at 3-4 (internal quotation marks and citations omitted; second alteration in original).)

The State also requests that the Court "expressly grant[ ] the State the authority to seize any unstamped King Mountain brand cigarettes that are found in New York, and are being delivered to, or otherwise in possession of a person not authorized by the State of New York to possess such unstamped cigarettes." (State's Br. at 4.)   The State argues that this relief is appropriate since the Indian nations or tribes that have purchased King Mountain unstamped cigarettes refuse to cooperate in collecting cigarette excise taxes, and such seizures would occur outside of the reservations.  (State's Br. at 5.)  The State also alleges that "King Mountain may be continuing to sell unstamped cigarettes to persons . . . not otherwise authorized to possess such unstamped cigarettes."  (State's Br. at 6.)

King Mountain argues that the Court should deny the State's request for injunctive relief because the State's enforcement practices violate the dormant Commerce Clause.  King Mountain avers that the State has filed two lawsuits (including the present matter) against out-of-state Indian-owned manufacturers but failed to prosecute any Indian-owned companies or tribes manufacturing cigarettes within the boundaries of New

6

York State.  (Def.'s Br., Docket Entry 228, at 7-8.)  King Mountain alleges that State investigators conducting undercover purchases at reservation smoke shops observed large quantities of unstamped cigarettes manufactured by Indian-owned companies or tribes located within New York State but declined to purchase these cigarettes, take other investigative action, or prosecute these manufacturers.  (Def.'s Br. at 7-8.)  King Mountain avers that "[t]he State's enforcement of its law amounts to economic protectionism that discriminates against King Mountain solely due to its status as an out-of-state manufacturer" and, thus, constitutes a Commerce Clause violation that tips the balance of hardships and public interest in favor of King Mountain.  (Def.'s Br. at 7-8.)

King Mountain also argues that the State's proposed injunction is "overbroad, because it requests that the Court grant the State the authority to seize unstamped King Mountain brand cigarettes from anyone if found anywhere in New York."  (Def.'s Br. at 10.)  King Mountain asserts that the State's request fails to advise how: (1) it would know the cigarettes are unstamped and/or being delivered to a person without legal authority to possess the cigarettes, (2) the State would ensure compliance with the Fourth Amendment, (3) the Court is empowered to direct seizures from unidentified non-parties, or (4) "the State would provide notice or due process to those not a party to the instant

litigation to challenge a seizure or to seek return of its property." (Def.'s Br. at 10-11.) King Mountain also argues that the State has failed to establish irreparable harm and the inadequacy of money damages. (Def.'s Br. at 10, n.9.)

On reply, the State argues that King Mountain's attempt to assert a selective prosecution counterclaim is unsupported. (State's Reply, Docket Entry 229, at 1-4.) The State also argues that King Mountain's dormant Commerce Clause defense fails because it has not established that the burden on interstate commerce imposed by the relevant statutes exceeds the local benefits pursuant to the balancing test set forth in Pike v. Bruce Church, Inc., 397 U.S. 137, 90 S. Ct. 844, 25 L. Ed. 2d 174 (1970). (State's Reply at 4-8.) The State also argues that King Mountain waived its new arguments by failing to specifically assert a selective enforcement or dormant Commerce Clause counterclaim or affirmative defense in its Answer. (State's Reply at 8-9.) Finally, the State argues that its proposed permanent injunction is appropriately tailored, and notes that the legal authority of persons in possession of unstamped cigarettes can be determined by reviewing an accompanying invoice or contacting the State Department of Taxation and Finance. (State's Reply at 10.) The State also asserts that "to protect the constitutional rights of third part[ies] carrying unstamped King Mountain cigarettes, the State would apply the same measures used when seizing the 8,400

cartons of unstamped King Mountain cigarettes referenced by the State's initial complaint." (State's Reply at 10.)

