UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
––––––––––––––––––––––––– x
STATE OF NEW YORK,                          :
                                            :
         Plaintiff,                      :
                                            :
   v.                                       :   2:12-cv-06276 (JS) (SIL)
                                            :
MOUNTAIN TOBACCO COMPANY,                   :
d/b/a KING MOUNTAIN TOBACCO                 :
COMPANY INC.,                               :
                                            :
         Defendants.                     :
––––––––––––––––––––––––– x

# DEFENDANT KING MOUNTAIN'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL FINAL JUDGMENT AND OTHER RELIEF

PETRILLO KLEIN & BOXER LLP
Nelson A. Boxer
Leonid Sandlar
655 Third Avenue, 22nd Floor
New York, NY 10017

*Attorneys for Mountain Tobacco Company
d/b/a King Mountain Tobacco Company Inc.*

July 17, 2020

**TABLE OF CONTENTS**

                                                **PAGE**

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL HISTORY.......................................................................................................... 1

PERTINENT FACTS ................................................................................................................... 6

ARGUMENT................................................................................................................................. 6

   I.   The PACT Act Does Not Require King Mountain to File Retroactive Reports.................. 7

      a.   There is No Legal Authority Requiring the
Filing of Retroactive Reports Under the PACT Act........................................................... 8

      b.   The Purposes of the PACT Act Are Not Served by
Requiring King Mountain to File Retroactive Reports....................................................... 9

      c.   King Mountain has Made Fulsome Disclosures to the State
Rendering Any Retroactive Reporting Burdensome and Redundant ............................ 11

   II.   The Court Should Not Retain Jurisdiction Over This Action ........................................ 11

      a.   Interests in Finality Militate Against Open-Ended
Retention of Jurisdiction ................................................................................................. 12

      b.   No Change in Circumstances Justify Retention of Jurisdiction
over King Mountain ........................................................................................................ 13

CONCLUSION................................................................................................................................ 17

# TABLE OF AUTHORITIES

**CASES**                        **PAGE(S)**

*eBay Inc. v. MercExhange, L.L.C.*,
  547 U.S. 388 (2006) .................................................................................................. 8

*New York v. Mountain Tobacco Co.*,
  942 F.3d 536 (2d Cir. 2019) ...................................................................................... 5

*SEC v. Research Res., Inc.*,
  No. 85 CIV. 3530 (JFK) (S.D.N.Y. Oct. 8, 1986) ..................................................... 9

**STATUTES**

15 U.S.C. § 375 ............................................................................................................. 10

15 U.S.C. § 376 ................................................................................................ 2, 6, 7, 8, 9

15 U.S.C. § 376-a ................................................................................................. 7, 10, 12

15 U.S.C. § 377 ................................................................................................................ 2

15 U.S.C. § 378 ................................................................................................................ 8

28 U.S.C. § 1658 ........................................................................................................... 10

New York Civil Practice Law and Rules § 214(2) ....................................................... 11

New York Tax Law § 471 ......................................................................................... 9, 10

New York Tax Law § 471-c ................................................................................ 7, 10, 12

New York Tax Law § 1147 .......................................................................................... 11

**RULES**

E.D.N.Y. Local Rule 56.1 ............................................................................................... 2

Defendant Mountain Tobacco Company, d/b/a King Mountain Tobacco Company Inc. ("King Mountain"), respectfully submits this Memorandum of Law in opposition to the State's Motion for Partial Final Judgment and Other Relief dated June 18, 2020, specifically, with respect to the Second Claim for Relief concerning the Prevent All Cigarette Trafficking ("PACT") Act of 2009, 15 U.S.C. § 376, *et seq.*  *See* Dkt. 254.

## PRELIMINARY STATEMENT

Plaintiff State of New York (the "State" or "New York") ignores this litigation's history and this court's prior Judgment and seeks to turn a mixed verdict in the Court of Appeals into the catalyst for a new phase of district court litigation.  While nominally styled as a motion for a judgment awarding relief under the PACT Act, in fact the State asks the Court to retain jurisdiction of this case for "resolution of other factually interrelated claims . . . through amended pleadings" (Dkt. 254) that apparently assert new legal theories; the State's citation to authority in support of this effort is either specious or devoid of analysis of purported precedent.