The parties were granted leave to file sur-replies. (See Mar. 6, 2017 Electronic Order; Mar. 10, 2017 Electronic Order.) King Mountain alleges that it is not asserting a selective prosecution claim and its opposition to the proposed injunction is "grounded on the State's discriminatory enforcement of New York statutes at issue against out-of-State Indian manufacturers, which violates the dormant Commerce Clause." (Def.'s Sur-Reply, Docket Entry 232, at 3.) King Mountain avers that the State does not dispute the factual record supporting the State's failure to prosecute Indian cigarette manufacturers located within the boundaries of New York State. (Def.'s Sur-Reply at 1-3.) King Mountain also argues that the Pike balancing test does not apply, and asserts that the relevant statutes do not "adversely affect interstate commerce" but rather "the State's enforcement of [the] statutes violates the dormant Commerce Clause." (Def.'s Sur-Reply at 4.) However, King Mountain contends that even if the Pike balancing test applies, "the burden on interstate commerce is the State's economic protectionism" and while there is a benefit to the State with respect to reduced smoking and fewer cigarette fires, "the State cannot claim to actually be seeking those benefits given in-State manufacturers engage in the exact same conduct that the State seeks to enjoin King Mountain." (Def.'s

Sur-Reply at 4-5.)   King Mountain also argues that it has not waived its dormant Commerce Clause argument because: (1) it is being raised at the remedy stage to establish that equitable relief is inappropriate, (2) its Answer asserts an affirmative defense that the relief sought by the State violates the Constitution, and (3) King Mountain did not need to address remedies during its summary judgment briefing.  (Def.'s Sur-Reply at 5-6.)

The State alleges that King Mountain's purported dormant Commerce Clause defense should be treated as a selective enforcement claim.  (State's Sur-Reply, Docket Entry 233, at 1.) Additionally, the State argues that King Mountain's Answer "cannot be reasonably understood to include a commerce clause defense." (State's Sur-Reply at 2-4.)

## DISCUSSION

As set forth above, King Mountain primarily argues that the Court should decline to enter the State's requested permanent injunction because: (1) the injunction violates the dormant Commerce Clause, (see Def.'s Br. at 7-10), and (2) the injunction is overbroad, (see Def.'s Br. at 10-11).  King Mountain also argues, in a footnote, that the State has failed to demonstrate irreparable harm and that monetary damages are inadequate. (Def.'s Br. at 10, n.9.)  The Court will address each argument in turn.[2]

---

[2] While the State argues that King Mountain's purported dormant Commerce Clause defense should be treated as a selective

I.    Dormant Commerce Clause

        The Commerce Clause provides Congress with the power to

"'regulate Commerce with foreign Nations, and among the several

states.'"    Jones v. Schneiderman, 974 F. Supp. 2d 322, 349

(S.D.N.Y. 2013) (quoting U.S. Const. Art. I, § 8, cl. 3).  However,

"the right to engage in interstate commerce is not the gift of a

state, and [ ] a State cannot regulate or restrain it."   Id.

(internal quotation marks and citations omitted).   Thus, pursuant

to the dormant Commerce Clause doctrine, "a state's power to take

actions impacting interstate commerce is limited," and a state

statute violates the dormant Commerce Clause where "(i) it clearly

discriminates against interstate commerce in favor of intrastate

commerce, (ii) imposes a burden on interstate commerce

incommensurate with the local benefits secured, or (iii) has the

practical effect of extraterritorial control of commerce occurring

entirely outside the boundaries in the state in question."   Id.

(internal quotation marks and citations omitted).

        "Regulations that clearly discriminate against

interstate commerce [are] virtually invalid per se."   Am.

_____

prosecution claim, (State's Sur-Reply at 1), King Mountain has
expressly stated that it is not asserting a selective
prosecution claim and is, in fact, relying on the dormant
Commerce Clause, (Def.'s Sur-Reply at 3).  Accordingly, the
Court will not determine the viability of any selective
enforcement claim, nor will it consider such a claim in its
balancing of the equities.