We have no objection to the Court issuing an Amended Judgment that includes a prospective requirement that King Mountain comply with the PACT Act.  The Court, however, should reject the attempt by the State to set in place open-ended judicial supervision and judicial sanctioned discovery of King Mountain.  The Court should amend its September 5, 2017, Judgment to enter judgment for the State on its Second Claim for Relief, impose a permanent injunction prohibiting King Mountain from violating any provision of the PACT Act, and close the case.

## PROCEDURAL HISTORY

Plaintiff New York filed an unsigned Amended Complaint on February 12, 2013 (Dkt. 6), which it served on King Mountain in March 2013 and which it signed on May 21, 2014.  (Dkt.

96). The Amended Complaint, alleged five Claims for Relief, including "Second," a violation of the PACT Act by reason of King Mountain's failure "to submit certain filings to the tobacco tax administrator for the State of New York . . . ." (Dkt. 6, ¶ 82). While the Second Claim for Relief was titled, "VIOLATION OF THE PACT ACT, 15 U.S.C. §§ 375-378," the Amended Complaint alleged only a violation of 15 U.S.C. §§ 376(a)(1) and 376(a)(2), the reporting provisions of the PACT Act (*see* Dkt. 6, ¶¶ 82-85 (alleged failure to submit certain filings)); it did not allege that King Mountain engaged in "delivery sales," the basis for monetary damages under the PACT Act. *See* 15 U.S.C. § 377(b). In fact, in Court on January 8, 2016, the State confirmed that the Amended Complaint did not allege delivery sales. *See* 1/8/2016 Hr'g Tr. at 32:12-14 ("To clarify, I wasn't intending to amend the complaint to include the delivery sale PACT Act allegations.").

        Plaintiff and King Mountain engaged in discovery between June 2013 and May 2015. Documents produced by King Mountain in response to Plaintiff's demands included purchase orders from Indian tribal companies located on Indian reservations within the external boundaries of New York State, as well as related King Mountain invoices.[1]

        After the conclusion of discovery, the parties exchanged a Statement and a Counter-Statement, in accordance with E.D.N.Y. Local Rule 56.1. Specifically, on November 26, 2014, King Mountain served a Rule 56.1 Statement; on July 30, 2015, the State served its Local Rule 56.1 Statement; and on September 11, 2015, King Mountain served a Rule 56.1 Counter-Statement and a second Rule 56.1 Statement in support of its anticipated motion for summary

---

[1] There was a single exception: in May 2010, a sale by King Mountain to Valvo Candies, a licensed New York State Cigarette Stamping Agent and Wholesale Dealer of Cigarettes and a registered wholesaler of the St. Regis Mohawk Indian Nation, but not Indian-owned.

judgment. On October 19, 2015, the State served its Rule 56.1 Counter-Statement to King Mountain's second Rule 56.1 Statement.[2]

The parties thereafter wrote to the Court on October 27, 2015, and November 3, 2015, seeking permission to file motions for summary judgment. (Dkt. 173 & 176). Annexed to King Mountain's pre-motion conference letter were King Mountain's second (September 11, 2015) Rule 56.1 Statement and the State's Counter-Statement. (Dkt. 173-1 & 173-2). Annexed to the State's pre-motion conference letter were its July 30, 2015, Rule 56.1 Statement and King Mountain's Counter-Statement. (Dkt. 176-1 & 176-2). These Rule 56.1 Statements were also submitted to the Court in the parties' summary judgment motions. *See* Dkts. 195-3, 195-4, 195-5, 195-6, 197-2, 197-3.

The State's summary judgment briefing described in detail King Mountain's sales. The State's Rule 56.1 statement contained detailed tables for each King Mountain customer, which noted the King Mountain document production number, date of sale, the number of cigarette cartons and cases, and the total cost, and tabulated the totals for each customer. *See* Dkt. 195-5, ¶¶ 66-78. The State's memorandum in support summarized in table form King Mountain's "sales and deliveries of untaxed, unstamped cigarettes to its New York distributors, between June 1, 2010 and December 31, 2014." Pl.'s Mem. (Dkt. 197-1) at 8-9.