Booksellers v. Dean, 342 F.3d 96, 102 (2d Cir. 2003) (internal quotation marks and citation omitted; alteration in original).  A state statute clearly discriminates against interstate commerce "when it constitutes differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter." Freedom Holdings, Inc. v. Spitzer, 357 F.3d 205, 217 (2d Cir. 2004) (internal quotation marks and citation omitted).  However, where the statute does not discriminate against interstate commerce, it will be invalidated pursuant to the balancing test set forth in Pike "if it imposes a burden on interstate commerce incommensurate with the local benefits secured." Id. at 216 (internal quotation marks and citations omitted).  In either analysis, the pivotal consideration is the statute's overall effect on local and interstate activity. Am. Booksellers, 342 F.3d at 102.

King Mountain has taken the somewhat novel position that while NYTL §§ 471, 471-e, and 480-b and NYEL § 156-c (collectively, the "Statutes") are not facially discriminatory, the State's enforcement practices constitute a violation of the dormant Commerce Clause. (See Def.'s Sur-Reply at 4.) King Mountain failed to cite any Second Circuit decisions addressing a dormant Commerce Clause claim based on official enforcement of a statute or regulation, and the Court was unable to locate any Second Circuit decisions addressing this issue.

12

Instead, King Mountain relies on two out of Circuit decisions, Walgreen Co. v. Rullan, 405 F.3d 50 (1st Cir. 2005), and Florida Transp. Servs., Inc. v. Miami-Dade Cty., 703 F.3d 1230, (11th Cir. 2012), arguing that in these decisions, "the [s]tate's discriminatory enforcement of a facially neutral statute was struck down as violative of the dormant Commerce Clause." (Def.'s Sur-Reply at 5.) However, in Walgreen, the First Circuit addressed a dormant Commerce Clause challenge to the substance of a statute, not official enforcement. Particularly, in that matter, the plaintiffs challenged Puerto Rico's certificate of need law, which provided that "no person may acquire or construct a health facility . . . without having first obtained a certificate of necessity and convenience granted by the Secretary [of the Puerto Rico Health Department]," and was amended to define "health care facilities" as including pharmacies. Walgreen, 405 F.3d at 52–53 (internal quotation marks and citation omitted; ellipsis in original). This law also set forth a certificate approval process in which the Secretary notified "affected persons" of any request for certification. Id. at 53. "[A]ffected persons" included existing pharmacies within one mile of the proposed pharmacy site and these entities had the right to provide written notice of their opposition to the Secretary. Id. at 53. While the Secretary nearly always issued the certification if no one objected, a

13

lengthy administrative and judicial process ensued if opposition was filed. Id. at 53–54.

While the First Circuit considered the Secretary of Health's enforcement of the law, it concluded that the statute itself "discriminate[d] against interstate commerce by permitting the Secretary to block a new pharmacy from locating in its desired location simply because of the adverse competitive effects that the new pharmacy will have on existing pharmacies." Id. at 55. See also id. at 59 ("[w]e thus find that, on balance, the Act, though facially neutral, discriminates against interstate commerce"). While King Mountain notes the First Circuit held that the statute "as enforced by the Secretary of Health for the issuing of certificates of necessity and convenience to retail pharmacies, is invalid under the dormant Commerce Clause," a full reading of the case makes clear that the First Circuit evaluated the statutes and its certificate approval procedures, not the Secretary's enforcement. Id. at 60 (emphasis supplied). (Def.'s Br. at 9.)

Conversely, Florida Transport, did, in fact, involve a dormant Commerce Clause challenge based on official enforcement. In Florida Transport, the plaintiff asserted a dormant Commerce Clause claim in connection with an ordinance that required stevedore companies[3] operating out of the Port of Miami to annually

---

[3] "Stevedores load and unload cargo at port facilities." Florida Transport, 703 F.3d at 1235.

apply for permits and "be reassessed, along with any new applicants as to competency, safety record, financial strength, and need." Florida Transp., 703 F.3d at 1234-36.  The plaintiff, who was repeatedly denied a permit, argued that the Port Director failed to follow the ordinance requirements and instead protected "incumbent stevedores" by automatically renewing existing permits and denying permits to new applicants.  Id. at 1234, 1240-41.  The court concluded that the permit ordinance "as applied" violated the dormant Commerce Clause because the burden on interstate commerce was significant while "the actual permitting practices did not further any local benefits."  Id. at 1257-62.