On July 21, 2016, the Court issued a Memorandum and Order granting in part and denying in part King Mountain's motion for partial summary judgment and granting in part and denying in part the State's motion for summary judgment. (Dkt. 214). Specifically, with respect to the PACT Act claim, the Court held that King Mountain was not liable for Nation-to-Nation sales, because it did not ship unstamped cigarettes in "interstate commerce" as defined by the

---

[2] The State, without notice, amended its Rule 56.1 Statement when it moved for summary judgment on January 29, 2016. *See* Dkt. 197-2.

statute, and that there was a genuine issue of material fact as to whether the single sale in May 2010 to Valvo Candies occurred on or after the June 29, 2010, the effective date of the PACT Act.[3]

On November 30, 2016, the State informed the Court that, with respect to claims left open by the Court's July 21, 2016 Memorandum and Order, it was "declining to prosecute these claims for trial" and would only seek relief on the portion of the Third Claim for Relief, the Fourth Claim for Relief, and the portion of the Fifth Claim for Relief for which it had been granted summary judgment. (Dkt. 225).

Thereafter, the parties litigated the scope of a final Judgment. With respect to remedies, on January 18, 2017, the State informed the Court that, "[f]or purposes of resolving this litigation, the State is declining to seek penalties or costs," and filed a motion solely for injunctive relief. (Dkt. 227-1 at 3). The Court issued a Memorandum and Order on August 29, 2017 (Dkt. 234), memorialized by a final Judgment it filed and entered on September 5, 2017 (Dkt. 235), which enjoined King Mountain from: (1) "Selling unstamped cigarettes directly to Indian nations or tribes and/or reservation cigarette sellers or entities that are not licensed stamping agents, in violation of [New York Tax Law] Section 471"; (2) "Continuing to sell cigarettes into the State of New York, without first complying with [New York Tax Law]

---

[3] With respect to the other claims, the Court held that: King Mountain is not liable under the Contraband Cigarette Trafficking Act, because it prohibits state enforcement against an "Indian in Indian country"; the State's Third Claim for Relief, pursuant to New York Tax Law § 471, is barred by res judicata by reason of the New York State Department of Taxation and Finance proceeding, to the extent the State's Amended Complaint relied on the December 3, 2012, seizure of King Mountain cigarettes, but it was not barred as to the cigarettes purchased by New York State investigators on November 6, 2012; King Mountain is not liable, pursuant to New York Tax Law § 471, for State cigarette taxes, because it did not possess cigarettes in New York State; King Mountain violated New York Tax Law § 471, because it failed to sell its cigarettes to New York licensed stamping agents; King Mountain failed to comply with New York Tax Law § 480-b; and King Mountain failed to certify to New York State that the cigarettes it offered for sale in New York met New York's fire safety standards, but there is a genuine issue of material fact as to whether King Mountain stamped "FSC" on those cigarettes. (Dkt. 214).

Section 480-b's [public health] certification requirements"; and (3) "Continuing to sell or offer cigarettes for sale, without first complying with [New York Executive Law] Section 156-c's [fire safety] certification requirements."  With this, the Court closed the case.  *Id.*

On November 7, 2019, following perfected appeals, the United States Court of Appeals for the Second Circuit reversed this Court's final Judgment with respect to the grant of summary judgment for King Mountain and the denial of summary judgment for the State on the PACT Act claim, and affirmed the Judgment in all other respects.  *New York v. Mountain Tobacco Co.*, 942 F.3d 536, 549 (2d Cir. 2019).

On remand and at the Court's direction, the parties addressed what issues remained for the Court to decide and the contours of an Amended Final Judgment.  *See* 1/28/2020 Electronic Status Report Order (directing the parties "to file a joint status report [to] outline the issues to address on remand").

At a subsequent telephonic status conference of March 30, 2020, to determine the disposition of the case,[4] with the State maintaining that "[it] is seeking penalties and damages, and has been seeking penalties and damages from the time of the filing of our amended complaint," 3/30/2020 Hr'g Tr. 4:13-14, the Court established a briefing schedule for the State's motion for leave to serve post-remand discovery requests to support its application for damages and penalties.

In a filing dated April 30, 2020, the State acknowledged that "[u]pon further review of the Second Circuit's decision . . . awarding the State summary judgment on its second cause of action, and that decision's intersection with relevant case law and federal rules of procedure, the State has respectfully decided not to go forward with the scheduled filing."  *See* Dkt. 251 at 1.