However, even if the Court were to adopt the reasoning of the Eleventh Circuit,[4] King Mountain has failed to establish a dormant Commerce Clause violation.  First, King Mountain has not demonstrated that the State directly discriminated against interstate commerce through its enforcement of the Statutes.  King Mountain alleges that: (1) videotapes show that State investigators observed "New York-based, Indian manufactured" unstamped cigarettes, but only purchased King Mountain cigarettes and Seneca brand cigarettes, which are manufactured by Grand River Enterprises ("Grand River"), an Indian-owned manufacturer located

---

[4] The Court takes no position on the viability of a dormant Commerce Clause claim based on official enforcement.

within the boundaries of Canada; (2) pursuant to an agreement with the State, the Oneida tribe, which is located within the boundaries of New York, does not appear to be required to sell its cigarettes to a licensed stamping agent; and (3) the State acknowledges that Indian nations or tribes within New York have refused to collect cigarette taxes, but the only lawsuits filed by the State to enforce tax laws against tribal or Indian-owned cigarette manufacturers are the instant action and <u>N.Y. v. Grand River Enterprises Six Nations</u>, 14-CV-0910 (W.D.N.Y.), an action against Grand River and a New York importer. (Def.'s Br. at 3-5.) While the State cites other investigations or lawsuits with respect to tobacco retailers, traffickers, and website operators, it does not appear to dispute that this action and <u>Grand River</u> are the only actions the State has commenced against manufacturers regarding the sale of unstamped cigarettes. (<u>See</u> <u>generally</u> State's Reply at 3-8.)

However, putting aside the State's hearsay objections, (<u>see</u> State's Reply at 3), King Mountain's cited evidence does not establish direct discrimination of interstate commerce. The videotapes referenced by King Mountain are videos taken by State Investigator Scala when he purchased King Mountain cigarettes during an undercover investigation. (Def.'s Br. at 2 (citing Scala's Dep. Tr., Def.'s Ex. A, Docket Entry 228-2, at 70-72, 90).) Investigator Scala testified that on various dates between 2012

16

and 2013, he was instructed to go to reservations and purchase King Mountain and Seneca cigarettes in connection with the State's investigation of King Mountain and Grand River. (Scala's Dep. Tr. 27:19-33:4.) Thus, Investigator Scala did not "ignore" any alleged cartons of unstamped cigarettes from Indian-owned brands manufactured in New York; he was instructed to buy only King Mountain and Seneca cigarettes in connection with a particular investigation.

Further, the fact that the State has only pursued King Mountain and Grand River with respect to manufacturer liability for the sale of unstamped cigarettes fails, without more, to demonstrate either direct discrimination or a policy of only enforcing the Statutes against manufacturers located outside of New York State. Indeed, as acknowledged by King Mountain, the Grand River matter was filed against Grand River Enterprises as well as Native Wholesale Supply, an Oklahoma Corporation with a principal place of business in Perrysburg, New York, and the President of Native Wholesale Supply, who is alleged to be a resident of New York. (See Compl., Grand River, 14-CV-0910, Docket Entry 1 ¶¶ 9, 10.) The fact that the State filed two lawsuits against out-of-state manufacturers does not establish that the State is engaging in economic protectionism by purportedly declining to investigate in-state manufacturers. Moreover, King Mountain has not adduced evidence demonstrating that the State is

17

attempting to benefit tribal or Indian-owned manufacturers located in New York State by tacitly permitting their non-compliance with the Statutes.

Parenthetically, while King Mountain cites Florida Transport to support its argument that the State's enforcement directly violates the dormant Commerce Clause--and, thus, the Pike balancing test is inapplicable--such an analogy is misplaced. (See Def.'s Sur-Reply at 4 ("'the Pike undue burden test' is only used if the official's 'practices did not directly discriminate'") (quoting Florida Transp., 703 F.3d at 1257).) The Florida Transport Court did not reach the issue of whether the Port Director's permitting practices directly discriminated against interstate commerce because it concluded that the district court properly held that these practices unduly burdened interstate commerce pursuant to the Pike test. Florida Transp., 703 F.3d at 1257.