---

[4] 3/30/2020 Hr'g Tr. 2:23-25 (Court: "We are here to see if anything can be done since the Second Circuit's order and mandate earlier this year.  The case goes on, and on, and on, and on.").

The State added that "[i]nstead the State intends to file a motion for a judgment awarding the relief requested in its Amended Complaint relating its second cause of action." *Id.* That motion followed on June 18, 2020. *See* Dkts. 254-56.

## PERTINENT FACTS

The State's motion asks for a judgment awarding relief under the PACT Act as follows: entry of a final judgment finding liability against King Mountain on the State's Second Claim for Relief; a final judgment imposing a permanent mandatory injunction requiring King Mountain to retrospectively file "the registration required by 15 U.S.C. § 376(a)(1), and each of the monthly reports related to cigarette shipments it has previously failed to submit pursuant to 15 U.S.C. § 376(a)(2)"; a final judgment imposing a permanent injunction prohibiting King Mountain from violating any provision of the PACT Act; a "non-final order" retaining the Court's jurisdiction "over the parties, the action, and the subject matter of the action for all permissible purposes," including: (a) the resolution of other factually interrelated claims "through amended pleadings or any other permissible device"; (b) the enforcement of the Court's injunctions; and (c) consideration of an award of civil penalties against King Mountain; and a "non-final" order allowing the State to move for leave to amend its pleading pursuant to Fed. R. Civ. P. 15 at any time up to 90 days subsequent to the filing of retrospective PACT Act registration and reports. Dkt. 256 (State's Memo of Law ("Br.") at 6).

## ARGUMENT

While King Mountain has no objection to the Court issuing an Amended Judgment that requires King Mountain to comply with the PACT Act with respect to any future New York sales, the Court should reject the balance of the State's application, which represents a lawless

attempt to transform a limited reversal in the Court of Appeals into a new phase of litigation, complete with indeterminate judicial supervision over King Mountain.

First, the State's application for a permanent injunction requiring King Mountain to retrospectively file the PACT Act registration and monthly reports related to cigarette shipments for an unspecified period of time should be rejected, as it finds no support in the text of PACT Act nor the legislative purpose of the statute. And second, the interests of finality of litigation, as evidenced by the Court's final Judgment, militate strongly against the State's request to transform the remand from the Court of Appeals into continual judicial oversight through the threatened assertion of new state-law claims as well as PACT Act allegations that the State expressly disclaimed in earlier stages of this litigation.

In the absence of first-hand knowledge, the State purportedly justifies its requests by a mix of online research and conjecture formulated into a narrative of intrigue in which King Mountain "secretly splintered" but "apparently resumed" shipping cigarettes to New York. *See* Br. at 5-7, 10. That hypothesis is flatly wrong. *See generally* July 17, 2020, Declaration of Truman Jay Thompson, CEO of King Mountain ("Thompson Decl.").

Accordingly, the Court should reject the State's application, amend its Judgment to enter a mandatory injunction with respect to the PACT Act, and close the case.

**I.     The PACT Act Does Not Require King Mountain to File Retroactive Reports**

We object to the State's request that King Mountain "retrospectively" – it provides no time limitation – file monthly reports of its sales within New York to relevant State and local taxing authorities pursuant to 15 U.S.C. § 376(a)(2), an alleged springboard for a new phase of litigation of indefinite duration. *See* Br. at 10 (seeking to utilize "King Mountain's retrospective . . . filing documents to determine whether those materials give rise to additional enforcement claims" under 15 U.S.C. §376-a (PACT Act delivery sales) or New York Tax Law § 471-c (use

-7-

tax on tobacco products)).  The State has already disclaimed pursuit of liability for delivery sales, and its application is unsupported by legal authority and is contrary to purposes of the PACT Act.

> a. There is No Legal Authority Requiring the
> Filing of Retroactive Reports Under the PACT Act

The NYAG brief cites <u>no</u> legal authority for its position that King Mountain should file retroactive reports under the PACT Act.  Indeed, whereas the PACT Act authorizes courts to issue prospective injunctions to "*prevent* and restrain violations," 15 U.S.C. § 378 (emphasis added), the statute is silent as to retroactive relief of the type the State seeks here.  *See* Mot. for Summary Judgment, <u>Washington v. www.dirtcheapcig.com</u>, 2003 WL 24859540 n.27 (W.D.Wash. Nov. 5, 2003) (Washington State acknowledging that "15 U.S.C. § 376 is silent about requiring retroactive reports").[5]  What is more, the State fails to attempt to establish its entitlement to a permanent injunction ordering retroactive relief under the relevant legal standard for the Court to issue a permanent injunction.  *See, e.g.*, *eBay Inc. v. MercExhange, L.L.C.*, 547 U.S. 388, 391 (2006) (holding that a plaintiff requesting a permanent injunction must establish: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction").