Second, King Mountain has failed to demonstrate an undue burden on interstate commerce pursuant to the Pike balancing test. King Mountain argues that even if the Pike test applies, "[t]he relevant burden is not King Mountain's burden in complying with the statute, as the State incorrectly claims," but rather, the State's "economic protectionism" as "the State has placed a significant burden on interstate commerce by attempting to restrict an out-of-state Indian manufacturer from selling to in-

18

state Indian tribes or companies owned by members of Indian tribes while allowing in-State Indian manufacturers to undertake the same conduct." (Def.'s Sur-Reply at 4-5.)

However, the Court disagrees that the State's enforcement of the Statutes created an undue burden. King Mountain has not demonstrated the existence of a policy of only enforcing the Statutes against out-of-state Indian manufacturers. Additionally, enforcement of the Statutes does not restrict an out-of-state Indian manufacturer from selling cigarettes to in-state Indian tribes or Indian-owned companies; the manufacturer is merely required to sell cigarettes to licensed stamping agents (and, thus, pay taxes) prior to delivery and file certifications.

In any event, any burden on interstate commerce imposed by the State's alleged enforcement practices is outweighed by the benefit to the State in decreasing cigarette consumption, preventing cigarette excise tax evasion, and preventing smoking-related fires. (See State's Reply at 7.) King Mountain's unsupported argument that "the State cannot claim to actually be seeking those benefits, given in-State manufacturers engage in the exact same conduct," (Def.'s Sur-Reply at 5), is unpersuasive.

Accordingly, the dormant Commerce Clause is not a viable basis for rejecting the State's proposed injunction. In light of the Court's conclusion, it need not determine whether King Mountain waived its dormant Commerce Clause argument by failing to assert

19

it as an affirmative defense or counterclaim.   (See generally
State's Reply at 8-9.)

II.   Substance of the Proposed Injunction

King Mountain's only objection regarding the substance
of the proposed injunction relates to the State's request that it
be granted "authority to seize any unstamped King Mountain brand
cigarettes that are found in New York, and are being delivered to,
or otherwise in possession of a person not authorized by the State
of New York to possess such unstamped cigarettes." (State's Br.
at 4.)   King Mountain argues, inter alia, that this request is
overbroad and the State fails to indicate "how [it] would comply
with the requirements of the Fourth Amendment . . . [and] whether
and how the State would provide notice or due process to those not
a party to the instant litigation to challenge a seizure or to
seek return of its property." (Def.'s Br. at 10-11.)   The Court
agrees.

The Second Circuit has held that "[a]n injunction is
overbroad when it seeks to restrain the defendants from engaging
in legal conduct, or from engaging in illegal conduct that was not
fairly the subject of litigation." City of N.Y. v. Mickalis Pawn
Shop, 645 F.3d 114, 145 (2d Cir. 2010). Here, the State's request
for an injunction permitting it to seize any unstamped cigarettes
found in New York or "otherwise in the possession of a person not
authorized by the [State] to possess such unstamped cigarettes,"

20

(State's Br. at 4), contemplates the seizure of unstamped cigarettes from anyone, anywhere in New York State.  Such an injunction addresses conduct far beyond the particular conduct at issue in this matter--King Mountain's failure to deliver unstamped cigarettes directly to a State stamping agent and failure to file certain certifications.  Thus, the Court finds the State's request to be overbroad.  See Mickalis Pawn Shop, 645 F.3d at 145 (holding that the injunction was overbroad where it "prohibit[ed] not only 'straw purchases'--the sole kind of illegal practice identified in the City's amended complaint--but other, unidentified types of [firearm] sales practices as well").