Absent any relevant legal authority for its sweeping proposition, the only case the State cites is an opinion from 34 years ago (predating the PACT Act by 24 years) that ordered a public company to file delinquent periodic reports pursuant to the Securities Exchange Act of 1934 and

---

[5] Where, according to the State, in its opinion "the Second Circuit was equally clear in its deference to this Court's wisdom and discretion in evaluating and fashioning appropriate remedies to effect justice in light of King Mountain's established liability" is unknown.  *See* Br. at 1.

-8-

rules promulgated thereunder. *See* Br. at 8 (*citing SEC v. Research Res., Inc.*, No. 85 CIV. 3530 (JFK), 1986 WL 11446 (S.D.N.Y. Oct. 8, 1986)). The intricate regulatory regime governing the filing of periodic Forms 10-Q and 10-K financial reports by public issuers, which provide shareholders accurate financial information upon which to make informed investment decisions, is far afield from the PACT Act and offers no precedent here. In fact, the State's brief is devoid of analysis as to how the federal securities law and rules justify its request for relief, other than to say that the cited SEC case is "a closely analogous decision." (Br. at 8).

b. The Purposes of the PACT Act Are Not Served by Requiring King Mountain to File Retroactive Reports

In the absence of statutory authorization, the legislative purpose of the PACT Act also cuts against requiring King Mountain to file retroactive reports. The parties do not dispute that the purpose of the PACT Act's filing requirement is to aid states in collecting taxes on cigarettes. *See* Br. at 8 ("Here, the registration and reporting requirements at issue were explicitly intended to assist states in fulfilling these purposes in providing a mechanism for states to account for the cigarettes coming into their borders," *citing* 15 U.S.C. §376(c)). Section 376(c) admonishes that such filings are to be utilized "solely for the purposes of the enforcement of this chapter and the collection of any taxes owed on related sales of cigarettes."

Here, however, the Court has already ruled (and the State did not appeal[6]) that King Mountain is not liable for New York cigarette taxes, because it did not "possess" cigarettes within New York. *See* Mem. & Order (Dkt. 214) at 46 ("the Court will not rewrite Section 471 and expand the definition of 'possession' to encompass an out-of-state manufacturer utilizing a

---

[6] *See New York v. Mountain Tobacco Co*., Case No. 17-3198 (2d Cir.), Dkt. 102 at 5 (Issues Presented).

common carrier to transport cigarettes within New York State.  Accordingly, King Mountain is not liable for cigarette taxes pursuant to [NY State Tax Law] Section 471.").

Despite this ruling, the State argues that it "cannot" be precluded from pursuing King Mountain for New York use tax on tobacco products (§ 471-c) and PACT Act delivery sales (15 U.S.C. §376-a) in a new phase of this litigation, apparently believing that this Court's factual and legal findings, the State's own prior representations to the Court, and the applicable statutes of limitations have no import.  With respect to PACT Act delivery sales, the State has repeatedly represented to the Court – and the parties conducted their discovery, accordingly – that it was not alleging that King Mountain made delivery sales under the PACT Act.[7]  The Court's ruling as to King Mountain's liability for state taxes under § 471 constrains the State's theory of recoverability under the "use" tax.[8]  And, the applicable statutes of limitations on both of the State's anticipated future claims undermine the State's request for unlimited retroactive PACT Act reports.[9]

---

[7] The term "delivery seller" means a person who "makes" a delivery sale.  15 U.S.C. § 375(6).  A "delivery sale" of cigarettes is a sale to a consumer who submitted his/her order by telephone, mail, or the Internet; or where the cigarettes are delivered to the buyer by common carrier, private delivery service, or other method of remote delivery; or where the seller is "not in the physical presence of the buyer." 15 U.S.C. § 375(5).  The record before this Court makes clear that King Mountain did not "make" any "delivery sales" to New York, which explains why the State never pursued this theory of liability.  *See also* 1/8/2016 Hr'g Tr. at 32:12-14 (Counsel for the State: "To clarify, I wasn't intending to amend the complaint to include the delivery sale PACT Act allegations."); 3/30/2020 Hr'g Tr. at 6:1-4 (Counsel for the State: "As [King Mountain's counsel] indicated we are not considering pursuing delivery sales violations. We are not trying to change anything. We were never pursuing delivery sales violations.").