The State obliquely asserts that "to protect the constitutional rights of third part[ies] carrying unstamped King Mountain cigarettes, the State would apply the same measures used when seizing the 8,400 cartons of unstamped King Mountain cigarettes referenced by the State's initial complaint." (State's Reply at 10.)  In support, the State first references paragraph 67 of its Amended Complaint,[5] which alleges that on December 3, 2012, the State police stopped and inspected a truck at a routine commercial checkpoint and discovered approximately 8,400 cartons

---

[5] The State technically refers to paragraph 67 of its initial Complaint.  (State's Reply at 10.)  However, as that paragraph concerns King Mountain's alleged status as a tobacco producer within the meaning of state law, (see Compl. ¶ 67), the Court assumes that the State is referencing its Amended Complaint.

of unstamped cigarettes en route to land occupied by the Ganienkeh group (the "December 2012 Seizure"). (Am. Compl., Docket Entry 6, ¶ 67.) The State also generally cites the Declaration of Joel Revette, a State Police investigator, in which Inspector Revette details his personal knowledge of the December 2012 Seizure. (Revette Decl., Docket Entry 15.) Finally, the State generally references a post-hearing brief filed with the Division of Tax Appeals in connection with a petition that appears to have been filed by the driver of the truck implicated in the December 2012 Seizure.[6] (Leung Decl. Ex. I, Docket Entry 229-10.)

However, again, the State's requested injunction is not limited to seizures at commercial checkpoints and, in fact, contemplates the seizure of unstamped King Mountain cigarettes from anyone, anywhere in New York State. The Court concurs with King Mountain that the State has not demonstrated how the constitutional rights of unknown third parties who are not engaged in commercial transport will be safeguarded.

The State's reliance on Washington v. Confederated Tribes of Colville Indian Reservation, 447 U.S. 134, 100 S. Ct. 2069, 65 L. Ed. 2d 10 (1980), does not alter the Court's

---

[6] While the petition does not state that Shawn E. Snyder, the petitioner, was transporting King Mountain cigarettes, the petition states that on December 3, 2012, Mr. Snyder was transporting cigarettes to the Ganienkeh territory and met with Investigator Revette. (See State's Reply, Ex. I at 2-5.)

22

conclusion.   (See State's Br. at 5.)   The State argues that its request for an Order authorizing the seizure of King Mountain cigarettes is appropriate "when as here, (a) the Indian nations or tribes that King Mountain has sold its unstamped cigarettes to have refused to cooperate in collecting the validly imposed cigarette excise taxes, and (b) such seizures occur outside any such reservation," and cites Colville for support.   (State's Br. at 5.)

Colville involved a series of issues regarding the state of Washington's taxation of Indian tribes and members with respect to various items, including tobacco products.   Colville, 447 U.S. at 138.   Washington had seized shipments from out-of-state wholesalers to reservations until it was enjoined from doing so by the district court.   Id. at 139.   Washington argued, in relevant part, that it had the power to seize unstamped cigarettes if the tribes failed to cooperate in collecting state taxes.   Id. at 161. The tribes argued that no state tax was due while the cigarettes were in transit because sales by wholesalers to tribal businesses were tax exempt.   Id.   Nevertheless, the Supreme Court held that Washington's seizures were justified since "[a]lthough the cigarettes in transit are as yet exempt from state taxation, they are not immune from seizure when the Tribes, as here, have refused to fulfill collection and remittance obligations which the State has validly imposed."   Id. at 161-62.

23

However, the proposed injunction requested by the State is not limited to the seizures contemplated by the Colville Court--namely, seizures of unstamped cigarettes being delivered by wholesalers to Indian tribes or Indian-owned businesses. The State also has not adduced evidence establishing that the Indian tribes and/or Indian-owned businesses in receipt of unstamped King Mountain cigarettes have failed to fulfill their tax obligations.

Accordingly, the Court DENIES the State's request for an Order granting it authority to "seize any unstamped King Mountain brand cigarettes that are found in New York, and are being delivered to, or otherwise in the possession of a person not authorized by the State of New York to possess such unstamped cigarettes." (State's Br. at 4.)

III.  Irreparable Harm and Inadequacy of Money Damages

As set forth above, King Mountain argues in a footnote that: (1) the State has failed to demonstrate irreparable harm based on the absence of any evidence demonstrating a connection between King Mountain cigarettes and increased health and safety hazards, and (2) the State has failed to establish that monetary damages are inadequate. (Def.'s Br. at 10, n.9.) The Court disagrees.