[8] § 471-c of the New York Tax Law defines "use" for the purpose of this section as "the exercise of any right or power actual or constructive and shall include but is not limited to the receipt, storage or any keeping or retention for any length of time, but shall not include possession for sale."  Although the definition differs from the questions of "possession" faced by this Court in its summary judgment ruling, the Court has already held that "[i]t is undisputed that King Mountain did not exercise control over the King Mountain brand cigarettes that entered New York State."  *See* Mem. & Order (Dkt. 214) at 44.

[9] With respect to the State's "anticipated" PACT Act and New York Tax law claims, the statute of limitations on PACT Act claims is four years, s*ee* 28 U.S.C. § 1658 (four-year statute of limitations for

        c.   King Mountain has Made Fulsome Disclosures to the State,
<u>Rendering Any Retroactive Reporting Burdensome and Redundant</u>

Finally, King Mountain has already provided extensive discovery to the State in response to the State's numerous document demands, interrogatories and requests for admission, that included King Mountain's New York invoices between June 1, 2010 and December 31, 2014. In fact, in its Rule 56.1 statements and summary judgment submissions, the State presented detailed compilations and summary tables of these invoices, organized by New York customer, and including date of sale, the number of cigarette cartons and cases, and the total cost, and tabulated the totals for each customer. *E.g.*, Dkt. 195-5, ¶¶ 66-78 (detailed tables for each King Mountain "New York" customer); Pl.'s Mem. (Dkt. 197-1) at 8-9 (summary table of King Mountain's "sales and deliveries of untaxed, unstamped cigarettes to its New York distributors, between June 1, 2010 and December 31, 2014").

\* \* \*

In sum, there is no valid reason why King Mountain must expend resources to go back for over ten years to make retrospective monthly PACT Act filings with respect to sales that the State already possesses the pertinent details.

## II.    <u>The Court Should Not Retain Jurisdiction Over This Action</u>

There is no basis for this Court to retain jurisdiction over this case, which has been pending since 2012.

---

federal civil actions "arising under an Act of Congress enacted" after December 1, 1990 and which do not specify a statute of limitations), and the applicable statute of limitations on enforcement of N.Y. Tax Law is three years, *see* New York Tax Law § 1147(b) (three-year limitations period on tax enforcement actions); *see also* CPLR § 214(2) (three-year statute of limitations on any "action to recover upon a liability, penalty or forfeiture created or imposed by statute").

-11-

      a. <u>Interests in Finality Militate Against Open-Ended Retention of Jurisdiction</u>

The interests of finality strongly weigh against the State's application that this Court retain jurisdiction. In the original Judgment dated September 5, 2017, the Court closed the case. *See* Judgment (Dkt. 235) at 4 (closing case); *see also* Mem. & Order (Dkt. 234) at 28 ("The Clerk of the Court is directed to enter judgment accordingly and mark this case CLOSED"). Now, with the case positioned for final disposition,[10] the State, citing <u>no</u> case law, urges the Court to extend indefinitely its jurisdiction over King Mountain.

The State's application makes clear that it urges the Court to retain jurisdiction in contemplation of "further proceedings" involving follow-on claims under new theories that it failed to consider earlier or those it affirmatively disclaimed in prior stages of this litigation. *Compare, e.g.*, Br. at 9 (contemplating further attempts "to make . . . a recovery in . . . this lawsuit under the 'use' tax of §471-c, . . . [and] penalties under the PACT Act for illegal *delivery sales* under 15 U.S.C. §376-a") (emphasis added) *with* 3/30/2020 Hr'g Tr. at 6:1-4 (Counsel for the State: "As [King Mountain's counsel] indicated we are not considering pursuing delivery sales violations. We are not trying to change anything. We were never pursuing delivery sales violations.").