A plaintiff requesting a permanent injunction must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are

24

inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006). Nevertheless, "[a]n injunction is a matter of equitable discretion; it does not follow from success on the merits as a matter of course." OptionsXpress, Inc. v. OptionsXpress Inc., No. 14-CV-0956, 2014 WL 3728637, at *4 (S.D.N.Y. Jul. 28, 2014) (internal quotation marks and citation omitted).  Indeed, the movant must demonstrate that relief is needed and "[t]he necessary determination is that there exists some cognizable danger of recurrent violation [.]" Id. (internal quotation marks and citation omitted).  A close reading of King Mountain's submissions indicates that it does not dispute the State's position that "the record reflects that King Mountain may be continuing to sell unstamped cigarettes to persons that are not affiliated with the Oneida Nation and who are not otherwise authorized to possess such unstamped cigarettes." (State's Br. at 6; see generally Def.'s Br., Def.'s Sur-Reply.)

     With respect to irreparable harm, the negative health effects of smoking are beyond dispute, as is the relationship between cigarette prices and incidence of smoking. (See Am. Compl. ¶ 17 ("New York imposes such a tax because [i]t is well established

25

that an increase in the price of cigarettes decreases their use and that raising tobacco excise taxes is one of the most effective policies for reducing the use of tobacco") (internal quotation marks and citation omitted; alteration in original); see also State's Reply at 10 ("irreparable harm to the State includes the diminished public health of its citizens").) King Mountain's failure to certify its participation in the Master Settlement Agreement ("MSA") or pay a certain amount into an escrow fund causes harm insofar as it diminishes the funds available to subsidize health care expenses for smoking-related ailments. (Am. Compl. ¶¶ 49-50.) Further, King Mountain's failure to certify that its cigarettes meet the requisite fire performance standards causes irreparable harm with respect to the State's interest in limiting cigarette-related fires. (See Am. Compl. ¶¶ 51-52.)

Both parties fail to sufficiently elaborate on the adequacy of monetary damages. King Mountain relies on the conclusory assertion that the State has "not proven why monetary damages would have been inadequate." (Def.'s Br. at 10, n.9.) The State similarly argues, without more, that "money damages are inadequate because of certain rulings made by the [ ] 2016 Order." (State's Reply at 10.) In any event, the Court concludes that the irreparable harm detailed above cannot be compensated by monetary damages and, considering the balance of the hardships and the public interest, equitable relief is warranted.

26

CONCLUSION

The State's motion for injunctive relief (Docket Entry 227) is GRANTED IN PART and DENIED IN PART.  The State's motion is GRANTED to the extent that King Mountain is ENJOINED from:

1.   Selling unstamped cigarettes directly to Indian nations or tribes and/or reservation cigarette sellers or entities that are not licensed stamping agents, in violation of New York Tax Law Section 471;

2.  Continuing to sell cigarettes into the State of New York, without first complying with New York Tax Law Section 480-b's certification requirements, namely—

a.   Filing a certification under penalty of perjury, with the New York State Department of Taxation and Finance, the Office of the Attorney General, and any New York state-licensed stamping agent who affixes New York state cigarette tax stamps to King Mountain's pack of cigarettes, that King Mountain is either (i) a participating manufacturer under the 1998 Tobacco Master Settlement, or (ii) is otherwise in full compliance with New York Public Health Law section 1399-pp(2); and

b.   Filing an accompanying list of each cigarette brands that King Mountain sold into the State; and

3. Continuing to sell or offer cigarettes for sale, without first complying with New York Executive Law Section 156-c's certification requirements, which require every such cigarette manufacturer to first certify in writing to the New York State Office of Fire Prevention and Control that the manufacturer's cigarettes meet the performance standards prescribed by such Office.

27

The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED.


                              SO ORDERED.



                              _/s/ JOANNA SEYBERT_____
                              Joanna Seybert, U.S.D.J.

Dated:      August _29_, 2017
            Central Islip, New York