The Court is well-aware of the protracted nature of this action. *See* 3/30/2020 Hr'g Tr. at 2:25 (Court: "The case goes on, and on, and on, and on."). King Mountain, like any litigant, deserves finality, particularly where there is no basis or precedent for turning this action into one of continual judicial oversight or supervision. The Court should reject the State's attempt to extend the case indefinitely, including through an amended complaint.

---

[10] *See* 5/18/2020 Electronic Scheduling Order (Dkt. 253) (inviting the State to "file its proposed motion for a judgment awarding relief").

### b. No Change in Circumstances Justify Retention of Jurisdiction over King Mountain

In addition, there has been no change in circumstance justifying the extension of the Court's jurisdiction "to address violations by successors-in-interest or *alter egos* to King Mountain," as the State posits. (Br. at 10). Lacking actual evidence to support its contention, the State resorts to innuendo and internet "research" to hint that something – it does not specify what – is amiss. (Br. at 5-7, 10; Declaration of John Oleske (Dkt. 255) ¶¶ 4-11). That suggestion is false. As described in the accompanying Declaration of King Mountain CEO Truman Jay Thompson, King Mountain has abided by this Court's Judgment and has not sold its products into New York (Thompson Decl. ¶ 4 ("Since the Court issued its Judgment (September 5, 2017), King Mountain has continued to manufacture and ship tobacco products, but it has not made any sales to or within New York, including to any Indian-owned or Indian-located entities")), and any sales into New York of cigarettes bearing striking similarities to King Mountain's product represent the actions of a break-away entity adverse to King Mountain. *See* Thompson Decl. ¶¶ 7-11. The otherwise pertinent facts regarding King Mountains, since entry of the Court's Judgment, are as follows.

Delbert Wheeler died on June 30, 2016 (Thompson Decl. ¶ 3), prior to the Court's entry of Judgment but after the Court dismissed claims against him for lack of personal jurisdiction. (Dkt. 193). Far from being a "secret" (*see* Br. at 5 ("secretly splintered")), the disposition of the estate of Mr. Wheeler, King Mountain's founder and principal owner, was the subject of contested probate proceedings in Yakama Nation Court involving Mr. Wheeler's son, Kamiakin Wheeler, and his widow, Trina Wheeler. (Thompson Decl. ¶ 3). Following the conclusion of

-13-

these proceedings in August 2018, the Yakama tribal court awarded 100% ownership interest in King Mountain to Trina Wheeler, which change was communicated to regulators. *Id.*[11]

King Mountain has continued to manufacture and ship tobacco products, but it has not made any sales to or within New York (including to any Indian-owned or Indian-located entities) since the Court issued its Judgment (September 5, 2017), which, among other things, required King Mountain to affect any New York sales via a New York stamping agent. *Id.* ¶ 4; *see also* Mem. & Order (Dkt. 234) at 27, Judgment (Dkt. 235) at 3.

In the transition period following Mr. Wheeler's death, Kamiakin Wheeler served as an officer and director of King Mountain. *Id.* ¶ 5. In January 2018, Kamiakin Wheeler was removed as a director but continued to be employed by the company. *Id.* & Exhibit ("Ex.") A thereto (King Mountain unanimous shareholders consent dated January 16, 2018). As King Mountain later discovered, during this time period, Kamiakin Wheeler took action adverse to his employer: among other things, without disclosing it to King Mountain, he established a new, Yakama-registered cigarette company, Lone Warrior Holdings, Inc. ("Lone Warrior"), which trademarked "Yakama" and "Rainier" branded cigarettes bearing a striking similarity to King Mountain's trademarks.[12] *Id.* ¶ 7; *see also* Declaration of John Oleske (Dkt. 255) ¶¶ 8-9.

A newly installed professional management team at King Mountain terminated Kamiakin Wheeler's employment for cause on August 20, 2018. *Id.* ¶ 6. Thereafter, King Mountain became aware that "Rainier" and "Yakama" branded cigarettes were being sold at tribal-owned or situated entities in New York using similar trademarks as King Mountain had used prior to the Court's Judgment, including the same Washington-state mountain imagery that had adorned

---

[11] Ms. Wheeler's ownership interest in King Mountain runs through an entity named Wheeler Enterprises, Inc., which has controlling stakes in several distinct business ventures, including King Mountain. *Id.* ¶ 3.

[12] The State incorrectly identified the brand as "Yakima."

King Mountain cigarettes. *Id.* ¶ 9. It was determined that trademarks for these brands were registered by Lone Warrior, while the manufacturer was identified as Jacobs Tobacco Company of New York. *Id.* Wheeler Enterprises, on behalf of King Mountain, retained the services of an investigator to document the sale of Lone Warrior's product. *Id*. The resulting investigative report detailed sales of Lone Warrior's "Rainier" and "Yakama" brand cigarettes at tribal smoke shops in New York using similar trademarks and promotional slogans as King Mountain had used prior to the Court's Judgment, *e.g.*, "the King is Back" and "The King of the Mountain Has Returned." *Id.*; *see also* Investigative Report dated Nov. 11, 2019 (Dkt. 255-5).

In November 2019, King Mountain sued Lone Warrior, Kamiakin Wheeler, and Kanim James (another former King Mountain officer, director, and employee who was terminated on August 20, 2018) in Washington State court, alleging twelve causes of action, including, *inter alia*, breach of fiduciary duty, breach of contract, tortious interference with contractual relationships, conversion, and unjust enrichment. *Id.* ¶ 10 & Ex. B thereto (complaint dated November 22, 2019). The trademark registrations and sale in New York of the "Rainier" and "Yakama" brands form part of the basis for the allegations King Mountain has brought against Lone Warrior and Kamiakin Wheeler. *See Id.* & Ex. B (complaint) ¶¶ 4.56-4.59, 4.84. Contrary to the State's assertions that the sale of such cigarettes may be by "successors-in-interest or *alter egos* to King Mountain" (Br. at 10), Lone Warrior admits in sworn interrogatory responses made in the Washington State court litigation that its "Rainier" branded cigarettes were being sold in New York State. *Id.* ¶ 11 & Ex. C (interrogatory responses dated May 27, 2020). The litigation is ongoing.[13]

---

[13] As to the Lone Warrior-imported cigarette machines cited by the State (*see* Br. at 6; Declaration of John Oleske (Dkt. 255) ¶ 11), they are unrelated to King Mountain: the machines were apparently leased to Diamond Mountain Manufacturing located in Herlong, California, in the time period post-dating

Concerned that New York authorities might see these cigarettes offered for sale in New York, confuse them for King Mountain's brand, and believe that King Mountain was violating the Court's Judgment, in November 2019 counsel for King Mountain informed State counsel that "Yakama" and "Rainier" branded cigarettes, that were not manufactured or sold by King Mountain, were being sold at reservation smoke shops in New York. *Id.* ¶ 12; *see also* Br. at 7. Counsel also shared with the State the investigator's report demonstrating as much. Thompson Decl. ¶ 12. The State's suggestion that King Mountain brought attention to itself by alerting the State to a purportedly misleading report of King Mountain's own wrongdoing is a preposterous allegation that is rebutted by the facts set forth herein.

In sum, the State's unsupported inferences that Lone Warrior is a surreptitious reformulation of King Mountain is unsupported by evidence and belied by King Mountain's termination of Kamiakin Wheeler's employment, retention of an investigator, and lawsuit against Lone Warrior for numerous breaches. The State's suggestion that the sale of Lone Warrior's "Yakama" and "Rainier" branded cigarettes "may" constitute non-compliance with this Court's injunctions, justifying a further extension of this litigation (Br. at 10), is without merit.

---

Kamiakin Wheeler's employment with King Mountain. Diamond Mountain Manufacturing is unaffiliated with King Mountain. *See* Thompson Decl. ¶ 13.

## **CONCLUSION**

For all of the reasons set forth herein, the Court should deny the State's Motion for Partial Final Judgment and Other Relief and should amend its September 5, 2017, Judgment to enter judgment for the State on its Second Claim for Relief, imposing a permanent injunction prohibiting King Mountain from violating any provision of the PACT Act, and close the case.

Dated: July 17, 2020

Respectfully Submitted,

By: _____
Nelson A. Boxer
Leonid Sandlar
Petrillo Klein & Boxer LLP
655 Third Avenue, 22nd Floor
New York, NY 10017
nboxer@pkbllp.com
lsandlar@pkbllp.com

*Counsel for Defendant*
*King Mountain Tobacco Co. Inc.*